BEFORE THE

MILWAUKEE FIRE AND POLICE COMMISSION

- - - - - - - - - - - - - - - - - - - - - - - - - - -

In Re the Appeal of: MPD Personnel Order No. 2015-150

SHANNON LEWANDOWSKI

- - - - - - - - - - - - - - - - - - - - - - - - - - -

MILWAUKEE POLICE & FIRE COMMISSION

Ann Wilson
Kathryn Hein
Angela McKenzie

Hearing Examiner: Rudolph Konrad

HEARING HELD:

200 E. Wells Street
Milwaukee, Wisconsin

Date: August 10, 2016

TRANSCRIPT PAGES

1 - 290

EXHIBITS IDENTIFIED:

1 - 21

EXHIBITS ADMITTED:

A P P E A R A N C E S:

THE COMMISSION:

        COMMISSIONER ANN WILSON
        COMMISSIONER KATHRYN HEIN
        COMMISSIONER ANGELA MC KENZIE

Hearing Examiner: Rudolph Konrad

For the Milwaukee Police Department:

   MILWAUKEE DISTRICT ATTORNEY'S OFFICE
   By: ROBIN A. PEDERSON
   200 E. Wells Street #800
   Milwaukee, Wisconsin 53202

The Appellant in Person and By:

   GIMBEL REILLY GUERIN BROWN, LLP.
   By: STEVEN C. MC GAVER
   Two Plaza East
   330 E. Kilbourn Avenue #1170
   Milwaukee, Wisconsin 53202

E X A M I N A T I O N I N D E X

| WITNESS | PAGE NO. |
|---|---|
| CODY SMITH | |
| Direct Exam by Mr. Pederson | 12 |
| Cross-Exam by Mr. McGaver | 24 |
| SEAN HANLEY | |
| Direct Exam by Mr. Pederson | 29 |
| Cross-Exam by Mr. Mc Gaver | 54 |
| Redirect Exam by Mr. Pederson | 78 |
| Recross-Exam by Mr. McGaver | 84 |
| Re-Redirect Exam by Mr. Pederson | 89 |
| ADAM ZIEGER | |
| Direct Exam by Mr. Pederson | 90 |
| Cross-Exam by Mr. McGaver | 140 |
| Redirect Exam by Mr. Pederson | 155 |
| Recross-Exam by Mr. McGaver | 156 |
| Re-Redirect Exam by Mr. Pederson | 156 |
| JUANITA CARR | |
| Direct Exam by Mr. McGaver | 159 |
| Cross-Exam by Mr. Pederson | 175 |
| Redirect Exam by Mr. McGaver | 193 |
| JORDAN LEWANDOWSKI | |
| Direct Exam by Mr. McGaver | 195 |
| Cross-Exam by Mr. Pederson | 206 |
| Redirect Exam by Mr. McGaver | 212 |
| Recross-Exam by Mr. Pederson | 213 |

DEBORA STACEY

Direct Exam by Mr. McGaver 215
Cross-Exam by Mr. Pederson 223

JESSE VOLLRATH

Direct Exam by Mr. McGaver 224
Cross-Exam by Mr. Pederson 230

DENISE BROWN-ROGERS

Direct Exam by Mr. McGaver 232
Cross-Exam by Mr. Pederson 237
Redirect Exam by Mr. McGaver 238

SHANNON LEWANDOWSKI

Direct Exam by Mr. McGaver 239

to write everything down on a piece of paper and a lot of persistent issues involving my head.

Q You were interviewed by Sergeant Zieger in the course of the investigation. Correct?

A I was.

Q Did you tell Sergeant Zieger the same story you told here today?

A Yes.

Q Is there anything else you want to make sure that the Commission knows about this situation?

A Yes. I believe that as Sergeant Zieger said, I called a lieutenant a liar in my memo and I did, and I mean it, because the things that he said happened, they did not happen, and the treatment that I got was directly related to some of these memos that I submitted because the bottom line is the fair treatment of women in this department, specifically Melanie Beasley at that district, which I have -- I have more than these memos here that I have handed in. This investigation is a direct result of that. I believe it is complete retaliation for me trying to help another female out at a district who was sexually assaulted by another member and the only people on this scene of mine where I was hurt and injured and in a close-to-fatal accident TAC members who made these statements saying that I was

saying that, but none of those TAC members have ever written a report. Sergeant Riley isn't even here today and if he is a supervisor on scene saying these people said that, then, where is that sergeant holding those people accountable for those things -- for them to be interviewed by detectives so that they could come to the truth? A simple investigation like this? The first people that I would have you can talked to -- which I have been a detective since 2005 -- would have been to talk to Melanie Beasley.

MR. PEDERSON: I object at this point. I think this is running far afield and is a narrative --

THE WITNESS: It is not. This is exactly what it is about.

MR. KONRAD: If you could sum up, I would appreciate it.

A If I was going to investiate the scene, it would have been Melanie Beasley and my son and Juanita Carr. They would have been separated from each other and immediately talked to and you would have had the answers to what happened. There would be no hearsay.

MR. KONRAD: Let me ask you this. I read the lieutenant's report several times and it appears to me he didn't come to the conclusion that you

STATE OF WISCONSIN )
)
COUNTY OF MILWAUKEE)

I, SUSAN K. TAYLOR, do hereby certify that I am a stenographic reporter; that I was present at the hearing in the above entitled action, and that I recorded the same in shorthand; that the above and foregoing is a true, correct and exact copy, in longhand, of my shorthand notes taken at said hearing.

Dated this day of 2016

SUSAN K. TAYLOR
Court Reporter

Case 2:16-cv-01089-WED Filed 01/03/18 Page 7 of 18 Document 38-5

BEFORE THE

MILWAUKEE FIRE AND POLICE COMMISSION

\- - - - - - - - - - - - - - - - - - - - - - - - - -

In Re the Appeal of: MPD Personnel Order No. 2015-150

SHANNON LEWANDOWSKI

\- - - - - - - - - - - - - - - - - - - - - - - - - -

VOLUME II

MILWAUKEE POLICE & FIRE COMMISSION

Ann Wilson
Kathryn Hein
Angela McKenzie

Hearing Examiner: Rudolph Konrad

HEARING HELD: TRANSCRIPT PAGES

292 - 474

200 E. Wells Street
Milwaukee, Wisconsin

EXHIBITS IDENTIFIED:

14 - 21

Date: August 11, 2016

EXHIBITS ADMITTED:

14 - 21

A P P E A R A N C E S:

THE COMMISSION:

COMMISSIONER ANN WILSON
COMMISSIONER KATHRYN HEIN
COMMISSIONER ANGELA MC KENZIE

Hearing Examiner: Rudolph Konrad

For the Milwaukee Police Department:

MILWAUKEE DISTRICT ATTORNEY'S OFFICE
By: ROBIN A. PEDERSON
200 E. Wells Street #800
Milwaukee, Wisconsin 53202

The Appellant in Person and By:

GIMBEL REILLY GUERIN BROWN, LLP.
By: STEVEN C. MC GAVER
Two Plaza East
330 E. Kilbourn Avenue #1170
Milwaukee, Wisconsin 53202

# E X A M I N A T I O N   I N D E X

| WITNESS | PAGE NO. |
|---|---|
| SHANNON LEWANDOWSKI | |
| Cross-Exam by Mr. Pederson | 292 |
| Redirect Exam by Mr. McGaver | 356 |
| SEAN HANLEY | |
| Direct Exam by Mr. Pederson | 363 |
| Cross-Exam by Mr. McGaver | 381 |
| Redirect Exam by Mr. Pederson | 386 |
| Recross-Exam by Mr. McGaver | 388 |
| STEVEN KELLY | |
| Direct Exam by Mr. Pederson | 390 |
| Cross-Exam by Mr. McGaver | 396 |
| ADAM ZIEGER | |
| Direct Exam by Mr. Pederson | 400 |
| Cross-Exam by Mr. McGaver | 409 |
| PHASE II | |
| CARIANNE YERKES | |
| Direct Exam by Mr. Pederson | 440 |
| Cross-Exam by Mr. McGaver | 459 |
| CHAD BOYACK | |
| Direct Exam by Mr. McGaver | 464 |
| SHANNON LEWANDOWSKI | |
| Direct Exam by Mr. McGaver | 467 |
| Cross-Exam by Mr. Pederson | 471 |

absolutely -- Sergeant Riley isn't here, Sergeant Zieger didn't seek those people out to find out who were those people on the scene who heard me say those statements? So yes, I find it troubling that I am responsible for somebody else's assignment according to how your questioning goes, but here, the most important thing is something that I am saying and being held accountable to have someone get my son and those officers didn't write a report and we don't even know who they are.

Q What else is unusual about the fact that the TAC officers were there and what they did to you?

A I don't think there is much else that I remember.

Q Didn't you testify yesterday that you believe that they were making up the story regarding your statements about wanting to go to your son at UWM as part of a retaliation toward you? Wasn't that your testimony?

A My testimony wasn't that they made it up. My testimony is that they said it and there was no reports done, no questioning of them and the TAC officers that did show up, I recognized them from TAC. I don't know their names. There is no report done and at the same time, I am responding to Melanie Beasley at District 5 for the exact same problem of a TAC officer who had sexually assaulted her, with a valid temporary restraining order filed at her district, yet she was getting no help from

supervision there and it is kind of ironic that I am being disciplined for hearsay when I am asking those TAC officers who were at the scene to write that report and be interviewed, like, I want them to tell exactly what I said and tell the truth. It is not available. So I am going to go see Melanie and for some reason, there is no exigency of going to help a female officer who had been sexually assaulted at the district. Apparently, that is not important to this department.

Q When did this alleged sexual assault occur?

A You would have to ask Melanie Beasley on that. However, I do know that October 5, 2014, I told Lieutenant Hanley and, then, Lieutenant Hanley looked his picture up on the computer to see who I was talking about. Then, I gave the IP address of that computer to Sergeant Zieger so he could see that he did look it up and that somehow got lost. Then, Melanie Beasley told Lieutenant Timothy Leitzke for an hour on November 11 and told -- for an hour and ten minutes about how she was sexually assaulted, harassed and threatened by a TAC member of the department, and he has not done anything about it. Then she went to --

Q Let me stop you there.

MR. KONRAD: This line of questioning, you may continue it, but the whole premise

BY MR. PEDERSON:

Q So is it your testimony today that the TAC officers were involved in a conspiracy and retaliation against you due to the whole situation with Melanie Beasley's accusations and that whole thing? Is that your testimony? I can't be any more plain than that.

MR. MC GAVER: Same objections. I will reiterate my relevance objection. It is the same question asked in a different manner.

MR. PEDERSON: It goes to her credibility. She's provided this testimony. I should be able to examine her on her credibility.

MR. KONRAD: I think it would expose any bias she might have that might affect her testimony, so go ahead.

BY MR. PEDERSON:

Q Is that your testimony?

A Can you rephrase or say this again?

MR. MC GAVER: It might be good to have the court reporter read it back.

MR. PEDERSON: Sure.

(Question read)

A No. I said it appears that way. Here I am, asking Internal Investigations to contact those TAC officers who are on the scene that overheard me say that I was

going to UWM or to get my son, but all there is in the report is hearsay and rumors at the district and I wanted them to nail those people down and say, "hey, what exactly did you hear? What exactly did you see her -- her actions?" None of that was done. So yes, it just seems quite funny. I am trying to get a fair judgment here and I can't even get Internal to do something fair for me.

MS. MC KENZIE: So, then, your issue is with the process and not necessarily the information at this time.

THE WITNESS: That is correct.

BY MR. PEDERSON:

Q Yesterday, you testified that you knew where your son was. Right?

A That is not true.

Q What did you say, then?

A Depends when you are talking. When he called me first or when he told me at the hospital?

Q Your testimony yesterday, my recollection, is at the accident scene, you were trying to figure out where he was and have somebody contact him and you were offering these suggestions of different agencies where the police might -- the officers around you might try to figure out where he is. Do you recall that testimony?

MS. WILSON: Move to go into closed session.

MR. KONRAD: Any objection?

MS. MC KENZIE: I don't have any. I second.

MS. HEIN: No objection.

MR. KONRAD: No objection, then, we will now go into closed session for purposes of deliberations. It is now 12:30. We will convene at 1:25, or would you like to reconvene later?

(Discussion off the record)

MR. KONRAD: I will tell the other participants to be here by 1:25, one hour from now.

(Closed session deliberations)

MR. KONRAD: We are back in session. After deliberation for Phase I of the proceedings, we thank counsel for their hard work in presenting the evidence to us. After deliberation, the members of the Commission have voted to sustain, by a preponderance of the evidence, all three charges against Detective Shannon Lewandowski.

I have also found, by a preponderance of the evidence, that the first five "just cause" standards are satisfied. Therefore, it is appropriate now to move to Phase II of the proceedings.

of those.

MR. KONRAD: Those will be admitted.

Anything further?

MR. MC GAVER: No. We rest.

MR. PEDERSON: No.

MR. KONRAD: All right. Thank you. We will now deliberate in closed session in order to determine whether the good of the service requires the appellant be discharged or otherwise disciplined.

Do we have a motion to go into closed session?

MS. HEIN: So move.

MS. MC KENZIE: Second.

MR. KONRAD: We have a motion and second. Any objections? No objections heard, closed session.

(Closed session deliberations)

MR. KONRAD: We are now back in open session. The panel has concluded its deliberations for Phase II. The members of the panel have decided unanimously that the discipline of Detective Shannon Lewandowski should be sustained in accordance chief's order of discipline. To wit, the five-day suspension for failure to use time to accomplish the mission.

30-day suspension for failure to driving a department vehicle in a safe manner and discharge for failure to be forthright and candid in an administrative inquiry report.

Please note the ten-day rule referenced in Fire and Police Commission Rule 16(10)(f) is being waived and a written decision will be provided as soon as practicable.

We stand adjourned at 3:05 p.m. Thank you.

(WHEREUPON, THE PROCEEDINGS WERE ADJOURNED AT 3:05 P.M.)

STATE OF WISCONSIN )
)
COUNTY OF MILWAUKEE)

I, SUSAN K. TAYLOR, do hereby certify that I am a stenographic reporter; that I was present at the hearing in the above entitled action, and that I recorded the same in shorthand; that the above and foregoing is a true, correct and exact copy, in longhand, of my shorthand notes taken at said hearing.

Dated this day of 2016

SUSAN K. TAYLOR
Court Reporter

Case 2:16-cv-01089-WED Filed 01/03/18 Page 18 of 18 Document 38-5