STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY

----------------------------------------------------------------------------------------

SHANNON LEWANDOWSKI,

    Petitioner,

v.                                             Case No. 2016-CV-9243

BOARD of FIRE and POLICE COMMISSIONERS
of the CITY OF MILWAUKEE

    Respondent.

----------------------------------------------------------------------------------------

**INITIAL BRIEF OF SHANNON LEWANDOWSKI**

----------------------------------------------------------------------------------------

Petitioner Shannon Lewandowski seeks review of the order entered by the Board

of Fire and Police Commissioners on November 17, 2016. Lewandowski sought review

under WIS. STAT. §62.50, the statute governing the City of Milwaukee. Pursuant to WIS.

STAT. §62.50(21), this matter

> shall be tried by the court without a jury and shall be tried upon the return
> made by the board. In determining the question of fact presented, the
> court shall be limited in the review thereof to the question: "Under the
> evidence is there just cause, as described in sub. (17)(b), to sustain the
> charges against the accused?"

Subsumed within that standard are two matters directly related to the evidence and the

reasonableness of the Board's decision: should the Board have considered statements

taken from Lewandowski in violation of her rights under *NLRB v. Weingarten, Inc.*, WIS.

STAT. §164.02, and the Milwaukee Police Department's Rules, Regulations and Standard

Case 2:16-cv-01089-WED    Filed 01/03/18    Page 1 of 22    Document 38-8      Ex. 8

Operating Procedure (SOP)? And, should the Chief have been required to provide Lewandowski with a more definite statement of the charges against her?

## PROCEDURAL HISTORY

On December 16, 2015, City of Milwaukee Police Department Chief Edward A. Flynn submitted a letter to the Board advising that he had found Lewandowski, a City of Milwaukee Police Detective, guilty of violating three provisions of the Milwaukee Police Department's Code of Conduct:

1.   Core Value 1.00 - Competence, referencing Guiding Principle 1.03: Failure to use time to accomplish the mission of the department.

2.   Core Value 1.00 - Competence, referencing Guiding Principle 1.05, referencing Standard Operating Procedures relating to Department Owned Vehicles and Property, Section 640.15(A)(2): Failure to operate a department vehicle in a safe manner.

3.   Core Value 3.00 - Integrity, referencing Guiding Principle 3.10: Failure to be forthright and candid in connection with any administrative inquiry or report.

(R.1:1).  In the order submitted with his letter, Chief Flynn set forth the penalties he imposed:  suspension without pay for five days on the first charge, suspension without pay for thirty days on the second charge and discharge from the Department on the third charge.  (R.1:2-3).  Also on December 16, 2015, the Chief filed a complaint against Lewandowski with the Board.  (R.2).  Lewandowski appealed from the order on the same date. (R.3).  A scheduling order was established on January 8, 2016.  (R.6)

Lewandowski filed a motion for more definite statement on April 4, 2016 (R.22). The Chief responded on April 22, 2016 (R.33), and Lewandowski filed a reply on

April 29, 2016. (R.35). The hearing examiner, former deputy city attorney Rudolph M. Konrad, denied the motion for more definite statement on May 4, 2016. (R.40).

Lewandowski also filed a motion to suppress statements on April 22, 2016. (R.34). The Chief filed a response and Lewandowski filed a reply on April 29 and May 4, 2016, respectively. (R.36;R.37). Hearing Examiner Konrad denied that motion on May 19, 2016. (R.41).

The Board conducted a hearing on August 10 and 11, 2016. (R.74;R.75). At the conclusion of that hearing, the Board orally advised Lewandowski of its decision to sustain Chief Flynn's order, including his order terminating Lewandowski's employment. (R.75:472-73;R.70). At that time, but outside the formal proceedings, Hearing Examiner Konrad advised that he would be preparing a written decision, including findings of fact and conclusions of law, and advised Lewandowski of her appellate rights; however, that decision was not executed until November 17, 2016, and was not mailed to the parties until November 18, 2016. (R.71;R.72). The writing was submitted well after the ten day time period provided in Board Rule XVI, §10(f). Lewandowski submitted a timely notice of appeal on November 28, 2016. (R.73).

## FACTS

On January 19, 2015, Lewandowski and Detective Juanita Carr were on duty during the power shift, which began at 8 p.m. and was scheduled to end at 4 a.m. During that shift, Milwaukee police responded to an accidental, self-inflicted shooting at 4257 North Teutonia Avenue.

At some point during the shift, Lewandowski learned that Carr was going to attempt a consent search of the home of the man who had accidentally shot himself. Lewandowski volunteered to accompany Carr for the search, but told Carr that she first had to stop at the District 5 Police Station to speak with Police Officer (now Detective) Beasley at District 5. Detective Carr agreed to Lewandowski's request. Just before they left District 3, Lewandowski received a phone call from her son Jordan, advising that he had been pulled over. Lewandowski told him to call back after the traffic stop was completed.

The two detectives left District 3, with Lewandowski driving. Lewandowski gave Carr her cell phone as she does not use it while driving. Between 36th and 35th Streets and North Avenue, Lewandowski noticed a car in the bike lane on the side of the road. Not knowing whether the car was going to pull into traffic, and knowing that there was significant prostitution activity in the area, Lewandowski activated the squad car's lights and may have chirped the sirens. She did this so the people in and near the car would be notified that they were being watched and to prevent the car from pulling into her lane of traffic.

After passing the vehicle, and before she could turn off the emergency lights (R.74:254), Lewandowski saw a vehicle approaching the intersection of 35th Street and North Avenue. Even though she had the green light and right of way, she realized the other car was not going to stop. Lewandowski slammed on her brakes but could not avoid a collision. The crash resulted in severe injuries to both detectives. Lewandowski was knocked unconscious for three to four minutes and suffered: Cervical

Musculoligamentous, a neck injury that causes delayed speech and memory loss; a concussion; whiplash; a sprained right ankle; a torn ankle ligament; bruising and swelling. (R.60 – Medical records of Shannon Lewandowski.)

Shortly after arriving on the scene of the accident, Carr and Lewandowski's supervisor, Lt. Sean Hanley, contacted Detectives Kenyatte Wooden and Troy Johnson and instructed them to come to the scene of the accident for witness interviews. Lt. Hanley reported that he "did this because of the possibility of serious injuries to the detectives involved in the accident and the need for detailed interviews due to the possibility of violations of Rules and Regulations and SOP." (R.50 - Milwaukee Police Department Incident Report Prepared by Lt. Hanley, MPD Bates nos. 180-185 at 184).

At the accident scene, Lewandowski was hysterical, yelling and screaming. (R.74:218,226,233). When asked by different people what they could do for her, she told one of them, knowing that her son was going to be trying to reach her, to contact her son, but kept providing an incorrect phone number. (R.74:231,255). She then told people Jordan was at a traffic stop and was somewhere on the east side in the UW-Milwaukee area, suggesting they contact District 5 to see if there was a record of the stop. (R.74:256-57). Soon thereafter, she saw Officer Debora Stacey, who agreed to go find Jordan. (R.74:258).

Both at the scene and at the hospital, Lewandowski was slurring her words and, in the words of those who observed her, was not making any sense. (R.74:146,211,217,218,221,222). Lt. Hanley and others testified that he went to Lewandowski's hospital room (R.74:42-43;R.75:395); however, in a subsequent

5

interview with Internal Affairs, Lt. Hanley indicated that Lewandowski was "under medication" and he was unable to speak with her at the hospital. (R.74:63). Lewandowski has no memory of seeing Lt. Hanley at the hospital and is adamant that she did not talk to him there. (R.74:258-59). She explained that is why she called Lt. Hanley, placing calls to him at 5:24 a.m. before being discharged from the hospital and again at 6:38 a.m. after returning home. (R.74:258-59;R.75:334). Lewandowski testified that she contacted Lt. Hanley after leaving the hospital because proper protocol was not to just go home, but to contact her supervisor and also to confirm where her gun and gun belt were. (R.74: 259-61;R.75:334-35).

The critical issue in this case arises from the 6:38 a.m. phone call and Lewandowski's and Lt. Hanley's differing recollections of what was said during that call. Lt. Hanley's version of the phone call led to the first two charges – of failing to use time to accomplish the mission of the department and failing to operate a department vehicle in a safe manner. The third charge -- failure to be forthright and candid with the Internal Affairs inquiry -- arose from Lewandowski's insistence that Lt. Hanley's recollection of her statements during the phone call was wrong. She also questioned whether she was being retaliated against for her involvement with a fellow officer who had accused a member of the Tactical Enforcement Unit of sexual assault.

Lt. Hanley testified, and stated in his report and in his interviews with Internal Affairs, that Lewandowski told him she had received a call from her son who was involved in a traffic stop near the UWM area and, at the time of the accident, she was on her way to assist him. (R.74:50-51). This testimony was seemingly consistent with

reports from unidentified persons at the accident scene who indicated Lewandowski talked about her son and UWM. (R.74:57-58). Lewandowski is adamant that she was not on her way to UWM, did not know exactly where Jordan was, and would "never" intervene in another department's stop, even though it involved her own family member. (R.74:281;R.75:340). She also was adamant that while she told Lt. Hanley that her son had been pulled over, she never told him she was on her way to UWM at the time of the accident or that she was traveling 45 mph in a 30 mph zone. (R.74:262,267-68;R.75:340).

Lewandowski was never given a PI-21 notice[1] – a form instructing a department member to contact Internal Affairs to give a statement – prior to her phone call with Lt. Hanley on January 19, 2015. (R.74:172-74). Despite this, Lt. Hanley reported the information he obtained in this interrogation to Sgt. Adam Zieger, an Internal Affairs investigator, who utilized this information in the investigative report that he prepared. (R.56 - September 9, 2015 Milwaukee Police Department Memorandum from Zieger to Brunson, MPD Bates nos. 0233-0254 (and elsewhere) at 0239, 0248-0249). Lewandowski was "shocked" on April 8, 2015, when she first was provided a copy of Lt. Hanley's report setting forth his version of the phone call. (R.75:348). Indeed, Internal Affairs did not present Lewandowski with a formal form PI-21 or inform her of her rights, as specified in WIS. STAT. §164.02 and §111.70(2), until April 8, 2015. (*See id.*).

---

[1] That notice advises a department member that her actions were subject to an Internal Affairs Division investigation, that there was potential for disciplinary action against her, that if she refused to cooperate or answer questions that disciplinary actions could be taken against her, or that she could have a representative of her choice present at the questioning.

## STANDARD OF REVIEW

Statutory review under WIS. STAT. §62.50(20) is the exclusive procedure for a circuit court to review the Board's just cause determination. This statutory appeal provides for a de novo review of the record after which the circuit court makes a decision as to whether there is "just cause" (as described in §62.50(17)(b)) to sustain the charges against the accused. WIS. STAT. §62.50(21).

## ARGUMENT

Wisconsin law is clear that police department personnel may not be disciplined or their employment terminated absent "just cause":

(b) No police officer may be suspended, reduced in rank, suspended and reduced in rank, or discharged by the board under sub. (11), (13) or (19), or under par. (a), based on charges filed by the board, members of the board, an aggrieved person or the chief under sub. (11), (13) or (19), or under par. (a), unless the board determines whether there is just cause, as described in this paragraph, to sustain the charges. In making its determination, the board shall apply the following standards, to the extent applicable:

1. Whether the subordinate could reasonably be expected to have had knowledge of the probable consequences of the alleged conduct.
2. Whether the rule or order that the subordinate allegedly violated is reasonable.
3. Whether the chief, before filing the charge against the subordinate, made a reasonable effort to discover whether the subordinate did in fact violate a rule or order.
4. Whether the effort described under subd. 3. was fair and objective.
5. Whether the chief discovered substantial evidence that the subordinate violated the rule or order as described in the charges filed against the subordinate.
6. Whether the chief is applying the rule or order fairly and without discrimination against the subordinate.
7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the subordinate's record of service with the chief's department.

8

Wis. Stat. §62.50(17)(b). By statute, §62.50 applies only to cities of first class – *i.e.* Milwaukee – whereas a sister statute, WIS. STAT. §62.13, applies to other cities. In addressing §62.13, the Wisconsin Supreme Court described the purpose and intent of statutory review of a board or agency's application of the just cause standards: "The statutory procedure ensures that police officers and firefighters are not 'wrongfully disciplined and provides them with a sufficient remedial process in the event that they are wrongfully disciplined.'" *City of Madison v. State Dep't of Workforce Dev., Equal Rights Div.*, 2003 WI 76, ¶32, 262 Wis. 2d 652, 669, 664 N.W.2d 584 (quoting *Larson v. City of Tomah,* 193 Wis.2d 225, 232, 532 N.W.2d 726 (1995)).

In this case, Lewandowski was disciplined and ultimately fired based on statements she made within hours of a horrific traffic accident, in which she initially lost consciousness, and after which observers described her as hysterical, slurring her words and not making any sense. Under those conditions, it is no wonder that both officers at the scene and Lt. Hanley misunderstood what she was saying. After the accident, Lewandowski was frantic that someone find her son. She could not recite his telephone number but knew, because of their earlier phone conversation, that he had been stopped by a police officer and knew generally where he might be based on where he lived.

The reports presented into evidence related to Lewandowski's repeated requests that someone find her son after the accident. The combination of her hysterical, agitated state and her slurred words made it difficult for the officers at the scene to

9

understand her and, apparently, some unknown and unnamed officers suggested she was saying she was on her way to pick up her son at the time of the accident, not that she wanted someone to pick him up *after* the accident. Indeed, the Chief did not present the testimony of any witness who was at the scene who unequivocally stated that Lewandowski told him or her she was on her way to UWM to pick up her son when the accident occurred.

Moreover, this conclusion – that Lewandowski was on her way to UWM – conflicts with Lewandowski's and Detective Juanita Carr's testimony, and the stipulated statement of Officer Melanie Beasley (R.55), that they were on their way to District 5 to meet with Beasley. Beasley's statement corroborates Lewandowski's testimony. She had been at District 5 speaking with Beasley earlier in the shift. Lewandowski had to leave and they agreed Lewandowski would return between 2 and 3 a.m. Beasley wanted to speak with Lewandowski about many things, including completing a report. (*Id.*). Lewandowski identified one of the other things Beasley wanted to discuss was a personal matter involving harassment she was receiving after reporting a sexual assault and obtaining a restraining order against a fellow officer some weeks earlier. The Chief presented no evidence contradicting Beasley's statement or Lewandowski's or Carr's accounts of why they were going to District 5.

The Chief's charge that Lewandowski was not using her time to accomplish the mission of the department was rooted in two completely different theories -- she either was going to pick up her son at UWM OR was going to meet Beasley – and the Chief posited that either theory would support the charges. As discussed below, the Chief's

approach creates two issues that render the Chief's efforts and the proceedings before the Board unreasonable and unfair.

> **I.** **Lewandowski's January 19, 2015 Statements Were Taken In Violation Of Her Rights Under *NLRB v. Weingarten, Inc.* And WIS. STAT. §164.02.; Therefore, The Board's Reliance On Those Statements To Impose Discipline Violated The Just Cause Standards And The Board's Order Should Be Reversed.**

The United States Supreme Court has held that an employee has a "right of union representation at investigatory interview which the employee reasonably believes may result in disciplinary action against him." *NLRB v. Weingarten, Inc.*, 420 U.S. 251, 267 (1975). Wisconsin has codified the provisions of *NLRB v. Weingarten, Inc.* with regard to law enforcement officers at WIS. STAT. §164.02. This statute provides that law enforcement officers under investigation for internal department rule violations are entitled to: (1) be informed of the nature of the investigation prior to interrogation, and (2) be provided a representative should the officer request one, WIS. STAT. §164.02(1)(a)-(b). More important for purposes of this case, WIS. STAT. §164.02(2) mandates that "[e]vidence obtained during the course of any interrogation not conducted in accordance with sub. (1) may not be utilized in any subsequent disciplinary proceeding against the law enforcement officer." In *Slawinski v. Milwaukee City Fire and Police Com'n*, where the Court of Appeals noted the circuit court's proper application of the statute in finding that the petitioner-officer's statements made without being informed of his rights should be suppressed and the failure to warn violated §164.02(2). 212 Wis. 2d 777, 794-95, 569 N.W.2d 740 (Ct. App. 1997). The City of Milwaukee's policy is to inform an officer of his or her rights, as explained in *Weingarten*, *Slawinski*, and §164.02

in what is called a PI-21 form. The PI-21 form is to be given to all law enforcement officers prior to an internal interrogation. Lewandowski did not receive a PI-21 form before her phone conversation with Lt. Hanley.

The United States Supreme Court has defined an interrogation as "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). This means "any words or actions" by the investigator that the investigator "should know are reasonably likely to elicit an incriminating response" by the suspect constitutes an interrogation. *Id.*

Moreover, the burden was on the department, not Lewandowski, to ensure that she was properly informed of her rights before discussing with her supervisor a situation that may lead to discipline. Milwaukee Police Department Standard Operating Procedure, General Order 2009-33 requires:

> If a Department member is under investigation for an alleged violation of Department Rules, Procedures, or Position Responsibilities *and is subject to an interview for any reason, which could lead to disciplinary action, demotion or discharge* from the Milwaukee Police Department, such interview *shall* comply with the following requirements:
>
> 1. The supervisor assigned to conduct a personnel investigation shall, prior to obtaining any information from an accused member (the target of the investigation), inform the accused member that the matter is a personnel investigation, NOT a criminal investigation, or a claim/lawsuit investigation.
> 2. If there is any possibility that the matter being investigated could result in a criminal proceeding, the investigating supervisor shall advise the accused member that: "This is a personnel investigation. The answers you give and the fruits thereof, cannot be used against you in any criminal proceeding."
> 3. Prior to conducting an interview that requires an accused member to provide oral statements, the investigating supervisor shall complete the Internal Investigation-Informing the Member Report (Form PI-21). Note: A PI-21 shall be issued for each subsequent oral statement obtained from the same member.

12

4.      The supervisor shall request that the Department member sign the PI-21 report.  If the member refuses to sign the PI-21, the supervisor shall place the word "refused" on the signature line.

5.      The original PI-21 shall become a part of the investigative file.  A copy shall be given to the Department member.

6.      The Department member under investigation shall be informed of the nature of the Investigation prior to any interview by including a brief synopsis of the allegation(s) on the PI-21.   Include enough information so that the member is able to prepare for the interview.

7.      If proper investigation requires that the member provide information such as memorandum book entries, notes, etc., then so order the member to bring that information to the interview.  This order shall be made in writing on the PI-21.

8.      Prior to any interview, the investigating supervisor shall advise the member that:  "The refusal to respond during this interview, or any response which is untruthful, can result in suspension or discharge from the Milwaukee Police Department."

Milwaukee Police Department Standard Operating Procedure, General Order 2009-33 at 6-7.

Lt. Hanley interrogated Lewandowski via telephone only a few hours after the accident.  During that conversation, he did not caution Lewandowski that their discussion may raise questions about her actions that could subject her to discipline.  For example, the very fact of the accident could raise questions as to whether Lewandowski was properly operating the squad car, which Lt. Hanley certainly should know as a supervisor could be investigated as a disciplinary matter.  He should have, but did not, inform Lewandowski of her §164.02 rights; therefore, the phone call interrogation violated Lewandowski's rights.

That Lt. Hanley and Lewandowski's phone call a few hours after the accident was an interrogation is evident based on Lt. Hanley's preconceived determination that the accident involved rules violations.  Indeed, prior to speaking with Lewandowski,

13

Lt. Hanley sought assistance from Detectives Wooden and Johnson to come to the scene for witness interviews. In his incident report concerning the events of January 19, 2015, Lt. Hanley reported that he contacted these detectives "because of the possibility of serious injuries to the detectives involved in the accident *and the need for detailed interviews due to the possibility of violations of Rules and Regulations and SOP."* (R.50 at Bates #184) (emphasis added). Lt. Hanley's actions in contacting these detectives confirm his intent to conduct an investigation of whether Lewandowski had violated any department rules almost immediately after reporting to the scene of the accident.

Knowing this, when Lewandowski called to check in with him, Lt. Hanley could have said "no" and advised her of a potential investigation of rules violations when Lewandowski asked if he wanted to know what had happened. Instead, he used that opportunity to interrogate her without providing the required notifications. Lt. Hanley then reported the information he obtained during this phone call interrogation to Sgt. Adam Zieger, who utilized this information in the investigative report that he prepared. (R.50) Lewandowski was not formally provided with a PI-21 form and informed of her rights until April 8, 2015, almost four months after the initial interrogation conducted by Lt. Hanley.

It cannot be disputed that the Chief's case against Lewandowski was rooted in the telephone interrogation conducted a few hours after the accident. Lt. Hanley testified extensively regarding his conversation with Lewandowski, stating that she told him she was on her way to UWM to pick up her son Jordan and stating that she was

traveling 45 mph at the time of the accident. The alleged statement about picking up her son was used to establish that Lewandowski violated the first charge of failing to use her time to meet the mission of the department. The statement regarding speed was used to establish that Lewandowski violated the second charge related to her use of department equipment. If those statements were suppressed, as they should have been under §164.02(2), the Chief would not have been able to establish those charges. In addition, but for the interrogation in violation of Lewandowski's §164.02 rights, there would have been no "he said/she said" as to where she was going or how fast she was going. Lewandowski would have no reason to question the veracity of Lt. Hanley, Sgt. Zieger or anyone else involved and would not have felt she was being railroaded in retaliation for her assistance to Officer Beasley. As a result, she would not have been in a position where she felt compelled to assert that other department members misrepresented the facts and the third charge involving the integrity issue never would have arisen.

The Chief's case relied almost entirely on statements made by Lewandowski during Lt. Hanley's interrogation during the 6:38 a.m. phone call on January 19, 2015. If Lt. Hanley had complied with §164.02(1) and advised Lewandowski of her rights and waited to interrogate her until she had been served with a PI-21 form consistent with department protocol and procedure, she would have been in a position where she could have explained where she was going and what had happened after an opportunity to heal – not within hours of losing consciousness and suffering a head injury.

The process in this case was tainted by the use of statements obtained contrary to Lewandowski's rights and the Board's failure to suppress those statements further violated her rights under §164.02(2). The actions of the Chief's designees in investigating this matter were severely flawed and violated the just cause standards. The Board's decision to sustain the Chief's action and decision further violated the just cause standards and Lewandowski's rights and must be reversed.

## II. The Chief's Failure To Advise Lewandowski Of The Factual Basis Of The Charges Against Her Violated Her Rights.

The charges against Lewandowski were ambiguous and failed to specify which act or acts are alleged to have violated the Milwaukee Police Department's Code of Conduct. Accordingly, Lewandowski sought an order from the Board order requiring the Chief to provide a more definite statement of the charges, setting forth precisely how and when she violated the Code of Conduct. The Board's denial of that motion, and the subsequent presentation of the charges to the Board without that detailed explanation of how her actions violated department rules, violated the just cause requirement that the Chief or his designee make a reasonable effort to discover whether Lewandowski did, in fact, violate a rule or order and that the investigative process was fair and objective. How can the Board have concluded that the Chief made a fair, objective and reasonable effort to determine whether Lewandowski violated a department rule when the Chief could not be bothered to articulate the specific conduct that allegedly violated the department rules prior to the hearing? How is it fair and

objective for a department member to walk into a hearing room not knowing what alleged conduct will form the basis of the charges she is defending?

The arguments below demonstrate that the Board's failure to require the Chief to more definitively explain the basis of the charges taints the entire proceeding, thereby violating the legislative intent that the just cause standards be applied in a manner that "ensures police officers and firefighters are not 'wrongfully disciplined and provides them with a sufficient remedial process in the event that they are wrongfully disciplined.'" *City of Madison v. State Dep't of Workforce Dev., Equal Rights Div.*, at ¶32; *Larson v. City of Tomah,* 193 Wis. 2d at 232.

### A. The Charge That Lewandowski Failed To Operate A Department Vehicle In A Safe Manner Is Vague, Ambiguous, And Fails To Allege Any Act By Lewandowski That Was Unsafe, Discourteous, Or In Violation Of A Traffic Law.

Lewandowski was charged with failing to operate a vehicle in a safe and courteous manner while complying with all traffic laws. In support of that charge, the Chief presented testimony that Lewandowski was traveling over the speed limit, and that she improperly activated the emergency lights and siren on the squad.

As discussed above, the only "evidence" as to Lewandowski's speed was Lt. Hanley's statement, which should have been suppressed. Moreover, given Lewandowski's injuries, if she mentioned speed at all, which she denied, she just as likely was discussing the speed of the vehicle that ran the red light and collided with the squad. Notably, there was no testimony by an accident reconstructionist and the

report of an eyewitness confirms that it was the other driver that was moving over 40 mph:

> Ms. Hernandez described the squad was traveling about 30 to 35 miles per hour as it approached the intersection and collided with the vehicle traveling north on North 35th Street at approximately 40 to 45 miles per hour. Ms. Hernandez indicated the accident was caused by the white colored vehicle failing to stop for the red light.

(R.56:4).

As for using the emergency lights, the Chief presented no explanation of what Lewandowski did wrong. Was this assertion rooted in the theory that Lewandowski was on her way to pick up her son Jordan and activated the emergency lights to get to him more quickly? If so, then those details should have been alleged. Or, was the theory that Lewandowski should not have used the emergency lights or "blurped" her siren at the vehicle straddling the bike lane to signal that driver to stay in his lane or to warn of a police presence? If that was the basis of the charge, where in the department rules is such action prohibited?

Moreover, although the charge states that the department vehicle was determined to be "totaled," the charge says nothing about the fact that Lewandowski had the green light right of way and the accident was caused by a speeding driver who ran a red light. The charge does not cite a single law violated by Lewandowski and does not state how her conduct in operating the squad was unsafe, discourteous, or illegal.

The vehicle charge alleges that Lewandowski violated the Code of Conduct by failing to operate the vehicle in a safe and courteous manner and/or in compliance with traffic laws, but did not explain how. The failure to provide allegations that allowed Lewandowski to defend herself, rather than vague, ambiguous and multi-theoried allegations, demonstrates that the Chief and his designees failed to make a reasonable effort to discover whether Lewandowski in fact violated a rule or order and that further demonstrates that the investigative process was not fair and objective.

**B. The Charge That Lewandowski Failed To Use Time To Accomplish The Mission Of The Department Is Vague, Ambiguous and Fails To Set Forth Facts Demonstrating Any Violation Of The Code Of Conduct.**

Lewandowski was charged with failing to render service to the community promptly and efficiently and failed to use her time to accomplish the mission of the department. That charge does not assert how her act was a violation of the Code of Conduct.

The charging document does state that Lewandowski was going to District 5 to help an officer with a "personal issue." Officer Beasley's "personal issue" was that she had been sexually assaulted by a fellow department member and, due to the threatening presence of other officers in that officers unit at District 5, she feared for her safety. It is in this factual context that the Department has charged Lewandowski with violating the Code of Conduct's directive that Department members use their time to accomplish the mission of the Department. The charge does not state how responding

to an officer's request for help, pursuant to training received by Lewandowski and others, fails to accomplish the mission of the Department.

Moreover, the charge against Lewandowski is not clear as to whether the charged violation of failing to use her time to meet the department's mission was that she responded to Officer Beasley's request for assistance or that she was en route to handle some other so-called "personal issue" while on duty; namely, the theory that she was on her way to pick up her son Jordan. At the very least, fairness in the proceedings require that Lewandowski be advised what conduct gave rise to the charges. The Chief's failure to provide the factual basis for the charge violates just cause.

### C. The Charge That Lewandowski Failed To Be Forthright and Candid In Connection With Any Administrative Inquiry Or Report Is Vague, Ambiguous, And Fails to Allege With Particularity Any Act In Violation Of The Code Of Conduct.

Finally, Lewandowski was charged with failing to be forthright and candid in connection with an administrative inquiry. The charges themselves were unclear as to how she failed to be forthright or candid. Lewandowski provided a detailed explanation of what she was doing and where she was going after she received the PI-21 form. Her statement that she was en route to meet Beasley was corroborated not only by Carr, but also by Beasley.

As a result of the collision with the impaired driver, Lewandowski was badly injured, confused, and incoherent. She knew her son had been pulled over somewhere near the UWM campus, but she did not know where he was. She was not being dishonest about anything at the scene. She was badly injured and wanted her son

informed of the accident and brought to the hospital. As her statements at the scene demonstrate, she did not know where he was.

The charging documents did not allege how Lewandowski failed to be forthright or candid. At most, the charge set forth a series of alleged facts and added a bare conclusion. What was it that she lied about? When did the alleged lie occur? What is the truth proving the lie? Without knowing what is alleged, Lewandowski was asked to defend a moving target.

Forcing a department member to defend any charge, let alone an integrity charge, without advising her of the specific factual basis for that charge was neither fair nor proper, and certainly fails to meet the criteria for just cause set forth in §62.50(17)(b) and to ensure that she was not wrongly disciplined.

### III. The Chief Failed To Establish Just Cause For The Discipline Imposed On Lewandowski And For Terminating Her Employment.

At most, the Chief's case established that Lewandowski, intent on checking in with her supervisor after the accident, called Lt. Hanley shortly after an accident in which she struck her head and lost consciousness and after which she was incoherent and slurring her words. It was established that even before speaking with Lewandowski, Lt. Hanley believed Lewandowski's conduct may have involved violations of department rules such that he asked two other department members to investigate. Yet, when Lewandowski called and asked if he wanted to know what happened, he did caution her of the investigation, did not advise her of her rights, did not suggest that they speak later after she had rested and her mind was clear and did

21

not provide any of the notifications required by Wisconsin law. The Chief's own case demonstrated that all of the charges against Lewandowski were rooted in that phone interrogation conducted in violation of Lewandowski's rights.

## CONCLUSION

For all of the foregoing reasons, petitioner Shannon Lewandowski respectfully urges this Court to reverse the Board's determination and order that she be reinstated to her position of Detective in the City of Milwaukee Police Department.

Dated this 13ᵗʰ day of January, 2017.

GIMBEL, REILLY, GUERIN & BROWN LLP

By: _____

D. MICHAEL GUERIN
State Bar No. 1010343
dmguerin@grgblaw.com
STEVEN C. McGAVER
State Bar No. 1051898
smcgaver@grgblaw.com
Attorneys for Appellant
Shannon Lewandowski

POST OFFICE ADDRESS:

330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440
*civ/Lewandowski,Sharron/a/initialbrief tocircuti court2017-01-09*

22