| STATE OF WISCONSIN | CIRCUIT COURT<br>BRANCH 25 | MILWAUKEE COUNTY |
|---|---|---|

SHANNON LEWANDOWSKI,

      Petitioner,

v.

Case No. 16-CV-9243

BOARD of FIRE and POLICE COMMISSIONERS
of the CITY OF MILWAUKEE,

      Respondent.



**DECISION AND ORDER**

This is an appeal from a determination of the Board of Fire and Police Commissioners of the City of Milwaukee ("Board") upholding the discipline imposed by Police Chief Edward A. Flynn ("Chief") upon Milwaukee Police Department ("MPD") officer Shannon Lewandowski ("Lewandowski"). Lewandowski petitioned this Court for statutory review of "just cause" pursuant to Wis. Stat. § 62.50(20) regarding the Board's decision on November 17, 2016. Upon a thorough review of the record and submissions, and for the reasons stated herein, this Court **AFFIRMS** the Board's decision.

## BACKGROUND

On January 19, 2015, Lewandowski and Detective Juanita Carr ("Carr") were on duty in District Three. During their shift, MPD responded to an accidental, self-inflicted shooting. Lieutenant Sean Hanley ("Lt. Hanley") was investigating this shooting and ordered Carr to proceed to the victim's house to conduct a consent search for the firearm involved. Lt. Hanley directed that Carr take a second officer to ensure officer safety. Subsequently, Lewandowski volunteered to go with Carr to retrieve the firearm.

1

Soon after Lewandowski and Carr left District Three, Lewandowski told Carr that she needed to stop at the District Five Police Station to meet with Police Officer (now Detective) Beasley. The parties are in dispute as to Lewandowski's stated reason for needing to meet with Det. Beasley. Regardless, all recognize that meeting with Det. Beasley was not authorized by Lewandowski's commanding officer. Carr agreed to Lewandowski's request. Before they headed to District Five, Lewandowski received a phone call from her son, advising that he had been pulled over for a traffic violation.

At approximately 2:00 a.m., Shorewood Police Officer Smith pulled over a vehicle by Jordan Lewandowski, the then 19-year old son of Lewandowski near the campus of the University of Wisconsin-Milwaukee ("UWM"). When Officer Smith approached the vehicle, Jordan gave Officer Smith his mother's MPD business card and informed Officer Smith that Lewandowski was an MPD detective. The parties are in dispute as to what was communicated to Officer Smith by Jordan Lewandowski. Officer Smith testified that Jordan told him that Jordan's mother was coming to meet him. Jordan has denied making that statement.

Sometime before being advised of her son's traffic stop, Lewandowski and Carr left District Three, with Lewandowski driving. While driving east bound on North Avenue, east of 35th Street, Lewandowski turned the squad car's emergency lights on. The parties are in dispute as to why she turned the emergency lights on, but agree that they were activated. At approximately 2:17 a.m., Lewandowski and Carr's vehicle was struck by another vehicle in the intersection of 35th Street and North Avenue. The crash resulted in injuries to both Lewandowski and Carr.

MPD Standard Operating Procedure ("MPD SOP") requires an accident investigation be conducted in the event of an officer involved in a traffic accident. Lt. Hanley arrived at the scene

2

at approximately 2:32 a.m. The parties are in dispute as to Lewandowski's mental and physical condition immediately after the accident. When Lt. Hanley arrived on the scene, he briefly spoke to and checked on both Lewandowski and Carr.

MPD Sergeants Wade Grubich and Adam Riley, who were some of the first officers on scene, reported to Lt. Hanley. MPD SOP required Lt. Hanley to complete his accident investigation within 3 days. To accomplish this, Lt. Hanley ordered Detective Kenyatte Wooden and Detective Troy Johnson to interview witnesses on scene.[1]

Sgt. Grubich stated that Lewandowski and Carr did not tell him what happened. (Page 11, Sgt. Zieger's summary of the IAD investigation dated September 9, 2015). Further, Sgt. Grubich stated that the citizen witnesses on scene told him that Lewandowski's emergency lights were activated when the car was struck. *Id.* A citizen witness, Jasmin Hernandez, also observed Lewandowski use a phone and state something to the effect that she needed to get her son from the UWM Police Department. *Id.* at p. 9

Sgt. Riley was also informed that Lewandowski was operating an unmarked vehicle heading east on West North Avenue, with the emergency lights activated, and was responding to a matter with her son. *Id.* Sgt. Riley did not recall who provided this information to him, and stated there were several District Three officers from different shifts and other TEU officers on scene.

Officer Joseph Boehlke and Officer Steven Kuspa also responded to the accident. Officer Boehlke indicated the only thing he heard from Lewandowski was "just something about her

---

[1] There were several citizen witnesses at the scene of the accident who were interviewed including: Christopher Thurman, Shannon Schulte, Malik Townsend, Darryl Owens, Evette Spencer, Biaya Kadima, and Jasmin Hernandez. There were also several police officers at the scene of the accident who were interviewed including: Officer Andrew Gross, Officer Debora Stacey, Officer William Krumnow, Officer Scott Wieting, Officer Michael DeStefanis, Officer Ryan Fekete, Officer Sean Aines, Officer Jesse Vollrath, Officer Alexander Muter, Officer Joseph Goggins, Sergeant Grubich, and Sergeant Riley. . *See generally*, Sgt. Zieger's summary of the IAD investigation dated September 9, 2015.

son, that she had to get her son." *Id.* at 12. Officer Kuspa explained that Lewandowski "had an apparent leg injury, was very incoherent, and kept saying, 'Go get my son.'" *Id.* Officer Kuspa also stated that Lewandowski would not answer his questions about her injuries and just kept aggressively yelling to get her son because he was stopped by the UWM police. Officers Boehlke and Kuspa reported this information to Sgt. Grubich.

Lt. Hanley drove to Froedert Hospital. The parties are in dispute as to Lewandowski's ability to communicate at the hospital. Lewandowski explains that she was slurring her words and, in the words of those who observed her, was not making any sense. (R. 74: 146, 211, 217, 218, 221,222). Lt. Hanley initially stated that he was unable to obtain a response about what happened from Lewandowski. (Page 16, Sgt. Zieger's summary of the IAD investigation dated September 9, 2015). However, he later testified that Lewandowski was talking fine. (R. 74: 42-43). Both parties agree that she was complaining about an injury to her foot.

By 6:38 a.m. Lewandowski had been discharged from the hospital. At that time she initiated a phone call to Lt. Hanley. A critical issue in this case arises from this call, and Lewandowski and Lt. Hanley's differing recollections of the conversation.

Lt. Hanley's report of the call states in summary: Lewandowski told him that prior to the accident, she was assisting Carr on her assignment when she (Lewandowski) was contacted by another MPD officer, Det. Beasley, concerning a personal matter. Det. Beasley, who was at District Five, apparently felt unsafe and asked Lewandowski if she would meet her at District Five for support. Lewandowski further reported that while she was en route to District Five, she received a call from her son who told her that he had been pulled over by the UWM police. Per Lt. Hanley, Lewandowski stated that she told her son to call back with a specific location, and that she then proceeded to the UWM area to find him. Lewandowski reported to Lt. Hanley that

4

she was driving approximately 45 miles per hour eastbound on West North Avenue approaching 35th Street using her emergency lights to make cars get out of her way. Lewandowski's reported basis for having the emergency lights activated was to get to UWM quickly.[2] Lt. Hanley reported that Lewandowski sounded lucid and responsive to him. She showed no reservation about speaking with him, nor seemed to have any difficulty communicating.

In contrast, Lewandowski's version of the phone call is as follows: She was not on her way to UWM; she did not know exactly where Jordan was, and that she would never intervene in another department's stop, even though it involved her own family. She told Lt. Hanley that her son had been pulled over; however, she denies that she was on her way to UWM at the time of the accident and denies she was traveling 45 mph in a 30 mph zone.

On January 21, 2015, Lt. Hanley interviewed Carr at her home. Lt. Hanley completed his accident report on January 22, 2016 and forwarded it to acting Captain Johnny Sgrignuoli. Lt. Hanley did not recommend discipline against either Carr or Lewandowski. Capt. Sgrignuoli, however, forwarded the report to Internal Affairs for further investigation.

Internal Affairs Sergeant Adam Zieger received the assignment to investigate the incident. Sgt. Zieger interviewed Carr and Lewandowski, Officer Smith, Jordan Lewandowski, Ms. Hernandez, Sgt. Grubich, Sgt. Riley, Officer Boehlke, Officer Kuspa, and Detective Beasley. *See generally*, Sgt. Zieger's summary of the IAD investigation dated September 9, 2015. He also reviewed the police reports and accident report. Lewandowski was served with charges on or about October 7, 2015 and November 20, 2015. Lewandowski submitted three separate written responses to the charges claiming untruthfulness by Lt. Hanley, among other allegations.

---

[2]Lewandowski did not state – as she would later claim – that her emergency lights were activated to prevent an accident with a vehicle in the parking lane that appeared to be about to pull in front of her.

# PROCEDURAL HISTORY

On December 16, 2015, the Chief ultimately submitted a letter to the Board advising that he had found Lewandowski guilty of violating three provisions of the MPD's Code of Conduct:

1. Core Value 1.00 – Competence, referencing Guiding Principle 1.03: Failure to use time to accomplish the mission of the department.
2. Core Value 1.00 – Competence, referencing Guiding Principle 1.05, referencing Standard Operating Procedures relating to Department Owned Vehicles and Property, Section 640.15(A)(2): Failure to operate a department vehicle in a safe manner.
3. Core Value 3.00 – Integrity, referencing Guiding Principle 3.10: Failure to be forthright and candid in connection with any administrative inquiry or report.

In the order submitted with his letter, Chief set forth the penalties he imposed, suspension without pay for five days on the first charge, suspension without pay for thirty days on the second charge and discharge from the Department on the third charge. Also on December 16, 2015, the Chief filed a complaint against Lewandowski with the Board. Lewandowski appealed from the order on the same date. Lewandowski filed a motion for a more definite statement on April 4, 2016. The hearing examiner denied her motion on May 4, 2016. Lewandowski also filed a motion to suppress the 6:38 A.M. phone call on April 22, 2016. The hearing examiner also denied that motion.

The Board conducted a hearing on August 10 and 11, 2016. Officer Smith, Lt. Hanley, Sgt. Zieger, Carr, Jordan Lewandowski, Officer Debora Stacey, Officer Jesse Vollrath, Officer Denise Brown-Rogers, and Lewandowski all testified. There were 21 exhibits marked and received at the appeal hearing including the MPD Squad Incident Report completed by Lt. Hanley, Sgt. Zieger's summary of the IAD investigation, and the MPD charges against Lewandowski. After hearing all of the evidence and reviewing the exhibits, the Board affirmed

6

the Chief's discipline of Lewandowski. Lewandowski now appeals and petitions the Court for statutory review of "just cause" pursuant to Wis. Stat. § 62.50(21).

## STANDARD OF REVIEW

Under statutory review, the Court must determine whether, under the evidence, there is just cause as described in sub. 17(b) to sustain the charges against the accused. *Vidmar v. Milwaukee City Bd. of Fire Police Com'rs.*, 2016 WI App 93, ¶ 33, 372 Wis. 2d 701, 889 N.W.2d 443.

> Wis. Stat. § 62.50 states:
>
> (17) Decision, Standard to Apply . . .
>
> (b) No police officer may be suspended, reduced in rank, suspended and reduced in rank, or discharged by the board under sub. (11), (13) or (19), or under par. (a), based on charges filed by the board, members of the board, an aggrieved person or the chief under sub. (11), (13) or (19), or under par. (a), unless the board determines whether there is just cause, as described in this paragraph, to sustain the charges. In making its determination, the board shall apply the following standards, to the extent applicable:
>
> 1. Whether the subordinate could reasonably be expected to have had knowledge of the probable consequences of the alleged conduct.
> 2. Whether the rule or order that the subordinate allegedly violated is reasonable.
> 3. Whether the chief, before filing the charge against the subordinate, made a reasonable effort to discover whether the subordinate did in fact violate a rule or order.
> 4. Whether the effort described under subd. 3 was fair and objective.
> 5. Whether the chief discovered substantial evidence that the subordinate violated the rule or order as described in the charges filed against the subordinate.
> 6. Whether the chief is applying the rule or order fairly and without discrimination against the subordinate.
> 7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the subordinate's record of service with the Chief's Department.

7

A circuit court determines whether the evidence supports an order of the Board of Fire and Police Commissioners. *Gentilli v. Board of Fire & Police Comm'rs of the City of Madison*, 2004 WI 60, ¶ 35. The circuit court must ensure that the "Board's decision is supported by the evidence that the Board found credible." *Id.*

> While the post-1993 statute more specifically defines the "just cause" test than the pre-1993 statute defined the "reasonableness" test, both the "just cause" and the "reasonableness" determinations are based "upon the evidence." Furthermore, the pre-1993 "reasonableness" standard seems to encompass much if not all of the "just cause" standard, and both the "just cause" and the "reasonableness" standards are ultimately based on the proposition that the grounds for an order of a board of police and fire commissioners must be reasonable.

*Gentilli*, at ¶¶ 35, 36. The Board's decision must be reasonable, based on the evidence. *Younglove v. City of Oak Creek Fire & Police Comm'n*, 218 Wis.2d 133, 139, 579 N.W.2d 294 (Ct. App. 1998). "Reviewing tribunals defer to credibility determinations made by those who hear and see the witnesses." *Id.*

## DISCUSSION

Lewandowski moves this Court to reverse the Board's November 17, 2016, decision arguing that based on the evidence, it was unreasonable for the Board to conclude that there was just cause to sustain the charges. Lewandowski makes three arguments in her moving papers.

### A. Is the Factual Record Sufficient for the Board to have Reasonably Concluded that the Just Cause Standards were met?

Lewandowski claims that she was disciplined and ultimately fired based on statements that she allegedly made within hours of a horrible traffic accident, in which she initially lost consciousness. Lewandowski challenges the notion that she was completely coherent and capable of being questioned by her superior officer only hours after a horrible traffic accident. The combination of her mental state at the time and her slurred words made it difficult for the

8

officers at the scene to understand her. Officer Kuspa thought that Lewandowski may have hit her head because she was very incoherent. (Page 12, Sgt. Zieger's summary of the IAD investigation dated September 9, 2015). Officer Debora Stacey also stated that it appeared Lewandowski had a head injury because she was slurring her words and looked very upset and hurt. (R-74:218). Officer Jesse Vollrath explained that Lewandowski was screaming hysterically because she was worried about her kids. (R-74:226).

The Board responded, finding that any request for relief premised on this claim must fail. The Board reasons that it did not consider Lewandowski's statements at the scene in reaching its decision, recognizing her condition at the time she allegedly made them. In its written findings, the Board stated: "The reported statements of the TAG officers at the scene of the accident are ambiguous, reported via hearsay, and purport to be reports of what Lewandowski said immediately after she sustained injuries in the accident. Accordingly . . . the Commission does not rely on those statements in reaching its conclusions." (R-71 at ¶ 25).

In her reply brief, Lewandowski explains that there is a flaw in the Board's reasoning because it ignores the fact that it was the very reporting of the officers at the scene that led Lt. Hanley to open his investigation into whether Lewandowski had violated any Department rules. Therefore, by relying on Lt. Hanley's testimony, Lewandowski argues that the Board did rely on a significant amount of hearsay testimony that was presented to Lt. Hanley at the scene of the accident.

This Court finds that the record reveals that the Board made it very clear that it did not rely on Lewandowski's statements immediately following the accident. It is not unreasonable to conclude that the Commission relied on other evidence to support its determination other than the testimony of Lewandowski and the officers present immediately after the accident. This

9

Case 2:16-cv-01089-WED   Filed 01/03/18   Page 9 of 17   Document 38-11

Court is not persuaded by Lewandowski's allegation that it was Lt. Hanley's reliance on the hearsay at the time of the accident that prompted him to open an investigation in the first place. An investigation was determined to be necessary because of the possibility of serious injuries to Lewandowski and Carr. Based on this, Lt. Hanley assigned Sgt. Grubich and Sgt. Riley to conduct an investigation.

Lewandowski also argues that the Board accepted and relied on Lt. Hanley's version of events, i.e., that the investigation revealed that Lewandowski stated she was going to UWM at the time of the accident. The contradictory testimony of Jordan Lewandowski, Carr, and Officer Beasley was that Lewandowski was actually going to District 5. Lewandowski argues that the Chief has presented no evidence contradicting these three witness statements, which directly conflict with Lt. Hanley's testimony. She further maintains that it was unreasonable for the Board to give credence to Lt. Hanley's version of events considering the proximity of Lewandowski's accident and injury, and that her recollection of events that morning was inconsistent with other testimony. The Chief disagrees with this assertion.

In its response brief, the Chief argues that the Board's conclusion was not unreasonable. The Chief points out that when Lewandowski called Lt. Hanley after she left the hospital, she *admitted* to him that she had been going to UWM at the time of the accident. It was only after Lewandowski came under disciplinary investigation that she changed her version of events and claimed she was going to District Five. Lewandowski similarly refused to admit that she even had spoken to Lt. Hanley at the hospital – a claim contradicted by two other witnesses including her own son. (R-24:205). The Chief argues that it was not unreasonable for the Board to conclude that Lewandowski was not credible.

Similarly, the Chief argues that it was not unreasonable for the Board to find that Carr's testimony lacked credibility. Carr gave testimony in her first interview which she later contradicted in her filed PI-21 interview to Internal Affairs. Carr explained this contradiction, asserting that her memory had suffered from injuries sustained in the accident.

The Board gave heavier weight to the testimony of Officer Cody Smith. They found his testimony straightforward and credible. (Page 11, Written Decision and Findings of the Board, November 17, 2016). They also found that he had no reason to lie about his observations. *Id.*

In addition, the Board compared Officer Beasley's testimony to Lewandowski's testimony. During a non PI-21 interview, Officer Beasley acknowledged she intended to meet Lewandowski at District Five at about the time the accident had occurred. However, Lewandowski did not mention anything about needing to meet with Officer Beasley for a police purpose until after the investigation started. Therefore, the Board did not give much weight to Beasley's testimony.

It was not unreasonable for the Board to conclude that Lewandowski was on her way to UWM at the time of the accident. This conclusion was based on a credibility determination as there was conflicting testimony from several witnesses on this point. *See supra* p. 3-4. This Court defers to the credibility determinations of the Board. *Younglove*, 218 Wis.2d 139. It was not unreasonable for the Board to conclude that Officer Smith was credible. Similarly, it was not unreasonable for the Board to find that Lewandowski and Carr lacked credibility due to their own contradictory testimony. Arguably, Lewandowski could still have been found in violation of the MPD Core Value of Competence regardless of whether she was going to UWM or to District Five, because either way she was failing to use time to accomplish a mission previously assigned. It is undisputed that Lt. Hanley ordered Carr and Lewandowski to retrieve the firearm.

11

It is also clear that Lewandowski did not leave District Three with the intention of retrieving the firearm as Lt. Hanley had ordered. Whether she was going to District Five or UWM is irrelevant as neither action was for a legitimate law enforcement objective. Either purpose is properly construed as a violation of MPD Rules.

## B. Should Lewandowski's statements from the 6:38 A.M. phone call with Lt. Hanley be excluded?

Lewandowski's second claim is that her statement from the 6:38 A.M. phone call was taken in violation of her rights under Wis. Stat. § 164.02 and the MPD SOP, therefore, the Board's reliance on those statements to impose discipline violated the just cause standards. She argues that it was not reasonable for the Board to rely upon Lt. Hanley's version of her statements during the telephone call immediately following the accident.

> Wis. Stat. § 164.02 provides that:
>
> > (1) If a law enforcement officer is under investigation and is subjected *to interrogation for any reason which could lead to disciplinary action, demotion, dismissal or criminal charges*, the interrogation shall comply with the following requirements:
> > (a) The law enforcement officer under investigation shall be informed of the nature of the investigation prior to any interrogation.
> > (b) At the request of any law enforcement officers under interrogation, he or she may be represented by a representative of his or her choice who, at the discretion of the officer, may be present at all times during the interrogation.
> > (2) Evidence obtained during the course of any interrogation not conducted in accordance with sub. (1) may not be utilized in any subsequent disciplinary proceeding against the law enforcement officer.

Wis. Stat. § 164.02 (emphasis added).

In addition, the MPD SOP, General Order 2009-33 requires:

> If a Department member is under investigation for an alleged violation of Department Rules, Procedures or Position Responsibilities and *is subject to an interview for any reason, which could lead to disciplinary action, demotion or*

12

*discharge from the Milwaukee Police Department*, such interview shall comply with the following requirements:

1. The supervisor assigned to conduct a personnel investigation shall, prior to obtaining any information from an accused member (the target of the investigation), inform the accused member that the matter is a personnel investigation, not a criminal investigation, or a claim/lawsuit investigation.
2. If there is any possibility that the matter being investigated could result in a criminal proceeding, the investigating supervisor shall advise the accused member that: "This is a personnel investigation. The answers you give and the fruits thereof, cannot be used against you in any criminal proceeding."
3. Prior to conducting an interview that requires an accused member to provide oral statements, the investigating supervisor shall complete the Internal Investigation-Informing the Member Report (Form PI-21) Note: A PI-21 shall be issued for each subsequent oral statement obtained from the same member.
4. The supervisor shall request that the Department member sign the PI-21 report. If the member refuses to sign the PI-21, the supervisor shall place the word "refused" on the signature line.
5. The original PI-21 shall become a part of the investigative file. A copy shall be given to the Department member.
6. The Department member under investigation shall be informed of the nature of the Investigation prior to any interview by including a brief synopsis of the allegation(s) on the PI-21. Include enough information so that the member is able to prepare for the interview.
7. If proper investigation requires that the member provides information such as memorandum book entries, notes, etc., then so order the member to bring that information to the interview. This order shall be made in writing on the PI-21.
8. Prior to any interview, the investigating supervisor shall advise the member that: "The refusal to respond during this interview, or any response which is untruthful, can result in suspension or discharge from the Milwaukee Police Department."

MPD SOP, General Order 2009-33 at 6-7 (emphasis added).

Lewandowski argues that her 6:38 A.M phone call with Lt. Hanley was an interrogation as defined by the statues and case law. Therefore, because she was not given a PI-21 form as required by the MPD SOP, her statements should have been excluded at the hearing. Lewandowski maintains that the Chief's case relies almost entirely on statements made by Lewandowski during Lt. Hanley's interrogation during the 6:38 A.M. phone call. In contrast, the

13

Chief argues that Lewandowski's self-initiated phone call with Lt. Hanley was not an "interrogation" and therefore, was not in violation of Lewandowski's Wis. Stat. § 164.02 rights.

Both parties cite various Wisconsin and federal case law to try and explain why the 6:38 A.M. phone call should be or should not be considered an "interrogation" as defined in Wis. Stat. § 164.02. Neither party points to any case which expressly defines "interrogation" as used in Wis. Stat. § 164.02. However, the Court finds the decision from the Wisconsin Supreme Court in *Oddsen v. Bd. of Fire & Police Comm'rs for City of Milwaukee*, 108 Wis. 2d 143, 158, 321 N.W.2d 161 (1982) to be instructive for the case at bar.

In *Oddsen*, the Supreme Court determined whether prior statements made by two officers were appropriately used against them or whether the statements should have been excluded. *Id.* at 149. The Court ultimately concluded that the questioning of the officers was a "coerced interrogation" and therefore, their statements should have been excluded. *Id.* at 157. The essential distinction drawn by the Court was that the questioning of the officers was not *investigatory*, but was *accusatory*. *Id.* at 156. "Their purpose was not merely investigatory but was to sew up and confirm their preconceptions of guilt for punitive purposes." *Id.*

Applying the Wisconsin Supreme Court's decision in *Oddsen*, this Court does not find that Lewandowski's statements during the 6:38 A.M. phone call were taken in violation of her Wis. Stat. § 164.02 rights because the conversation was not an interrogation. When Lewandowski called Lt. Hanley, Lt. Hanley was conducting an accident investigation and not an investigation that was directed at disciplining Lewandowski. Furthermore, the conversation did not rise to the level of an interrogation because the questioning was not inherently accusatory in nature and it was not designed to confirm any preconceptions of guilt for punitive purposes.

14

*Oddsen*, 108 Wis. 2d at 156. Simply put, this Court finds that the phone conversation between Lt. Hanley and Lewandowski was not a "sew-up" confession scenario.

In addition, this Court finds that Lewandowski's call to Lt. Hanley should not be considered an "interview" for the purposes of the MPD SOP. Lt. Hanley should not be required to give Lewandowski a PI-21 form for a telephone conversation that Lewandowski, herself, initiated. Both the MPD SOP and Wis. Stat. § 164.02 contemplate a formal interview process, not a single telephone call initiated by the person who is being investigated. The 6:38 A.M. phone call does not fall within the protections of the MPD SOP or Wis. Stat. § 164.02. This Court agrees with the City that if it were to adopt Lewandowski's proposed meaning of "interrogation" it would "practically destroy the ability of supervisors to do their duties" (R-41 at 4-5) because any supervisor's questioning would be considered an interrogation and would require a formal PI-21 interview.

However, assume for purposes of argument that Lewandowski's statements from the 6:38 A.M. phone call were to be suppressed. This Court, nevertheless, finds that the evidence before the Board was sufficient to support a finding of just cause. The Board's in depth decision shows that it carefully analyzed the remaining evidence outside of the 6:38 A.M. phone conversation.

As to the first charge for her inappropriate use of time, there is sufficient evidence that Lewandowski was either traveling to UWM or District Five at the time of the crash. Lewandowski is guilty of the first charge under either scenario.

As to the second charge, Lewandowski testified in her PI-21 interview that she left the vehicle's emergency lights activated as she entered the intersection. Carr also testified that the lights were on. Although Lewandowski tries to justify her reasoning for keeping her lights on,

15

per Lt. Hanley and Sgt. Ziegler's testimony, leaving the emergency lights on in this fashion is incontrovertibly a violation of MPD rules.

As to the third charge, the Board carefully made credibility determinations based on Lewandowski's changing and contradictory testimony to support its finding of just cause. It is clear that even without the 6:38 A.M. phone call it was not unreasonable for the Board to conclude that the just cause standards were satisfied.

## C. Were the charges against Lewandowski ambiguous and did they fail to specify which acts are alleged to have violated the MPD's Code of Conduct?

Lewandowski's third claim is that the Chief's failure to advise her of the details and particulars of the charges against her violated the just cause standards. She claims that she was not afforded information in advance of the hearing to enable her to address the charges. Specifically, Lewandowski alleges that the Chief's failure to advise her of the details and particulars "violated the just cause requirement that the Chief or his designees make a reasonable effort to discover whether Lewandowski did, in fact, violate a rule or order and that the investigative process was fair and objective."

When a fire and police commission conducts an administrative proceeding for the dismissal of a police officer, due process requires "(1) the right to seasonably know the charges or claims preferred; (2) the right to meet such charges or claims by competent evidence; and (3) the right to be heard by counsel." *State ex rel. Richey v. Neenah Police and Fire Commission*, 48 Wis. 2d 575, 580, 180 N.W.2d 743 (1970). The notice requirements of due process will vary with circumstances and conditions. *State ex rel. Messner v. Milwaukee County Civil Service Commission*, 56 Wis. 2d 438, 444, 202 N.W.2d 13 (1972). However, the notice requirement is such that is "reasonably calculated, under all the circumstances, to apprise interested parties of

16

the pendency of the action and afford them an opportunity to present their objections." *Id.* As long as a party is aware of the allegations sufficiently to defend against them, the employer is not required to recite the provisions of the allegedly violated regulations. *Id.* at 445.

This Court concludes that the specification of all three charges found in the Complaint is adequate to give her notice of what MPD regulations she was alleged to have violated. *See generally* (R-2). Further, this Court finds that Lewandowski has not demonstrated that her ability to defend herself was in any way impaired by the "vague and ambiguous" charges that were brought. The language of Lewandowski's charges and specifications was sufficient under the *Messner* standard. *See supra* at p. 5. This Court finds that Lewandowski was afforded the information necessary to address the charges at the August 10-11, 2016, hearing, and therefore, finds no violations of the just cause standard.

## CONCLUSION

Therefore, based on the record and the facts and authorities cited herein, **THIS COURT HEREBY AFFIRMS** the decision of the Board of Fire and Police Commissioners.

Dated this 6th day of June, 2017, in Milwaukee, Wisconsin.

BY THE COURT:

_____
The Honorable Stephanie G. Rothstein
Milwaukee County Circuit Court, Branch 25

**THIS IS A FINAL ORDER OF THE COURT FOR PURPOSES OF APPEAL**

17