UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANNON LEWANDOWSKI,

   Plaintiff,

  v.           Case No. 16C1089

CITY OF MILWAUKEE,

   Defendant.

BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STATEMENT OF THE CASE

   The plaintiff, Shannon Lewandowski ("Lewandowski"), brings this action alleging

employment discrimination and retaliation, and First and Fourteenth Amendment violations by

defendant, City of Milwaukee ("City" or "Defendant"), on or about December 16, 2015, when

the Chief of Police Edward Flynn ("Chief") discharged her from her position as a detective in the

Milwaukee Police Department ("MPD"). This memorandum is submitted on behalf of the City in

support of its motion for summary judgment. The City respectfully asserts that, as a matter of

law, the claims made against it by Lewandowski must be dismissed, and that therefore this Court

must grant its motion for summary judgment.

   On January 3, 2018, the City filed a motion in this Court to have the Complaint

summarily dismissed due to claim preclusion and issue preclusion. (ECF No. 36.) The City

subsequently withdrew that motion on February 28, 2018, based upon *Batiste v. Furnco Constr.

Corp.*, 503 F.2d 447, 450 (7th Cir. 1974), which held that based upon policy considerations

underlying the purpose of Title VII, the usual rule and effect of the full faith and credit clause,

referencing the enabling statute 28 U.S.C. § 1738, does not apply to claims under Title VII; specifically, such claims are not subject to claim preclusion based upon a final adjudication in a state administrative proceeding. *Id*. at 450–51. (ECF No. 44.) The City, however, asserts that subsequent case law makes dismissal based upon issue preclusion viable, amongst other bases for dismissal, and sets forth its arguments below.

FACTUAL BACKGROUND

Lewandowski was an employee of the City in the MPD and most recently held the rank of detective. (Defendant's Proposed Findings of Fact ("DPFOF") ¶1.) On January 19, 2015, while on duty and operating a department owned vehicle, Lewandowski was involved in an auto collision with a civilian owned and operated vehicle. (DPFOF ¶2.)

On January 29, 2015, the MPD Internal Affairs Division ("IAD") opened an internal investigation targeting Lewandowski regarding an allegation of misconduct in public office as it related to the circumstances surrounding the auto collision. (DPFOF ¶4.) Specifically, the IAD was investigating whether Lewandowski was operating her department vehicle according to state law and department policy, and whether Lewandowski was responding to official department business. (DPFOF ¶5.) In or around November 2015, the IAD expanded its initial investigation to look into an allegation that Lewandowski failed to be forthright and candid in connection with the accident investigation and related internal investigation. (DPFOF ¶7.)

On December 16, 2015, the three charges against Lewandowski were found to be substantiated by Chief of Police Edward Flynn pursuant to the internal investigation. (DPFOF ¶9.) Chief Flynn issued discipline for the charges, including a five-day suspension for one charge, a 30-day suspension for another, and discharge for the final charge of failure to be forthright and candid. (DPFOF ¶10.)

2

Chief Flynn was the final decision-maker regarding discipline decisions regarding suspension, demotion, and discharge of sworn members of the department. (DPFOF ¶50.) Chief Flynn reviewed the internal investigation against then-Detective Shannon Lewandowski in MPD IAD #2015-0032, charged her with an integrity violation, for failing to be forthright and candid during her PI-21 interview based on the evidence and information available to him through the internal investigation, and decided to discharge Lewandowski for her integrity violation; documenting his discharge decision in Personnel Order 2015-150, issued December 16, 2015. (DPFOF ¶51-54.)

Chief Flynn's decision to discharge Lewandowski for her integrity violation was based upon, although not limited by enumeration, the seriousness and nature of the charge, and the facts and circumstances underlying the charge as established in the internal investigation; he also took into consideration, not limited by enumeration, Lewandowski's record of service, discipline history, and any relevant comparators. (DPFOF ¶55-56.) As to comparators, Chief Flynn commonly discharged sworn members of the department for integrity charges that implicated a member's honesty, forthrightness, and trustworthiness, in accord with his belief that these traits are integral and essential components to the character of members of the department in whom the public invests its trust. (DPFOF ¶57; see Ex. 14 ¶ 18, 46.)

Chief Flynn's decision to discharge Lewandowski was not because of, based on, or influenced in any manner whatsoever upon, her sex, and he would have discharged Lewandowski if her sex had been different and everything else had remained the same. (DPFOF ¶58-59.)

Chief Flynn's decision to discharge Lewandowski was not because of, based on, or influenced in any manner whatsoever upon, the fact that she filed various complaints of sexual

harassment and discrimination in the workplace, or any other protected activity, prior to his discharge decision, and he would have discharged Lewandowski if she had not filed any complaints or engaged in any other protected activity and everything else had remained the same. (DPFOF ¶60-61.)

Chief Flynn never possessed information, knowledge, or a belief, and he therefore denied, that his discharge decision was influenced by any person who did maintain a discriminatory or retaliatory animus or motive towards Lewandowski. (DPFOF ¶62.) Chief Flynn never possessed information, knowledge, or a belief, and he therefore denied, that his discharge decision, or any component of the internal investigation or other factor that led to his discharge decision, violated Lewandowski's First or Fourteenth Amendment rights, or any other rights under the U.S. Constitution or other law. (DPFOF ¶63.)

Lewandowski appealed the Chief's discipline decision to the Milwaukee Fire and Police Commission ("FPC"). (DPFOF ¶12.) The FPC held a hearing regarding Lewandowski's appeal of discipline on August 10 and 11, 2016. (DPFOF ¶13.) At the hearing, Lewandowski presented testimony that the MPD investigations targeting her and the discipline imposed by the Chief were due to sex discrimination and retaliation for having engaged in protected activity. (DPFOF ¶15.) Furthermore, at the hearing, Lewandowski was provided ample opportunity to present any and all defenses against the complaint filed against her, including any claims of employment discrimination or retaliation in violation of any state or federal law, including the Wisconsin Fair Employment Act or Title VII or other rights, including §1983. (DPFOF ¶16.)

On August 11, 2016, the commissioners voted and found unanimously, pursuant to the seven just cause factors in Wis. Stat. §62.50, that Lewandowski had violated all of the charges filed against her, and that the discipline imposed by the Chief, including the discharge, should be

sustained. (DPFOF ¶17.) The decision reflects that there was consideration of all evidence presented by both sides of comparable or similarly situated persons and the results of past disciplinary cases in order to determine if there was justified or disparate treatment of Lewandowski. (DPFOF ¶19.)

The sixth just cause factor requires the commissioners to determine if the Chief applied the rule or order fairly and without discrimination against Lewandowski. (DPFOF ¶20.) The commissioners determined that the chief satisfied "the sixth standard by a preponderance of the evidence." (DPFOF ¶21.) The commissioners specifically found that there was no evidence to support Lewandowski's claim of retaliation. (DPFOF ¶22.)

On August 15, 2016, Lewandowski filed the instant action. (DPFOF ¶23.) In the instant action, the claims and underlying factual record are the same as those contained in the FPC discipline hearing, i.e., there is an identity of claims and issues between them. (DPFOF ¶25.)

Lewandowski appealed the decision of the FPC to Milwaukee County Circuit Court, and on January 13, 2017, filed her initial brief. (DPFOF ¶26.) In her initial brief, Lewandowski raises the issue of retaliation in a narrow context; however, does not address discrimination directly. (DPFOF ¶28.) Defendant's brief contains no substantive discussion of discrimination or retaliation. (DPFOF ¶30.) Lewandowski's reply brief contains no substantive discussion of discrimination or retaliation. (DPFOF ¶32.) On June 6, 2017, the Circuit Court affirmed the decision of the FPC. (DPFOF ¶34.) The Circuit Court's Decision and Order contains no substantive discussion of discrimination or retaliation; however, it does note the sixth just cause factor. (DPFOF ¶35; Ex. 11, 7.) On August 7, 2017, the Appellate Court dismissed Lewandowski's appeal for failure to pay the filing fee, and thus no decision on the merits of her appeal to the Appellate Court was made. (DPFOF ¶37.)

The decisions of the FPC and the circuit court constituted a final judgment on the merits of their relative actions. (DPFOF ¶38.)

The City engaged Lewandowski in discovery regarding her claims, and Lewandowski provided her responses in support thereof. (DPFOF ¶39.)

ISSUE PRECLUSION – TITLE VII and § 1983

I.      Standard of Review

In Wisconsin, the Department of Workforce Development, Equal Rights Division ("DWD"), is the agency that administrates the state's anti-employment-discrimination law, the Wisconsin Fair Employment Act ("WFEA"); however, the DWD does not have jurisdiction over discrimination claims arising from fire and police commissions. The Supreme Court of Wisconsin has held:

> Disciplinary terminations of city firefighters [and police officers] are imposed and reviewed pursuant to the procedures established in Wis. Stat. § 62.13(5). The statutory procedure requires the PFC to determine whether any proposed disciplinary termination is supported by just cause, which includes a determination of whether the rule or order allegedly violated by the firefighter [or police officer] is reasonable and is being applied without discrimination. Wis. Stat. § 62.13(5)(em)2. and 6. Any termination sustained by the PFC under Wis. Stat. § 62.13(5)(em) and (f) is subject only to judicial review in circuit court pursuant to Wis. Stat. § 62.13(5)(i), or in certain circumstances by common law certiorari. Accordingly, **any claim that a disciplinary termination is discriminatory under the WFEA must be raised before the PFC, the agency with exclusive statutory authority under Wis. Stat. § 62.13(5) to review disciplinary actions against firefighters [and police officers]. The DWD may not take jurisdiction over a WFEA complaint arising out of a decision of a PFC to terminate a firefighter [or police officer].**

*City of Madison v. State Dep't of Workforce Dev., Equal Rights Div.*, 2003 WI 76, ¶ 2, 262 Wis. 2d 652, 656–57, 664 N.W.2d 584, 586–87 (emphasis added). Therefore, claim preclusion applies

6

to any claim Lewandowski might bring under the WFEA or in relation to rights protecting the same or similar interests under other state law.

In the Seventh Circuit, a reviewed administrative decision may be eligible for claim preclusion where the claim to be precluded, here Title VII claims, could have been brought in the state administrative forum. *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 865-66 (7th Cir. 1996); *Staats v. Cty. of Sawyer*, 220 F.3d 511, 516 (7th Cir. 2000). The City concedes that *Waid* and *Staats* would bar application of claim preclusion in the instant matter because while Lewandowski could assert sex discrimination and protected activity retaliation in relation to the charges, and those assertions could be (and were) considered in determining just cause, Title VII claims themselves could not be specifically brought before the FPC or on appeal in the circuit court appeal; however, the *Staats* court noted that "although we have found that [the plaintiff] is not barred by claim preclusion from bringing his federal claims in federal court, both *Elliott* and *East Food & Liquor* suggest that his claim may be de facto dead because of issue preclusion." *Staats*, 220 F.3d at 517 (citing *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 797 (1986); *E. Food & Liquor, Inc. v. United States*, 50 F.3d 1405, 1411 (7th Cir. 1995)). The City asserts that this Court should apply issue preclusion in the instant matter, rendering Lewandowski's claim "de facto dead."

In *Elliot*, the U.S. Supreme Court held "that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *E. Food & Liquor, Inc.* 50 F.3d at 1411 (citing *Elliott*, 478 U.S. at 799 (internal ellipses and quotation marks omitted). The *East Food & Liquor* court continued, stating that providing "preclusive effect to an administrative agency's

7

factfinding serves to enforce repose,… and preserve the integrity of administrative adjudications." *Id*. (internal quotation marks omitted). Furthermore, this "doctrine of administrative issue preclusion"

> is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.

*Id*. (quoting *Astoria Federal Savings and Loan Assoc. v. Solimino*, 501 U.S. 104, 107–08 (1991). The court then noted that this constitutes a "general common law rule of administrative issue preclusion," which applies unless Congress has expressed that it should not. *Id*. *Elliot* establishes that the rule applies to Title VII claims. *Elliott*, 478 U.S. at 794-799; *see also Staats*, 220 F.3d at 514 ("Although Staats's claims arise under the ADA and the Rehabilitation Act, not Title VII, we think the logic of *Kremer* and *Elliott* applies equally to other federal anti-discrimination statutes").

In the Seventh Circuit, issue preclusion is applied to state agency judgments where it was "(1) acting in a judicial capacity, (2) resolving disputed issues of fact properly before it, (3) if parties have had an opportunity to litigate the issues." *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992) (citing *Elliot*, 478 U.S. at 799).

Acting in a judicial capacity includes proceedings where the following safeguards are provided: "(1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Id*.

8

II.        Argument

Lewandowski's Complaint (ECF No. 1) is lengthy, but its substantive claims clearly

relate to the same claims and underlying factual record that were at issue in the FPC disciplinary

appeal hearing, implicating issue preclusion. The Complaint's central claim is that

Lewandowski's discharge was based on sex discrimination and retaliation for making prior

complaints of sex discrimination. It further raises the issue of disparate treatment regarding male

department members who were not discharged for what she estimates to be "worse" conduct than

her's. These are all facts and issues that were considered, or should have been presented for

consideration, by the FPC, and were subject to consideration by the Milwaukee County Circuit

Court in Lewandowski's appeal, provided and to the extent that she raised the issues and argued

them as a defense against satisfaction of any of the just cause factors, specifically in relation to

the sixth factor, which requires that "the chief [] apply[] the rule or order fairly and without

discrimination." Wis. Stat. § 62.50(17)(b)(6).

The record establishes that Lewandowski was represented by counsel throughout all FPC

(Ex. 5, 2; Ex. 6, 1) and circuit court proceedings (Ex. 8; Ex. 10). The first safeguard was present.

State statute required MPD to produce all exculpatory evidence, Wis. Stat. § 62.50(13),

and MPD was further instructed by scheduling order to provide appropriate discovery, which

was done here well in advance of hearing. (Ex. 15; Ex. 16.) Lewandowski had the ability to seek

any other desired discovery through subpoena and other requests, Wis. Stat. § 62.50(16), and did

seek discovery, which the City provided. (See Ex. 19.) Further, Lewandowski was provided the

results of an independent investigation of her claims of discrimination conducted by an outside

firm hired by the FPC. (Ex. 17.) The second safeguard was present.

9

Lewandowski had opportunity to present memoranda of law: she filed two briefed motions with replies before hearing with the FPC (Ex. 18), and more significantly, briefs before the circuit court on her appeal of the decision of the FPC (Ex. 8, Ex. 10). The third safeguard was present.

Lewandowski was provided opportunity to call witnesses at City expense, Wis. Stat. § 62.50(16), and her attorney conducted complete and thorough examinations and cross-examinations at hearing. (Ex. 5; Ex. 20.) The fourth safeguard was present.

Lewandowski's attorney had opportunity to introduce exhibits at hearing and did so. (Ex. 5.) The fifth safeguard was present.

Lewandowski's attorney had opportunity to object at hearing, and did so. (Ex. 5.) The sixth safeguard was present.

The FPC set forth its decision including thorough findings of fact and conclusions of law. (Ex. 6.) The circuit court reviewed the record and the briefs of the parties, and issued its decision in support of the FPC's findings of fact and conclusions of law. (Ex. 11.) The seventh safeguard was present.

The foregoing establishes that the FPC (and subsequent judicial review) acted in a judicial capacity, safeguarding Lewandowski's rights in satisfaction of the first part of the test as set forth in *Reed*, leaving the second and third parts of whether it resolved disputed issues of fact properly before it, and whether the parties have had an opportunity to litigate the issues.

Defendant respectfully submits that review of the record reveals that both remaining parts are established. The transcript of the hearing itself satisfies them on its own; however, beyond that, the briefs of the parties and decision of the circuit court clearly show that the FPC resolved disputed issues of fact properly before it because that very issue was at the heart of the

arguments before the circuit court on appeal. The full judicial capacity of the FPC and the right to appeal to circuit court establish opportunity to litigate, as does, the volume of the record, including pre and post hearing motion practice, and the transcript of the two days of the FPC hearing. Likewise, Lewandowski's motive to litigate was high given that her job was on the line.

Defendant respectfully submits that review of the record the issues and decisions of the FPC and the circuit court qualify to preclude the claims of Lewandowski in the instant case. It is clear that there is an identity of cause of action in claims and thus issues (i.e., discrimination, retaliation, disparate treatment, and discriminatory violation of civil and due process rights) that have been brought or could have been brought, and an identity of parties.

Because issue preclusion applies to the factual and legal issues present in the instant matter, having been litigated before the FPC, and considered by the FPC in its decision, having been included in its written decision, and with the subsequent appeal to circuit court where Lewandowski was free to raise any issue she wished that called the determination of just cause into question, including discrimination and retaliation, the instant matter should be dismissed consistent with the findings and conclusions of those bodies which included that Lewandowski was not subjected to employment discrimination, disparate treatment, or retaliation, or any rights secured by the U.S. Constitution or otherwise.[1]

### CLAIM PRECLUSION - § 1983

I.      Standard Of Review

*Elliott* held that an unreviewed state agency determination was not binding on a federal court with respect to a Title VII claim, but was binding with respect to a claim under § 1983.

---

[1] The arguments here have been limited to consideration of Title VII; however, the City submits that if issue preclusion precludes Lewandowski's Title VII claim, it must preclude her §1983 claims because the constitutional rights at issue as claimed by Lewandowski are the same as those claimed by her to be protected under Title VII, i.e., to be free from sex discrimination and retaliation in relation to the decision to discharge her.

11

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110 (1991).

In the Seventh Circuit Court of Appeals case of *Krison v. Nehls*, 767 F.2d 344, 346 (7th Cir. 1985), a Milwaukee police officer applied for duty disability retirement, but was denied by the Pension Board. *Id*. at 346. The officer did not appeal the board's decision, but four years later attempted to renew his application, which was denied, and he appealed until the Wisconsin Court of Appeals held that the officer's failure to appeal the initial decision deprived the board of authority to grant a duty disability retirement, and that a newly raised due process claim was waived for failure to have brought it up during the appeal to the circuit court. *Id*. The officer then brought a § 1983 suit in federal district court claiming deprivation of due process, but his claim was dismissed based on claim preclusion – he then appealed to the Seventh Circuit. *Id*.

The *Krison* court held that federal courts are bound by the full faith and credit statute in § 1983 actions, "to give a prior state court judgment the same preclusive effect as would the courts of the state in which the judgment was rendered," and that the rule applied "with equal force to claims that could have been raised, but were not, in the state court proceedings." *Id*. at 347–48. Provided that the state proceeding satisfied the minimum due process requirements of the Fourteenth Amendment, the state finding should stand. *Id*. at 348.

Further, the *Krison* court stated that

> claim preclusion, applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are therefore bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. The essential elements of the doctrine, therefore, are (1) a final judgment on the merits in an earlier action; (2) an identity of the

cause of action in both the earlier and later actions; and (3) an identity of parties or their privies in the two actions.

Wisconsin law on res judicata follows the general rule stated above and includes claims which were litigated or which might have been litigated in the former proceedings. Wisconsin has adopted the "transactional" approach to determine whether a claim is barred by res judicata. This approach, which is gaining greater acceptance by courts nationwide, focuses on the factual situation in which the actions arise. If both suits arise from the same transaction, incident or factual situation, res judicata generally will bar the second suit.

*Id*. at 349 (internal quotation marks and citations omitted). The *Krison* court held that all of the elements were satisfied and that the officer's claims were barred by claim preclusion.

## II. Argument

Defendant respectfully submits that the claims before and the decisions of the FPC and the circuit court qualify to preclude the § 1983 claims of the Plaintiff in the instant case. It is clear that there is an identity of cause of action in claims (i.e., discrimination, retaliation, discriminatory violation of civil and due process rights) that have been brought or could have been brought,[2] and an identity of parties. The only remaining element to satisfy the test set forth by the *Krison* court is a final judgment on the merits, which is established by the decisions of the FPC and the circuit court, which both made their decision in consideration of whether application of the rule or order against Lewandowski was made fairly and without

---

[2] According to the United States Supreme Court, a public employee's equal protection claim cannot be based upon a "class-of-one" theory, i.e., a public employee cannot "state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594, 608-09 (2008). The Seventh Circuit has stated that its "cases make clear that the same standards for proving intentional discrimination apply to Title VII § 1983 equal protection." *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003). In another case, the Seventh Circuit held that in order "[t]o state a First Amendment retaliation claim, [a plaintiff must plausibly allege that (1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to retaliate." *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012).

13

discrimination, and both determined there was just cause in support of her discharge, from which Lewandowski had a right to appeal. (Ex. 6; Ex. 11; Ex. 12.)

It should be noted that Lewandowski has claimed both § 1983 and Title VII claims (this argument is related only to the § 1983 claims), but they arise from the same facts, protect essentially the same interests, and in addition to the statutory appeal provided to her under § 62.50, Lewandowski could have appealed on common law certiorari grounds, although she did not. (*See* Ex. 8.) Lewandowski's § 1983 should be barred by claim preclusion for the reasons set forth above.

TITLE VII SEX DISCRIMINATION CLAIM FAILS ON THE MERITS

I.      Standard of Review

Title VII makes it unlawful for an employer to discharge an employee because of the employee's protected classifications, including sex. 42 U.S.C. § 2000e. The separate analysis of direct and indirect methods of proof as they were largely understood and utilized in discrimination cases was discarded by the Seventh Circuit Court of Appeals, and in its place, district courts were instructed that all evidence should be evaluated as a whole without regard to whether it might have previously been deemed direct or indirect. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016). In determining whether to grant summary judgment, the district court should consider "the sole question that matters: Whether a reasonable juror could conclude that [Lewandowski] would have kept [her] job if [s]he had a different [sex], and everything else had remained the same." *See id*. at 764; *see also, e.g., Perry v. Dep't of Human Servs.*, 345 F. Supp. 3d 1019, 1026–27 (N.D. Ill. 2018) ("the 'sole question that matters' is whether a reasonable juror could conclude that [plaintiff] would have kept his job if he had a different age or sex, and everything else had remained the same")

In order to survive summary judgment, Lewandowski must present enough evidence to support a jury inference that she suffered an adverse employment action because of her sex. *See Ortiz*, 834 F.3d at 766.

II.     Argument

The sole question is answered in favor of the City here because Lewandowski would have been terminated if she had not been female and everything else remained the same, i.e., the Chief would still have terminated her if she were male, and engaged in the conduct under the circumstances she did as there was in this case, and Lewandowski is unable to adduce sufficient evidence to create an inference that her discharge may have been due to her sex. This is true because no reasonable juror could conclude upon review of the evidence that the termination decision was based upon anything other than Lewandowski's acts. (DPFOF ¶ 49-63; Ex. 6; Ex. 11.) There is nothing material and new in the instant matter or revealed in discovery that was not already presented and considered by the Chief, by the FPC, by the circuit court, or by the independent investigator.

Perhaps more significantly, Lewandowski, for her part, does not provide anything in her response to discovery requests that should cause the Court to even begin to suspect that she has gathered evidence to create a dispute of material fact or even an inference in her favor. (Ex. 13, Response to Interrogatory No. ("Int.") 5, 10.)

In response to a request to

> [d]escribe with particularity the basis for your allegation(s) that you were subjected to a violation of your constitutional rights or rights under Title VII, or any other law you state or may state claims under in the instant matter, including within your answer the following: a. a description of the actions, conduct, or omissions by any individual, which you believe support such allegations; b. all other facts upon which your allegations are based; c. the

> identity of persons with knowledge of those facts; and d. a detailed
> description of each document which supports your allegations[,]

Lewandowski merely indicates that the City should "[s]ee Amended Complaint, Plaintiff's Initial Disclosures, Defendant's Initial disclosures, transcript of Fire & Police Commission hearing." (Ex. 13, Int. 5.) Lewandowski also lists a number of alleged comparators, which will be addressed in another section below.

In response to a request to "identify the acts, omissions, or anything else that allegedly caused the violation or violations of your employment rights, or anything otherwise that constituted a claim, in relation to your Title VII sex discrimination claim, specifically stating the facts or evidence which would support that claim," Lewandowski responded that the City should "[s]ee Amended Complaint, transcript of Fire & Police Commission hearing. In addition, see Answer to Interrogatory No. 5. (Ex. 13, Int. 10.)

The City respectfully submits that Lewandowski's oblique reference to voluminous documents is insufficient to establish a prima facie case of discrimination in violation of Title VII, but regardless, there is nothing contained in any part of the record, or in part of Lewandowski's discovery responses that establishes a jury inference that she suffered discharge because of her sex. There is no evidence contained therein upon which a reasonable juror could find in Lewandowski's favor.

THERE IS NO EVIDENCE OF DISPARATE TREATMENT

In an effort to establish disparate treatment based on sex, Lewandowski presents a list of names and unsupported factual allegations regarding them. (Ex. 13, Int. 5.) Lewandowski does not assert how the proposed comparators are appropriate to compare to her, other than indicating that they are male and making a conclusory statement that they all were treated more favorably than her. The law requires more – Lewandowski must show that they are similarly situated:

16

> Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when no reasonable fact-finder could find that plaintiffs have met their burden on the issue. There must be enough common factors ... to allow for a meaningful comparison in order to divine whether intentional discrimination was at play. The number [of relevant factors] depends on the context of the case. In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. This is not a magic formula, however, and the similarly-situated inquiry should not devolve into a mechanical, one-to-one mapping between employees.

*Coleman v. Donahoe*, 667 F.3d 835, 846–47 (7th Cir. 2012) (internal citations and quotation marks omitted).

The City asserts that none of these proposed comparators were similarly situated to Lewandowski, and thus she fails to establish a prima facie case. They are not similarly situated because of numerous factors, different supervisors (particularly the final decision-maker, i.e., chief of police), different conduct, and different circumstances.

Lewandowski's discharge was based on an integrity charge for failing "to be forthright and candid in connection with any administrative inquiry or report." (Ex. 3.) More specifically, that she made statements to a lieutenant regarding the facts and circumstances around the auto collision she was involved in, and then later refuted during a PI-21 (an MPD personnel interview conducted during the investigation), that she had made those statements, alleging that the lieutenant's reporting of her statements was false. (Ex. 7; Ex. 21, 0064.) A position she maintained at hearing. (Ex. 5, 258-264, 343-346.) The FPC found her version of events incredible, and found the lieutenant's report and testimony credible, noting that the lieutenant's "testimony was straightforward and professional; whereas Lewandowski's was at times combative and evasive." (Ex. 6 ¶ 29.)

17

The conduct that formed the basis of Lewandowski's discipline entailed false representations of fact. Any legitimate comparator therefore should entail an issue being disciplined for false representation or deception in connection to official duties on some level in order to be deemed similarly situated regarding similarity in conduct. A review of the Lewandowski's list shows only four individuals who she alleges made false statements: Police Officer Herb Glidewell, Lt. Dennis Trzcinski, Police Officer Alex Ayala, and Lt. Steven Kelly. (Ex. 13, Int. 5 ¶ 12, 15-17.)

Lewandowski asserts Glidewell committed domestic violence against his wife, but then states that she knows that he committed perjury in 2010. (Ex. 13, Int. 5, ¶12.) She does not state if the Chief knew, or if he was disciplined for it, or was in a position to be disciplined for it as being done as a part of his job. There are insufficient facts to conclude that he was similarly situated.

Lewandowski asserts that Trzcinski lied on his time cards and stole overtime. (Ex. 13, Int. 5, ¶ 16.) The first reason that Trzcinski is not an appropriate comparator is that he was not treated more favorably by the Chief – Trzcinski was discharged by Chief Flynn, same as Lewandowski. (Ex. 14 ¶ 18, 46.) Trzcinksi was reinstated by the FPC after hearing on his appeal of the Chief's discharge. (Ex. 14, 9.) Trzcinksi's case might get past this hurdle if Lewandowski asserted claims against the FPC's affirmation of her discharge, but Lewandowski's amended complaint does not, and only references her discharge by the Chief. (See ECF 47 ¶ 180 (referencing December 16, 2015, termination, in relation to Chief's discharge (Ex. 3) and nothing in relation to the FPC's hearing and affirmation of the discharge on August 11, 2016. (Ex. 6, 1).))

18

Another significant consideration of why Lewandowski is not similarly situated to Trzcinski is that the FPC specifically found that the integrity charge – the charge related to deception or fraud – was not proven at hearing and was not sustained: "There is no evidence that he attempted to defraud the Department, engage in dishonesty, or breach the public's trust…" (Ex. 14 ¶ 29-30.) Contrast this to Lewandowski where the FPC sustained the integrity charge against Lewandowski, stating in relation to the competing version of events provided by Lieutenant Hanley versus that provided by Lewandowski: "Because the two versions of events were not the result of misunderstanding or confusion, the question is who was telling the truth. For the following reasons, the Commission concludes that Hanley's version of events is true and Lewandowski's PI-21 version is false." (Ex. 6 ¶ 29.)

Regarding Alex Ayala, Lewandowski asserts that he "lied to ICE and PPD regarding his brother Oscar Ayala using a dead cousin's name. He was never fired, and served no suspension." (Ex. 13, Int. 5, ¶17.) Like Trzcinski, Ayala was not treated more favorably than Lewandowski in that he too, like Trzcinkski, was discharged by the chief, but reinstated by the FPC. (Ex. 23, 1-2.) Regardless, Ayala can be distinguished from Lewandowski in that he did not have the same supervisor at the time the discipline was issued – Ayala was discharged by Chief Nannette Hegerty, whereas Lewandowski was discharged by Chief Flynn. (Ex. 23, 1.) Also, central to the issue with Ayala was whether his false statements to federal investigators was a part of his official duties; in contrast to Lewandowski, when asked in a PI-21, Ayala told the truth. (Ex. 23, 3-4 (FPC Compl. 1-2).)

Finally, regarding Lt. Steven Kelly, Lewandowski asserts that he committed some non-relevant violations, but then states that he lied at her own hearing. (Ex. 13, Int. 5, ¶15.) There is no evidence that he was investigated or disciplined for lying at her hearing. Furthermore, the

FPC itself accepted his testimony as true. (See Ex. 6 ¶ 24.) Kelly cannot be deemed a comparator to Lewandowski on the sole basis of her unsupported allegation that he committed perjury, where the hearing record controverts that allegation. Additionally, Lewandowski asserts that Kelly was subjected to discipline for excessive force and incivility, not false statements,. (Ex. 13, Int. 5, ¶15.)

Because Lewandowski cannot establish an inference that anyone similarly situated to her was treated more favorably than her, this Court should find that no juror could find in Lewandowski's favor by finding a violation of Title VII based upon disparate treatment.

## TITLE VII RETALIATION CLAIM FAILS ON THE MERITS

As indicated above regarding analysis of Lewandowski's sex discrimination claim, there is likewise a sole question to be asked regarding her retaliation claim, *see Ortiz*, 834 F.3d at 765: Whether a reasonable juror could conclude that [Lewandowski] would have kept [her] job if [she had not engaged in protected activity], and everything else had remained the same," s*ee id*. at 764.

And likewise, the sole question is answered in favor of the City here because Lewandowski would have been discharged regardless of protected activity, given the conduct she engaged in under the circumstances here, and Lewandowski is unable to adduce sufficient evidence to create an inference that her discharge may have been due to retaliation. (DPFOF ¶ 60, 61.) No reasonable juror could conclude upon review of the evidence that the termination decision was based upon anything other than Lewandowski's acts. (DPFOF ¶ 50-63; Ex. 8; Ex. 11.)

Lewandowski, for her part, does not give us any reason to even begin to suspect otherwise, because once again, she does not provide anything in her response to discovery

20

requests that should cause the Court to even begin to suspect that she has gathered evidence to create a dispute of material fact or even an inference in her favor.. (Ex. 13, Int. 11, 12.)

In response to a request to "identify the acts, omissions, or anything else that allegedly caused the violation or violations of your employment rights, or anything otherwise that constituted a claim, in relation to your Title VII sex retaliation claim, specifically stating the facts or evidence which would support that claim," Lewandowski responded that the City should "[s]ee Amended Complaint, transcript of Fire & Police Commission hearing. In addition, see Answer to Interrogatory No. 5."

In response to a request to "identify the protected activity you engaged in in relation to your Title VII sex retaliation claim, specifically stating the facts or evidence you possess in support of proving you engaged in that activity," Lewandowski responded that the City should

> [s]ee Amended Complaint, transcript of Fire & Police Commission hearing; I complained to the Milwaukee Police Department, the Milwaukee Fire & Police Commission, and Police Chief Flynn in writing on numerous occasions about the sexist and retaliatory treatment I and others received from Defendant. See documents produced in response to Defendant's First Set of Requests for Production of Documents. Attached. In addition, see Answer to Interrogatory No. 5, above.

(Ex. 13, Int. 12.)

Presuming that Lewandowski can establish she engaged in protected activity, the fact that she can show that she engaged in activity protected under Title VII and thereafter suffered a materially adverse action by the Chief is not enough to prevail on their Title VII retaliation claims; she must also prove that "a causal connection exists between the two," *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009), and she must do so "according to traditional principles of but-for causation," *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). To establish causation, Lewandowski "must produce evidence that a retaliatory motive

21

*actually* influenced the decision-maker, not merely that it *could* have." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) (emphasis original). Lewandowski's burden is to demonstrate that her discharge "would not have happened without the [protected] activity." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014).

The City respectfully submits that Lewandowski's oblique reference to voluminous documents (over 2900 pages comprising 181 documents (DPFOF ¶ 65)) is insufficient to establish a prima facie case of retaliation in violation of Title VII, but regardless, there is nothing contained in any part of the record, or in part of Lewandowski's discovery responses that establish a causal relationship between her protected activity and her discharge. There is no evidence contained therein upon which a reasonable juror could find in Lewandowski's favor.

### THERE IS NO EVIDENCE THAT A POLICY OR CUSTOM OF THE CITY CAUSED AN ALLEGED CONSTITUTIONAL VIOLATION - §1983

I.    The Legal Standard for Municipal Liability Under § 1983.

Municipalities cannot be held liable under § 1983 on a *respondeat superior* theory; rather "municipal liability exists only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (internal quotations marks omitted) (citing and quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 694 (1978)).

The Seventh Circuit has identified the following three limited circumstances under which a municipality may be found to violate 42 U.S.C. § 1983:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the

> constitutional injury was caused by a person with 'final decision policymaking authority.'

*Id.* (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cit. 1995)).

The U. S. Supreme Court has made it clear that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). Furthermore, the Seventh Circuit Court of Appeals has refused to expand *Monell* liability, and has explained, as an example, that even if better training of municipal employees might have produced a different outcome, that still would not satisfy the legal standard for *Monell* liability. *Thomas v. Cook Sheriff's Dep't*, 604 F.3d 293, 307 (7th Cir. 2009).

II.      Lewandowski  Fails to Establish a Viable *Monell* Claim.

Plaintiff has not even alleged any particular facts, much less produced evidence, sufficient to show that (1) there is an express policy of the City of Milwaukee which caused the alleged violations of plaintiff's constitutional rights; (2) that any such constitutional violation occurred as a direct result of a custom on the part of the City of Milwaukee that had the force of law; or (3) that a City of Milwaukee employee with final decision policymaking authority directly violated plaintiff's constitutional rights, or caused them to be violated. Instead, plaintiff's *Monell* claims against the City consist of a conclusory statement devoid of facts. In the Seventh Circuit, alleged facts that "are actually legal conclusions or elements of the cause of action . . . may be disregarded" by a court when reviewing asserted *Monell* claims pursuant to a Rule 12 motion to dismiss. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681) (affirming the dismissal of a § 1983 claim that simply parroted *Monell* standards without articulating sufficient facts to support them). The Seventh Circuit has explained that once conclusory statements and parroted language are disregarded, "the factual allegations . . . must

23

allow us to draw the reasonable inference that the City established a policy or practice" of intentionally violating the plaintiff's § 1983 rights. *Id*. at 618.

Beyond the insufficient allegations of fact in her Amended Complaint, in response to a request to "identify the custom, policy, practice, or procedure that allegedly caused the violation or violations of your constitutional rights in relation to your § 1983 claim, specifically stating the facts or evidence which would support that claim," Lewandowski responded that," The Milwaukee Police Department has a widespread, longstanding unwritten policy of treating male officers more favorably than female officers and retaliating against individuals who make complaints against other department members. See Amended Complaint, transcript of Fire & Police Commission hearing." (Ex. 13, Int. 1.) Lewandowski identifies widespread practice as the basis of her claim, but does nothing more than offer a conclusory statement and oblique references to materials that do not support her assertion as proof.

Lewandowski fails to establish any facts that her rights were violated as a direct result of a "widespread practice" which constitutes a custom with the force of law on the part of the City. To establish a "widespread practice" in this circuit, *Monell* plaintiffs must show that the same problem has arisen so many times in the past that the government has accepted the outcome as if it were an express policy. *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Calhoun*, 408 F.3d at 380) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work"); *see also Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995) ("The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must

have encouraged or at least condoned, thus in either event adopting the misconduct of subordinate officers") Courts in the Seventh Circuit will not infer a widespread practice from a single incident of alleged misconduct. *See, e.g., Calhoun*, 408 F.3d at 380; *Edwards v. Two Unknown Male Chicago Police Officers*, 623 F. Supp. 2d 940, 951 (N.D. Ill. 2009); *Bush v. Ware*, 589 F. Supp. 1454, 1464 (E.D. Wis. 1984).

In order to show that the City itself violated Lewandowski's rights with "deliberate indifference" under an unlawful custom claim, Lewandowski must allege essentially a pattern of similar incidents of which the City was aware, but yet willfully ignored. *See Connick v. Thompson*, 131 S. Ct. 1350, 1354 (2011). Here, Lewandowski baldly asserts that the City had discriminatory customs and that they were a proximate cause to plaintiff's injuries. (ECF No. 47 ¶ 203.) Lewandowski fails to establish any facts concerning any other instances of the practice or custom, or how it was so persistent and widespread as to provide any inference that official policymakers acted with deliberate indifference in failing to control the unconstitutional conduct. (See Ex. 13, Int. 1.) Once again, she provides a hollow recitation of an unlawful *Monell* custom claim, without providing the factual basis to support it. There are no facts presented which establish a pattern of events which would survive any unlawful custom claim, much less a custom related to discrimination towards her protected classifications.

The City respectfully submits that Lewandowski's conclusory statements and reference to documents is insufficient to establish a juror inference of a *Monell* violation, but regardless, there is nothing contained in any part of the record, or in part of Lewandowski's discovery responses that establish the existence of a wide spread practice as she alleges. There is no evidence contained therein upon which a reasonable juror could find in Lewandowski's favor.

25

CONCLUSION

The City respectfully submits that its Motion for Summary Judgment should be granted for the foregoing reasons and arguments. The motion is filed with this memorandum in support, declarations, and exhibits, incorporated herein by reference.

Dated and signed at Milwaukee, Wisconsin 22 day of April, 2019.

GRANT F. LANGLEY
City Attorney

s/ ROBIN A. PEDERSON
Assistant City Attorney
State Bar No. 01045759
Attorneys for Defendant
Milwaukee City Attorney's Office
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
Email: rpederson@milwaukee.gov