In the Matter of the Disciplinary Appeal
Of Shannon Lewandowski

RE: FPC Disciplinary Appeal – Shannon Lewandowski
MPD P.O. Box 2015-150

## APPELLANT SHANNON LEWANDOWSKI'S
## MOTION FOR A MORE DEFINITE STATEMENT

Shannon Lewandowski, by her attorneys Gimbel, Reilly, Guerin & Brown LLP, respectfully moves the Fire & Police Commission for an order requiring the Milwaukee Police Department to provide a more definite statement of the charges (a Bill of Particulars) against Detective Lewandowski, specifically stating the act(s) which are alleged to be violations of the Department's Code of Conduct.

### BACKGROUND

On January 19, 2015, Detective Shannon Lewandowski and Detective Juanita Carr were both on duty during the power shift, which began at 8:00 p.m. and was scheduled to end at 4:00 a.m. During the shift, Milwaukee police responded to an accidental, self-inflicted shooting at 4257 North Teutonia Avenue.

At or about 2:00 a.m., Carr was directed to attempt a consent search of the home where the man who had accidentally shot himself lived. Lewandowski volunteered to accompany Carr for the search, but told Carr that she first had to stop at the District 5 Police Station to speak with Police Officer (now Detective) Beasley, who feared for her safety at the hands of certain TEU officers at District 5. Detective Carr agreed to Lewandowski's request, and the two detectives left the police station. Detective Lewandowski drove the squad assigned to Carr. Carr and

Lewandowski traveled eastbound on North Avenue. As they did, Lewandowski—who refuses to use her cell phone while driving—handed her phone to Carr and asked Carr to look up Beasley in her phone. As they approached the intersection of 35th and North, Detective Lewandowski noticed a car at the side of the road that she was afraid was preparing to pull out in front of her, causing an accident. To attract the driver's attention, Lewandowski activated her squad's lights and may have chirped the sirens. Carr, at that point, was looking down at Lewandowski's phone. After passing the vehicle, Lewandowski and Carr entered the intersection of 35th and North. The light was green for the detectives. At the same moment, an intoxicated motorist speeding northbound on 35th Street toward North Avenue entered the intersection against a red light.[1] The intoxicated motorist sped through the red light and collided with the detectives' squad, causing severe injuries to both detectives, including a traumatic brain injury to Lewandowski. Lewwandowski's injuries included: Cervical Musculoligamentous, a neck injury that causes delayed speech and memory loss; a concussion; 3-4 minutes of loss of consciousness; whiplash; a sprained right ankle; a torn ankle ligament; bruising and swelling.

The impaired driver was cited for the five following offenses:

1. Cause Injury/Operating While Intoxicated, a violation of state statue 346.63(2)(a).
2. Failure to Obey Sign or Signal, a violation of state statue 346.37(1)(c)3.
3. Operating After Suspension, a violation of ordinance 101-1-2.
4. Operating a Motor Vehicle Without Insurance, a violation of ordinance 101-1.
5. Operating After Revocation/suspension of Registration, a violation of ordinance 101-1-2.

The subsequent investigation into the accident also resulted in three charges being levied against Lewandowski, and her subsequent termination from the Milwaukee Police Department.

---

[1] The driver, who had multiple arrest warrants was legally impaired and tested positive for narcotics.

## I. A MORE DEFINITE STATEMENT IS APPROPRIATE WHERE SHANNON LEWANDOWSKI CANNOT REASONABLY PREPARE A DEFENSE BECAUSE THE ALLEGATIONS AGAINST HER FAIL TO IDENTIFY HOW HER ALLEGED CONDUCT VIOLATED DEPARTMENT RULES.

Detective Shannon Lewandowski is alleged to have violated three provisions of the Milwaukee Police Department's Code of Conduct. They are:

1.   Core Value 1.00 - Competence, referencing Guiding Principle 1.03: Failure to use time to accomplish the mission of the department.

2.   Core Value 1.00 - Competence, referencing Guiding Principle 1.05, referencing Standard Operating Procedures relating to Department Owned Vehicles and Property, Section 640.15(A)(2): Failure to operate a department vehicle in a safe manner.

3.   Core Value 3.00 - Integrity, referencing Guiding Principle 3.10: Failure to be forthright and candid in connection with any administrative inquiry or report.

For the alleged failure to use time to accomplish the mission of the Department, Detective Lewandowski was suspended for five (5) days without pay. For the alleged failure to operate a Department vehicle in a safe manner, Lewandowski was suspended for thirty (30) days without pay. For the alleged integrity violation, Detective Lewandowski was discharged from the Department.

Fed. R. Crim. P. 7(f) provides, in part, that "[t]he court may direct the filing of a bill of particulars." The decision whether to grant or deny a bill of particulars is committed to the sound discretion of the trial court. *Wong Tai v. United States*, 273 U.S. 77, 82 (1927); *United States v. Burgin*, 621 F.2d 1352, 1358 (5th Cir.), *cert. denied*, 449 U.S. 1015 (1980). The general purposes of a bill of particulars are to inform the accused of the charges against her with sufficient precision to: (1) enable her to prepare her defense, (2) obviate surprise at the hearing, and (3) enable her to plead her case so as to bar any subsequent allegations pertaining to the same offense. *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978), *cert. denied*, 441 U.S. 962 (1979). While these legal

authorities are not binding on the Milwaukee Fire and Police Commission, they should be persuasive. Moreover, the policy reasons underlying these authorities is directly applicable to this appeal.

The charges against Lewandowski are ambiguous, are not supported by the facts, and fail to specify which act or acts are alleged to have violated the Milwaukee Police Department's Code of Conduct. Accordingly, Lewandowski respectfully moves the Fire & Police Commission for an order requiring the Milwaukee Police Department to provide a more definite statement of the charges setting forth precisely how and when she violated the Code of Conduct. Without such an order, Lewandowski is not able to appropriately and reasonably address the allegations which provide the basis for her termination.

### A. The Charge That Lewandowski Failed to Operate a Department Vehicle in a Safe Manner is Vague, Ambiguous, and Fails to Allege any Act by Lewandowski That Was Unsafe, Discourteous, or in Violation of a Traffic Law.

Lewandowski is charged with failing to operate the vehicle in a safe and courteous manner while complying with all traffic laws. In support of that charge, the Department alleges that she activated the emergency lights and siren to prevent a vehicle from pulling out and striking her vehicle, and that she turned off the siren, but thought she left the emergency lights on. Turning on the lights to avoid an accident is not a failure to operate the vehicle in a safe and courteous manner, nor is it a violation of any traffic law. The lights are, by definition, safety equipment whose primary purpose is to improve safety by drawing the attention of bystanders.

The charge further provides that the Department vehicle was determined to be "totaled." Notably missing from the charge is the fact that the accident was caused by a speeding drunk driver who blew through a red light. The charge against Lewandowski does not cite a single law allegedly violated by Lewandowski. It does not even state what part of Lewandowski's conduct

was allegedly unsafe, discourteous, or illegal. Witnesses to the accident expressly refute the notion that Lewandowski did anything wrong:

> Ms. Hernandez described the squad was traveling about 30 to 35 miles per hour as it approached the intersection and collided with the vehicle traveling north on North 35th Street at approximately 40 to 45 miles per hour. Ms. Hernandez indicated the accident was caused by the white colored vehicle failing to stop for the red light. (2015 09 09 Memo to Brunson, page 4).

This charge alleges that Lewandowski violated the Code of Conduct by failing to operate the vehicle in a safe and courteous manner and/or in compliance with traffic laws, but does not say how. Lewandowski cannot defend herself against a charge that fails to allege any specific, wrongful, act.

Accordingly, Lewandowski respectfully moves the Fire & Police Commission for an order requiring the Milwaukee Police Department to provide a more definite statement of the charge that she failed to operate the vehicle in a safe and courteous manner and/or in compliance with traffic laws setting forth the specific act or acts which allegedly violated the Department's Code of Conduct.

### B. The Charge That Lewandowski Failed to Use Time to Accomplish the Mission of the Department by Responding to a Request for Help From a Fellow Police Officer who Feared for her Safety is Vague, Ambiguous and Fails to Set Forth Facts Demonstrating any Violation of the Code of Conduct.

Lewandowski is charged with failing to render service to the community promptly and efficiently. Detective Carr was allegedly assigned the task of returning to the scene of an accidental, self-inflicted shooting at 4257 North Teutonia Avenue to conduct a consent search for the firearm used in the shooting. Lewandowski volunteered to accompany Carr for the purpose of providing backup, but told Carr that she first had to stop at District 5 to assist a female police officer who feared for her safety. Carr agreed, and the two detectives were on their way to District 5 when the impaired driver collided with them.

The charge alleges that Lewandowski failed to use her time to accomplish the mission of the Department; however, it fails to assert how her act was a violation of the Code of Conduct. Perhaps it is because, as the charging document states, Lewandowski was going to District 5 to help an officer with a "personal issue." Officer Beasley's "personal issue" was that she had been sexually assaulted by a member of the Milwaukee Police Department's TEU and due to the threatening presence of other TEU officers at District 5, she feared for her safety. It is in this factual context that the Department has charged Lewandowski with violating the Code of Conduct's directive that Department members use their time to accomplish the mission of the Department. The charge, as it stands, does not allege whether the violation was that she responded to Officer Beasley's request for assistance, or whether Lewandowski handled some other so-called "personal issue" while on duty. Finally, the charge does not allege how responding to an officer's request for help, pursuant to training received by Lewandowski and others, fails to accomplish the mission of the Department.

Accordingly, Lewandowski respectfully moves the Fire & Police Commission for an order requiring the Milwaukee Police Department to provide a more definite statement of the charge that Lewandowski failed to render service to the community promptly and efficiently and that she failed to use her time to accomplish the mission of the Department setting forth the specific act or acts which allegedly violated the Department's Code of Conduct with respect to this charge.

### C. The Charge That Lewandowski Failed to be Forthright and Candid in Connection With any Administrative Inquiry or Report is Vague, Ambiguous, and Fails to Allege With Particularity any Act in Violation of the Code of Conduct.

Lewandowski is charged with failing to be forthright and candid in connection with an administrative inquiry. It is unclear from the charges what she failed to be forthright or candid about. Lewandowski and Carr both stated that they were on their way to District 5 when the

accident occurred. Beasley "acknowledged she intended to meet Detective Lewandowski at District 5 at about the time the accident had occurred." (2015 09 09 Memo at p. 13). Beasley's partner, Officer Gross, also stated that he and Beasley left 4257 North Teutonia Avenue for District 5 so Officer Beasley could talk to a detective (presumably Lewandowski).

Following the accident, Lewandowski was, in the words of the officers present, "incoherent." When the drunk driver collided with the squad, Lewandowski violently struck her head against the vehicle's gun rack, knocking her unconscious. When she recovered consciousness, she began screaming for her son. She said she had to go get her son. She told strangers to call her son. She told officers her son was at the UWM police station, and asked the officers to go get him. The officers went to UWM, but, contrary to what Lewandowski said immediately following the accident, her son was not with the UWM Police, nor was he at the UWM Police Department. After numerous calls to his phone by the Milwaukee Police officers who went looking for Jordan, they finally got a hold of him.

As a result of the collision with the impaired driver, Lewandowski was badly injured, confused, and incoherent. She knew her son had been pulled over somewhere near UWM campus, but she did not know where he was. She was not being dishonest about anything at the scene. She was badly injured and wanted her son informed of the accident and brought to the hospital. As her statements at the scene demonstrate, she did not know where he was.

The charging documents do not allege how Lewandowski failed to be forthright or candid. They don't say when she lied, or even what statement(s) contained lies. Lewandowski cannot prepare a defense against an allegation that simply sets out a series of alleged facts, and then adds a bare conclusion. Accordingly, Lewandowski respectfully moves the Fire & Police Commission for an order requiring the Milwaukee Police Department to provide a more definite statement of the charge that she failed to be forthright and candid in connection with any

administrative inquiry setting forth the specific act or acts which allegedly violated the Department's Code of Conduct. What was it that she lied about? When did the alleged lie occur? What is the truth proving the lie? Without knowing what is alleged, Lewandowski is asked to defend a moving target. This is neither fair nor proper, and the Department should be required to provide a more definite statement as to the allegations against Lewandowski.

Dated this 4th day of April, 2016.

GIMBEL, REILLY, GUERIN & BROWN LLP

By: _____

D. MICHAEL GUERIN
State Bar No. 1010343
STEVEN C. McGAVER
State Bar No. 1051898
Attorneys for Shannon Lewandowski

POST OFFICE ADDRESS:

330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440

*R:/civ/Lewandowski, Shannon/Pleadings/Lewandowski Motion for Def Statement 2016-04-04*



**GIMBEL ▪ REILLY ▪ GUERIN ▪ BROWN LLP**

Writer's Direct E-mail
smcgaver@grgblaw.com

April 29, 2016

**DELIVERED TO ALL RECIPIENTS**
 **VIA HAND DELIVERY**

MaryNell Regan, Executive Director
Milwaukee Fire and Police Commission
200 East Wells Street, Room 706A
Milwaukee, Wisconsin 53202-3515

Robin A. Pederson, Esq.
Milwaukee City Attorney's Office
200 E. Wells Street, Room 800
Milwaukee, WI 53202

Rudolph M. Conrad
3439 North Hackett Avenue
Milwaukee, WI 53211-2946

Re:     FPC Disciplinary Appeal – Shannon Lewandowski
         MPD Personnel Order No. 2015-150

Dear Ms. Regan, Mr. Pederson and Mr. Conrad:

Enclosed for filing please find Appellant Shannon Lewandowski's Reply Brief in Support of Her
Motion for a More Definite Statement in the above-referenced matter.

If you have any questions, please do not hesitate to contact me. Thank you.

Very truly yours,

STEVEN C. McGAVER

SCM/ddc
Enclosure
cc:    Shannon Lewandowski
*civ/lewandowski/c/Pederson,Conrad,Regan 2016-04-29*

330 E. KILBOURN AVE.
SUITE 1170
MILWAUKEE, WI 53202
P: 414-271-1440
F: 414-271-7680
WWW.GRGBLAW.COM



**MILWAUKEE**

**In the Matter of the Disciplinary Appeal**
**Of Shannon Lewandowski**

**RE: FPC Disciplinary Appeal – Shannon Lewandowski**
     **MPD P.O. Box 2015-150**

## APPELLANT SHANNON LEWANDOWSKI'S REPLY BRIEF
## IN SUPPORT OF HER MOTION FOR A MORE DEFINITE STATEMENT

Appellant Shannon Lewandowski, by her attorneys Gimbel, Reilly, Guerin & Brown

LLP, respectfully submits this reply brief in support of an order requiring the Milwaukee Police

Department ("Department") to provide a more definite statement of charges (a bill of

particulars) against Lewandowski, specifically stating the act(s) which are alleged to be

violations of the Department's Code of Conduct.

### ARGUMENT

In Chief Edward Flynn's ("Chief") response brief, he criticizes Lewandowski's

"Background" section, labeling it as "self-serving and irrelevant." Contrary to the Chief's

argument, a brief contextual overview of the alleged actions that the Chief asserts are in

violation of Department rules, regulations, or standard operating procedure is absolutely

central to the question of whether the Chief has met his burden to "outlin[e] the specific conduct

which serves as the basis for each rule violation alleged. (FPC Rule XVI, §4.)

The Chief correctly states the authority governing this issue, noting the 1976 Wisconsin

Supreme Court decision in *State ex rel DeLuca v. Common Council of City of Franklin,* which

requires "that charges must be: '…"reasonably calculated under all the circumstances to

apprise interested parties of the pendency of the action and afford them an opportunity to

present their objections.'" 72 Wis. 2d 672, 680, 242 N.W.2d 689, 694 (1976). Nonetheless, the

1

complaint in this case fails to sufficiently outline specific conduct which serves as the basis for each of the three rule violations alleged against Lewandowski as required by the rules of this Fire and Police Commission and *State ex rel DeLuca*. (FPC Rule XVI, §4.) The complaint in its current form operates more like a "choose-your-own-adventure book" than a document informing Lewandowski of her specific conduct alleged to have violated Milwaukee Police Department rules, as the Chief recites narrative in the "specifications" section of all three charges, but fails to identify what conduct outlined in the "specification" section is contrary to Milwaukee Police Department rules, regulations and/or standard operating procedures.

I.    **SECTION ONE OF THE COMPLAINT FAILS TO SPECIFY HOW LEWANDOWSKI VIOLATED DEPARTMENT CORE VALUE 1.00 – COMPETENCE, REFERENCING GUIDING PRINCIPLE 1.03.**

The complaint in this matter alleges that Lewandowski violated Milwaukee Police Department Core Value 1.00 – Competence, Referencing Guiding Principle 1.03, which requires "all department members [to] render service to the community promptly and efficiently. When not answering a call for service, members shall use their time to accomplish the mission of the department." The "specification" section for that alleged rule violation in the complaint alleges that prior to the squad car accident associated with these charges, Detective Juanita Carr "had been assigned and intended to recover a firearm used in a shooting incident. Detective LEWANDOWSKI volunteered to assist the other detective, both of whom were in the same vehicle for that assignment. Instead of responding to the location to attempt the firearm recovery, Detective LEWANDOWSKI was responding to a location for reasons not related to aid in the recovery of the firearm. (Complaint at 2.) The complaint goes on to reference Lewandowski's PI-21 interview, wherein she "admitted she was not responding to recover the firearm at the time of the accident, but going to District Five to help an officer with a personal issue." (Complaint at 2.) Finally, the complaint alleges that Lewandowski "failed to render

2

service to the community promptly and efficiently. Detective LEWANDOWSKI failed to use her time to accomplish the mission of the Department." (Complaint at 3.)

From the four corners of the complaint, it is unclear whether the Department alleges: that Lewandowski did not make efficient use of her time by: 1) reporting to District Five to assist a fellow officer, 2) reporting to intervene in the law enforcement detention of her son, or 3) in route to a different location for some other reason. This lack of clarity matters a great deal to Lewandowski's ability to understand and defend against the allegations contained in the complaint. Lewandowski has a right to know what about her actions is perceived by the Department to be a violation of its rules.

## II. SECTION TWO OF THE COMPLAINT FAILES TO SPECIFY HOW LEWANDOWSKI VIOLATED DEPARTMENT CORE VALUE 1.00 – COMPETENCE, REFERENCING GUIDING PRINCIPLE 1.05.

The complaint also alleges that Lewandowski violated Core Value 1.00 - Competence Referencing Guiding Principle 1.05, which states, "all department members shall be familiar with department policy, procedures and training and shall conduct themselves accordingly." (Complaint at 3.) The specific operating requirements applicable to this case are referenced in the Milwaukee Police Department Standard Operating Procedures relating to: Department Owned Vehicles – Section 640.15(A)(2), which states, "operators of department vehicles shall, in all instances, operate the vehicle in a safe and courteous manner, comply with all traffic laws and ordinances, and wear seatbelts at all times, except when doing so would endanger the safety of the operator or another, or when he/she has provided medical certification that he/she is unable to do so." (Complaint at 3-4.)

The "specification" section for that alleged rule violation is largely the same as the previous one, with the addition of one paragraph explaining that the Department vehicle involved in the crash was "totaled" with a value of $4,525; that Lewandowski, a second

3

detective (Juanita Carr) and a citizen received injuries from the accident that required hospitalization; and that Lewandowski and the other detective were unable to work for a significant period of time. (Complaint at 5.) It is not possible from within the four corners of the complaint to determine whether the Department alleges that: 1) Lewandowski traveling through the intersection of 35th Street and North Avenue with her squad car lights activated, was a violation of the above-referenced Department procedure; 2) Lewandowski traveling through the intersection of 35th Street and North Avenue with her squad car siren activated, was a violation of Department policy and procedure; or 3) the manner in which Lewandowski drove the squad car through the intersection located at 35th Street and North Avenue (e.g. speeding, weaving through traffic, etc.) was a violation of Department procedure and protocol. The Department must specify what about Lewandowski's operation of her squad car violated Department rules, policies, or procedures in order for her to be able to sufficiently understand the charges against her and prepare an appropriate defense. As the complaint stands, Lewandowski is unable to determine what about her actions is perceived by the Department as a violation of its rules.

### III. SECTION THREE OF THE COMPLAINT FAILS TO SPECIFY HOW LEWANDOWSKI VIOLATED DEPARTMENT CORE VALUE 1.00 – COMPETENCE, REFERENCING GUIDING PRINCIPLE 3.10.

Finally, Lewandowski is alleged to have violated Core Value 3.0 – Integrity Referencing Guiding Principle 3.10, which states, "all department members shall be forthright and candid, orally or in writing, in connection with any administrative inquiry or report." (Complaint at 5.) In the "specification" section of the complaint for this charge, the first two paragraphs are identical to the specification sections for the two previous charges. The complaint goes on to allege that shortly after 2:00 a.m., Shorewood Police Department Sergeant Cody Smith had contact with Jordan Lewandowski on Maryland Avenue. Sergeant Smith indicated that Jordan

4

Lewandowski "informed him his mother was a Milwaukee Police Detective by handing him a business card, and stated she was on her way to the location." (Complaint at 6.) The complaint goes on to allege that Lewandowski contacted her immediate supervisor, Lieutenant Sean Hanley at 6:38 a.m., during which Lewandowski told him that she received a telephone call from her son while she was in route to District Five, informing her that he had just been stopped by the UWM Police Department. (Complaint at 7.) The complaint further alleges that Lewandowski reported (to Hanley) that she then proceeded to UWM to find her son with emergency lights activated to "make cars pull over and get out of her way but not to operate as an emergency vehicle." The complaint goes on to identify various alleged eyewitness accounts of Lewandowski shortly after the accident, wherein she makes several statements about going to UWM to "get to her son" or "get her son." (Complaint at 7.) The complaint goes on to repeat the paragraph related to Lewandowski's PI-21 interview as found in the prior two charges. (Complaint at 7-8.) Finally, the complaint alleges that Lewandowski "acknowledged that she received a telephone call from her son, informing he had been stopped by a police officer. Detective LEWANDOWSKI stated she was not meeting her son, and indicated Lieutenant Hanley's report was not accurate." (Complaint at 8.).

While this "specification" section is admittedly more detailed than the specification sections contained in the prior two charges, it still fails to specifically allege how Lewandowski failed to be "forthright and candid, orally or in writing, in connection with any administrative inquiry or report." (Complaint at 8.) In other words, the complaint fails to specify whether Lewandowski was untruthful about: 1) whether she was going to District Five to assist a fellow officer; 2) whether she was going to intervene in the law enforcement detention of her son; 3) whether she traveled through the intersection of 35th Street and North Avenue with lights and/or sirens activated; 4) whether she traveled through the intersection of 35th Street and

5

North Avenue in an unsafe manner (speeding, weaving through  traffic, etc.); or any other matters related to the accident on January 19, 2015.  Without specifying which of Lewandowski's statements are considered by the Department to be untrue, incomplete, or otherwise dishonest, Lewandowski is forced into the unfair position of defending a moving target.  Since Lewandowski is essentially accused of lying, she certainly has a fundamental due process right to know what she is accused of lying about.  Without that crucial information, it is impossible for Lewandowski to adequately understand the full nature of the charges against her and prepare an appropriate defense to those charges.

## CONCLUSION

For the foregoing reasons, the Department should be required to provide a more definite statement as to all of the allegations against Lewandowski well in advance of the hearing date set in this matter.

Dated this 29th day of April, 2016.

GIMBEL, REILLY, GUERIN & BROWN LLP

By: _____

D. MICHAEL GUERIN
State Bar No. 1010343
dmguerin@grgblaw.com
STEVEN C. McGAVER
State Bar No. 1051898
smcgaver@grgblaw.com
Attorneys for Appellant
Shannon Lewandowski

POST OFFICE ADDRESS:

Two Plaza East, Suite 1170
330 East Kilbourn Avenue
Milwaukee, Wisconsin 53202
Telephone:  414/271-1440
*Civ/Lewandowski,Sharron/pl/reply brief support mot for def stmt 2016-04-29*

6

## BOARD OF FIRE AND POLICE COMMISSIONERS
## OF THE CITY OF MILWAUKEE

---

*In the Matter of the Appeal of Shannon Lewandowski MPD Personnel Order 2015-150*

---

## DECISION AND ORDER DENYING APPELLANT'S MOTION FOR A MORE
## DEFINITE STATEMENT

---

Milwaukee Police Department Order 2015-150, discharged Detective Shannon Lewandowski from the department after she had been found guilty of three charges, to wit: 1) failure to render service to the community promptly and efficiently, and failure to use her time to accomplish the mission of the department; 2) failure to operate a department vehicle in a safe manner and courteous manner; and 3) failure to be forthright and candid in connection with an administrative inquiry or report. Lewandowski has appealed the Order to this Commission and has filed a motion for a more definite statement of the charges against her. She alleges that the Complaint fails to identify how her alleged conduct violated department rules. The charges against Lewandowski are stated in the Complaint dated December 16, 2015.

When a fire and police commission conducts an administrative proceeding for the dismissal of a police officer, due process requires "(1) the right to seasonably know the charges or claims preferred; (2) the right to meet such charges or claims by competent evidence; and (3) the right to be heard by counsel." *State ex rel. Richey v. Neenah Police and Fire Commission,* 48 Wis. 2d 575, 580, 180 N.W. 2d 743, 746 (1970). To meet these requirements, a municipality conducting an employee discharge hearing must provide notice that is ". . . reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeLuca v. Common Council of City*

*of Franklin,* 72 Wis. 2d 672, 680, 242 N.W. 2d 689, 694 (1976). The charges "need not be technically drawn nor meet the requirements of a criminal indictment." *State ex rel. Richey,* supra, 48 Wis. 2d at 582, 180 N.W. 2d at 746. Moreover, as long as a party is aware of the allegations sufficiently to defend against them, the employer is not required to recite the provisions of the allegedly violated regulations. *State ex rel. Messner v. Milwaukee County Civil Service Commission,* 56 Wis. 2d 438, 445, 202 N.W. 2d 13, 18 (1972).

The Commission rule governing complaints comports with the due process standard held to be applicable in *DeLuca* and *Richey.* Commission Rule XVI, sec. 4, requires the department to file with the Commission a complaint ". . . outlining the specific conduct which serves as the basis of each rule violation alleged."

In her initial brief, Lewandowski asks that the Commission apply the same standard to evaluate the Complaint as applies to criminal indictments. But there is neither a basis in law nor a compelling reason for the Commission to adopt the stricter criminal-law standard. *State ex rel. Richey,* supra, 48 Wis. 2d at 582, 180 N.W. 2d at 746. Moreover, it is incumbent on the Commission to apply its rules.

In her reply brief, Lewandowski makes a new argument. She argues that the complaint does not meet the requirements of Commission Rule XVI, sec. 4. The question, therefore, is whether the Lewandowski Complaint meets the requirement of the Commission rule.

She contends the specification of the first charge fails to state how she failed to render service to the community promptly and efficiently, or failed to use her time to further the mission of the department. The specifications state that on January 19, 2015, at 2:17 a.m., Lewandowski was on duty driving a squad when she was involved in an automobile accident at 35th Street and North Avenue in Milwaukee. Prior to the accident, her partner, who was the squad passenger,

had been assigned to and intended to recover a firearm that had been used in a shooting incident. Although Lewandowski had volunteered to assist in the firearm recovery assignment, at the time of the accident she was not driving to the location of the firearm, but instead she was proceeding to District Five to assist an officer with a personal issue. The specification, therefore, states that while on duty she was not promptly and efficiently performing the department's assignment of retrieving the firearm; instead, she used her time to address a personal matter. The specification is adequate to give her notice of the charge.

The specification of the second charge, she argues, does not state how she failed to operate her department-assigned vehicle in a safe and courteous manner, or how she failed to comply with all traffic laws. The second charge also arises out of the January 19th squad accident. Lewandowski was driving east on North Avenue and crashed into a vehicle traveling north on 35th Street. The vehicle she struck had driven through the intersection against the traffic light that was showing red or yellow. In a PI-21 interview, Lewandowski stated she had activated the emergency lights and siren to prevent a vehicle from pulling out and striking her squad, then turned the siren off but believed she kept the emergency lights on. Lewandowski admitted there was no other reason to turn on the emergency lights because she was going to District Five to help another officer with a personal issue.

The specification puts into question Lewandowski's use of the squad's emergency lights and siren and her driving. It specifically states she failed to operate the vehicle in a safe and courteous manner. Lewandowski, however, argues that the specification should also state what specific rule governing operation of her squad she violated. The specification is adequate to give her notice of the charge. Neither due process nor Rule XVI, sec. 4, requires the degree of specificity she seeks. As noted above, as long as a party is aware of the allegations sufficiently to

defend against them, the employer is not required to recite the provisions of the allegedly violated regulations. *State ex rel. Messner,* 56 Wis. 2d 438, 445, 202 N.W. 2d 13, 18.

Lastly, she argues that the specification of the third charge does not state how she failed to be forthright and candid in connection with any administrative inquiry or report. The third charge arises out of inconsistent statements made by Lewandowski. In her PI-21 interview, Lewandowski stated she was on her way to District Five to help another officer with a personal issue, and that she had used her emergency lights and siren to prevent another car from striking her vehicle. Lewandowski also stated that she received a telephone call from her son informing her that he had been stopped by a police officer but she was not on her way to meet her son. Lewandowski, however, told Police Lieutenant Sean Hanley that after her son had called her and had told her he had been stopped by the University of Wisconsin (UWM) Police Department, she commenced driving to UWM to find her son. She told Hanley she turned on the emergency lights to make cars pull over and get out of her way and not to operate as an emergency vehicle. Also, Lewandowski made statements at the accident scene to other officers that she was responding to a UWM location because her son had been stopped by UWM police. The Complaint outlines that her PI-21 statements were inconsistent with her statement to Hanley and statements she made at the scene of the accident to other officers and reported by witnesses. The specification is adequate to give her notice of the charge.

Lewandowski's motion for a more definite statement is therefore denied.

Signed and dated at Milwaukee, Wisconsin this 4th day of May, 2016.

Rudolph M. Konrad, Hearing Examiner
On Behalf of the Board
Milwaukee Fire and Police Commission

**In the Matter of the Disciplinary Appeal**
**Of Shannon Lewandowski**

**RE: FPC Disciplinary Appeal – Shannon Lewandowski**
**MPD Personnel Order No. 2015-150**

---

## APPELLANT SHANNON LEWANDOWSKI'S
## MOTION TO SUPPRESS

---

Appellant, Shannon Lewandowski (Lewandowski), by her attorneys Gimbel, Reilly,

Guerin & Brown LLP, respectfully moves the Fire & Police Commission for a motion to suppress

any statements made by Lewandowski prior to April 9, 2015, because they were taken in violation

of *NLRB v. Weingarten, Inc.* and Wis. Stat. section 164.02, and the Milwaukee Police Department's

Rules, Regulations and Standard Operating Procedure (SOP).

### BACKGROUND

On January 19, 2015, Detective Shannon Lewandowski and Detective Juanita Carr (Carr)

were both on duty during the power shift, which began at 8:00 p.m. and was scheduled to end at

4:00 a.m. During that shift, Milwaukee police responded to an accidental, self-inflicted shooting

at 4257 North Teutonia Avenue.

At some point during the shift, Carr's supervisor, Lt. Sean Hanley (Hanley) directed her

to attempt a consent search of the home where the man who had accidentally shot himself lived.

Lewandowski volunteered to accompany Carr for the search, but told Carr that she first had to

stop at the District 5 Police Station to speak with Police Officer (now Detective) Beasley, who

feared for her safety at the hands of certain TEU officers at District 5. Detective Carr agreed to

Lewandowski's request, and the two detectives left District 3. Detective Lewandowski drove the

unmarked squad car and traveled eastbound on North Avenue. As they drove, Lewandowski—

1

who refuses to use her cell phone while driving—handed her phone to Carr and asked Carr to look up Beasley's contact information in her phone. As they approached the intersection of 35th Street and North Avenue, Lewandowski noticed a car at the side of the road that she was afraid was preparing to pull out in front of her, causing an accident. To attract the driver's attention, Lewandowski activated her squad car's lights and may have chirped the sirens. Carr, at that point, was looking down at Lewandowski's phone. After passing the vehicle, Lewandowski and Carr entered the intersection of 35th Street and North Avenue. The stoplight at that intersection was green for the detectives. At the same moment, an intoxicated motorist speeding northbound on 35th Street toward North Avenue entered the intersection against a red light.[1] The intoxicated motorist sped through the red light and collided with the detectives' squad car, causing severe injuries to both detectives, including a traumatic brain injury to Lewandowski. Lewandowski's injuries included: Cervical Musculoligamentous, a neck injury that causes delayed speech and memory loss; a concussion; 3-4 minutes of loss of consciousness; whiplash; a sprained right ankle; a torn ankle ligament; bruising and swelling. (See Exhibit 1 – Medical records of Shannon Lewandowski.)

Shortly after arriving on the scene of the accident, Carr and Lewandowski's supervisor, Lt. Hanley, contacted Detectives Kenyatte Wooden and Troy Johnson and instructed them to come to the scene of the accident for witness interviews. Hanley reported that he "did this because the possibility of serious injuries to the detectives involved in the accident and the need for detailed interviews **due to the possibility of violations of Rules and Regulations and SOP.**" (See Exhibit 2 - Milwaukee Police Department Incident Report Prepared by Lt. Sean Hanley, MPD Bates nos. 180-185 at 184 (emphasis added).)

---

[1] The driver, who had multiple arrest warrants was legally impaired and tested positive for narcotics.

Immediately after being discharged from the hospital at approximately 6:38 a.m. on January 19, 2015, Lewandowski checked in via telephone with Hanley, as she had not spoken to him subsequent to the accident. Over the course of this seven minute conversation, Hanley asked Lewandowski several questions about her role in the accident that occurred earlier that morning. Lewandowski was never informed by Hanley, or anyone else, that her actions were subject to an Internal Affairs Division investigation, that there was potential for disciplinary action against her, that if she refused to cooperate or answer questions that disciplinary actions could be taken against her, or that she could have a representative of her choice present at the questioning.

Hanley later reported the information he obtained in this interrogation to Sgt. Adam Zieger, who utilized this information in the investigative report that he prepared. (See Exhibit 3 - September 9, 2015 Milwaukee Police Department Memorandum from Zieger to Brunson, MPD Bates nos. 0233-0254 (and elsewhere) at 0239, 0248-0249). It was not until April 8, 2015 that Lewandowski was presented with a formal form PI-21 by the Internal Affairs Division of the Milwaukee Police Department and informed of her rights, as specified in Wis. Stat. sections 164.02 and 111.70(2). (See Exhibit 4 - PI-21 of Detective Shannon Lewandowski.)

The investigation into the accident resulted in three charges being levied against Lewandowski, and her subsequent termination from the Milwaukee Police Department. Because Hanley initiated an internal investigation of possible rule violations by Lewandowski, and shortly thereafter interrogated her during a telephone conversation without first informing Lewandowski of her Wis. Stat. section 164.02 rights, Lewandowski's statements to Hanley should be suppressed.

3

# ARGUMENT

I.  **SHANNON LEWANDOWSKI'S FEBRUARY 19, 2015 STATEMENTS SHOULD BE SUPPRESSED BECAUSE THEY WERE TAKEN IN VIOLATION OF *NLRB V. WEINGARTEN, INC.* AND WIS. STAT. SECTION 164.02.**

In *NLRB v. Weingarten, Inc.*, the United States Supreme Court held that employees have a "right of union representation at investigatory interview which the employee reasonably believes may result in disciplinary action against him." 420 U.S. 251 (1975). Wisconsin has codified the provisions of *NLRB v. Weingarten, Inc.* with regard to law enforcement officers at Wis. Stat. section 164.02. This statute states that law enforcement officers under investigation for internal department rule violations are entitled to: (1) be informed of the nature of the investigation prior to interrogation, and (2) be provided a representative should the officer request one, Wis. Stat. section 164.02(1)(a)-(b). Any evidence obtained without compliance with the rules must be suppressed per Wis. Stat. section 164.02(2). In *Slawinski v. Milwaukee City Fire and Police Com'n*, the Wisconsin Supreme Court held that when a department fails to warn an officer of potential discipline before an interrogation, no evidence obtained from the interrogation may be used against an officer. 212 Wis. 2d 777 (1997). The City of Milwaukee's policy is to inform an officer of his or her rights, as explained in *Weingarten*, *Slawinski*, and Wis. Stat. section 164.02 in what is called a PI-21 form. The PI-21 form is to be given to all law enforcement officers prior to an internal interrogation.

   A. **The conversation on the morning of January 19, 2015 between Lewandowski and Hanley constituted an interrogation for Wis. Stat. section 164.02 purposes.**

The United States Supreme Court has defined an interrogation as "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). This means "any words or actions" by the investigator that the investigator "should know are reasonably likely to elicit an incriminating response" by the suspect constitutes an interrogation. *Id.* Prior to speaking

4

with Lewandowski, Hanley sought assistance from Detectives Wooden and Johnson to come to the scene for witness interviews. In his incident report concerning the events of January 19, 2015, Hanley reported that he contacted these detectives "because the possibility of serious injuries to the detectives involved in the accident and the need for detailed interviews **due to the possibility of violations of Rules and Regulations and SOP.**" (See Exhibit 2.) Hanley sought the intervention of detectives Wooden and Johnson to address the possibility of violations of Rules, Regulations, and SOP almost immediately after reporting to the scene of the accident. Several hours later, when Lewandowski called to check in with Hanley, he used that opportunity to interrogate her, delve into the internal investigation and question her about the events leading up to the accident. This is clearly an interrogation, as Hanley was obviously asking Lewandowski about her conduct to determine whether she violated any department rules, regulations or SOP.

> **B. Lewandowski's rights were violated when the Milwaukee Police Department failed to present her with a PI-21 form prior to the February 19, 2015 interrogation.**

Wis. Stat. section 164.02(1) requires that law enforcement officers under investigation and subject to interrogation for any reason that could lead to disciplinary action, demotion, dismissal, or criminal charges are entitled to: (1) be informed of the nature of the investigation prior to interrogation; and (2) be given the right to a representative during the course of the interrogation. Wis. Stat. section 164.02(2) goes on to state that any evidence obtained in any investigation that is not conducted in accordance with Wis. Stat. section 164.02(1) may not be used in any subsequent disciplinary proceeding against the law enforcement officer.

In the current case, Hanley had already taken it upon himself to commence an internal investigation into the actions of Lewandowski (and Carr, for that matter) by bringing detectives to the scene of the accident to conduct "detailed interviews due to the possibility of violations of Rules and Regulations and SOP" committed by Lewandowski (and Carr) before he spoke with

5

Lewandowski on the telephone. (See Exhibit 2.) Lewandowski called to check in with her supervisor at approximately 6:38 a.m. on January 19, 2015, and instead of inquiring about the physical, mental, or emotional condition of one of his detectives who had just experienced a traumatic experience, Hanley took it upon himself to advance the internal investigation that he had previously commenced by interrogating Lewandowski, who was still in a fragile state just hours after the accident. Prior to conducting this interrogation of Lewandowski, Hanley neglected to provide Lewandowski with any of the information required by section 164.02 or internal Milwaukee Police Department Rules, Procedures, or SOP. Hanley later reported the information he obtained in this interrogation to Sgt. Adam Zieger, who utilized this information in the investigative report that he prepared. (See Exhibit 4.) Lewandowski was not formally provided with a PI-21 form and informed of her rights until April 8, 2015, almost four months after the initial interrogation conducted by Hanley

## CONCLUSION

Because Hanley initiated an investigation into possible violations of department rules, regulations, or SOP shortly after he arrived on the scene of the accident on January 19, 2015, and later conducted an interrogation of Lewandowski in violation of Wis. Stat. section 164.02 and Milwaukee Police Department Rules, Regulations, and SOP, any statements obtained from Lewandowski prior to April 8, 2015 should be suppressed and declared inadmissible in these proceedings.

Dated this ___21st___ day of April, 2016.

GIMBEL, REILLY, GUERIN & BROWN LLP

By: _____

D.MICHAEL GUERIN
State Bar No. 1010343
dmguerin@grgblaw.com
STEVEN C. McGAVER
State Bar No. 1051898
smcgaver@grgblaw.com
Attorneys for Shannon Lewandowski

POST OFFICE ADDRESS:

330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
Telephone:  414/271-1440
Facsimile: 414/271-7680
*Civ/Lewandowski/pl/mottosuppress 2016-04-21*

In the Matter of the Disciplinary Appeal
Of Shannon Lewandowski

RE: FPC Disciplinary Appeal – Shannon Lewandowski
MPD Personnel Order No. 2015-150

---

## APPELLANT SHANNON LEWANDOWSKI'S
## REPLY BRIEF IN SUPPORT OF HER MOTION TO SUPPRESS

---

Appellant, Shannon Lewandowski (Lewandowski), by her attorneys Gimbel, Reilly, Guerin & Brown LLP, respectfully submits this reply brief in support of her motion to suppress any statements made by Lewandowski prior to April 9, 2015, because they were taken in violation of *NLRB v. Weingarten, Inc.* and Wis. Stat. section 164.02, and the Milwaukee Police Department's Rules, Regulations and Standard Operating Procedure (SOP).

### ARGUMENT

There does not seem to be any dispute between Lewandowski and the Department that section 164.02 of the Wisconsin Statutes is the controlling law on this issue. This law is often called the Wisconsin Law Enforcement Bill of Rights, and with good reason. Because of the nature of the job, law enforcement officers are, on occasion, necessarily subject to internal investigations into their conduct. Section 164.02 guarantees Wisconsin law enforcement officers the right to notice of the purpose of the investigation and the right to representation during disciplinary interviews. Furthermore, the parties agree that it is Department policy to comply with the provisions of section 164.02 and to document that compliance with a form PI-21. The parties do not agree on whether Lewandowski was being investigated at the time she spoke with Lt. Sean Hanley (Hanley) on the phone in the early morning hours of January 19, 2015 or whether she was interrogated during this phone call.

In its response brief, the Department focuses its analysis on *N.L.R.B v. J. Weingarten Inc.*, and the Court's concern over a "confrontation," between management and an employee who "may be too fearful or inarticulate to relate accurately the incident being investigated." 420 U.S. 251, 260 and 263; however, it fails to address the fact that the Wisconsin Law Enforcement Bill of Rights governs these types of encounters between police officers and their superiors. Wis. Stat. §164.02. Moreover, while the Department points out Lewandowski's supposed demeanor, appearance, and lucidity in great detail (all of which Lewandowski disputes), the Department's own internal policy explains that the burden is not on Lewandowski to inform her of her rights. Milwaukee Police Department Standard Operating Procedure, General Order 2009-33 requires the following:

> If a Department member is **under investigation for an alleged violation of Department Rules, Procedures, or Position Responsibilities and is subject to an interview for any reason, which could lead to disciplinary action, demotion or discharge from the Milwaukee Police Department**, such interview shall comply with the following requirements:
>
> 1. The supervisor assigned to conduct a personnel investigation shall, prior to obtaining any information from an accused member (the target of the investigation), inform the accused member that the matter is a personnel investigation, NOT a criminal investigation, or a claim/lawsuit investigation.
> 2. If there is any possibility that the matter being investigated could result in a criminal proceeding, the investigating supervisor shall advise the accused member that: "This is a personnel investigation. The answers you give and the fruits thereof, cannot be used against you in any criminal proceeding."
> 3. Prior to conducting an interview that requires an accused member to provide oral statements, the investigating supervisor shall complete the Internal Investigation-Informing the Member Report (Form PI-21). Note: A PI-21 shall be issued for each subsequent oral statement obtained from the same member.
> 4. The supervisor shall request that the Department member sign the PI-21 report. If the member refuses to sign the PI-21, the supervisor shall place the word "refused" on the signature line.
> 5. The original PI-21 shall become a part of the investigative file. A copy shall be given to the Department member.
> 6. The Department member under investigation shall be informed of the nature of the Investigation prior to any interview by including a brief synopsis of the allegation(s) on the PI-21. Include enough information so that the member is able to prepare for the interview.

2

7. If proper investigation requires that the member provide information such as memorandum book entries, notes, etc., then so order the member to bring that information to the interview. This order shall be made in writing on the PI-21.
8. Prior to any interview, the investigating supervisor shall advise the member that: "The refusal to respond during this interview, or any response which is untruthful, can result in suspension or discharge from the Milwaukee Police Department."

Milwaukee Police Department Standard Operating Procedure, General Order 2009-33 at 6-7.

While Lewandowski cannot accurately opine whether Hanley had the authority to commence a formal internal investigation on his own, he certainly took steps to initiate such an investigation by seeking the assistance of Detectives Wooden and Johnson, in his own words -- "due to the possibility of violations of Rules and Regulations and SOP." Furthermore, Hanley's January 19, 2015 conversation with Lewandowski made her "subject to an interview for any reason, which could lead to disciplinary action, demotion or discharge from the Milwaukee Police Department." *Id.*

The Department's illustrative hypothetical about a supervisor questioning a subordinate as to why a particular report was tardy is neither relevant nor applicable to Lewandowski's situation. Of course, a supervisor should not be compelled to provide section 164.02 warnings to subordinates before asking about the subordinate's performance of daily tasks. However, if the subordinate is involved in a serious car accident involving damage to a Department squad of more than $4,525 and serious injuries to a citizen and two detectives requiring hospitalization and significant time off of work, and that accident required the intervention of two additional detectives to conduct "detailed [witness] interviews due to the possibility of violations of Rules and Regulations and SOP," it is essential that the subordinate is advised of her section 164.02 rights prior to an interrogation by a superior. (See Complaint at 5; Response at 6.) The allegations in this case do not include tardy police reports, and the Department's comparison to such an

innocuous hypothetical is misguided. The allegations against Lewandowski were serious enough to merit her termination from the Department. It is not too much to ask that the investigation into Lewandowski's conduct is treated with enough seriousness to afford her the rights guaranteed by section 164.02 and the Department's own operating procedures?

The Department also challenges Lewandowski's interpretation of the definition she applies to the word "interrogation," maintaining that where the word (or one of its forms) is referenced in the statutes, the word "connotes a formal questioning." (Response at 5 (citations omitted)). The Department correctly cites section 990.01(1) as appropriate instruction on the rules of statutory construction stating that words utilized in the statutes are to be construed through their "common and approved usage, but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." The word "interrogation" is not the type of technical, rare, or peculiar legal word as to require that we construe its meaning from the other places it is utilized in the statutes or legal dictionaries. Unlike, *pro hac vice, ex parte,* remuneration, replevin, petitioner, etc., the word "interrogation" is used often enough in every day conversations and writings that use of the common dictionary definition of the word is more than enough to "construe" what the legislature meant by the use of the word. The website www.dictionary.com defines "interrogation" as: "1) the act of interrogating; questioning; 2) an instance of being interrogated: He seemed shaken after his interrogation; 3) a question; inquiry; 4) a written list of questions; 5) an interrogation point; question mark." Contrary to the Department's position, there is no formality connoted or implied in the dictionary definition of the word "interrogation" in section 164.02, and the Department cannot credibly deny that Hanley's January 19, 2015 conversation with Lewandowski was an "interrogation," as that term is defined in the dictionary and the United States Supreme Court in *Rhode Island v. Innis,* 446 U.S. 291, 300-301 (1980).

4

Finally, the Department places great emphasis on the fact that "Lt. Hanley does not have the authority to initiate an internal investigation. That authority is soundly vested in the Chief and the Internal Affairs Division (which Hanley is not assigned to)." (Response at 7.) While this may be technically true, it is also true that not only can Hanley request that internal affairs conduct an investigation (which he did in this matter on January 22, 2015 at 2:15 a.m.), he can also provide statements made in the context of interviews he conducted with his subordinates in order to steer an investigation in a particular direction (which he did in this matter in his accident report and in his subsequent statement to internal affairs about his January 19, 2015 interrogation of Lewandowski). (See Lewandowski Exhibits 2 at 4; Lewandowski Exhibit 3 at 16-17 of 22.) The non-PI-21 statements attributed to Lewandowski from her January 19, 2015 interrogation by Hanley serve as a back door to section 164.02 procedures that are in place to protect law enforcement officers and the integrity of internal investigations. If the statements attributed to Lewandowski in Hanley's interrogation of her are not suppressed, it opens the door for supervisors to conduct their own interviews of their subordinates without the protections afforded by section 164.02 prior to and without the involvement of internal affairs. As soon as Hanley became aware that this matter involved a possible rule violation (which, through his own admission in his accident report was almost immediately after he reported to the scene of the accident), he should have either informed Lewandowski of her PI-21 and section 164.02 rights prior to speaking with her, or left it to the internal affairs division to conduct the investigation. Whether intentional or not, Hanley had complete control over this investigation prior to handing it off to internal affairs. The potential precedent of allowing an immediate supervisor to conduct an interrogation of a subordinate without any of the protections offered by section 164.02 and then handing off the investigation (including a non-164.02 interrogation) over to internal affairs to finish it up should arouse some serious concerns about the integrity of future internal affairs

5

investigations and the Department's overall compliance with section 164.02. Any statements that Lewandowski made to Hanley should be suppressed.

## CONCLUSION

Because Hanley initiated an investigation into possible violations of Department rules, regulations, or SOP shortly after he arrived on the scene of the accident on January 19, 2015, and later conducted an interrogation of Lewandowski in violation of Wis. Stat. section 164.02 and Milwaukee Police Department Rules, Regulations, and SOP, any statements obtained from Lewandowski prior to April 8, 2015 should be suppressed and declared inadmissible in these proceedings.

Dated this ___4th___ day of ~~April~~ May, 2016.

GIMBEL, REILLY, GUERIN & BROWN LLP

By: _____

D. MICHAEL GUERIN
State Bar No. 1010343
dmguerin@grgblaw.com
STEVEN C. McGAVER
State Bar No. 1051898
smcgaver@grgblaw.com
Attorneys for Shannon Lewandowski

POST OFFICE ADDRESS:

330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440
Facsimile: 414/271-7680
*civ/Lewandowski/pl/mottosuppress 2016-04-21*

6



**GRGB LAW**     GIMBEL·REILLY·GUERIN·BROWN LLP

Writer's Direct E-mail
smcgaver@grgblaw.com

May 4, 2016

**VIA MESSENGER TO ALL RECIPIENTS**

Rudolph M. Conrad
3439 North Hackett Avenue
Milwaukee, Wisconsin 53211-2946

MaryNell Regan, Executive Director
Milwaukee Fire and Police Commission
200 East Wells Street, Room 706A
Milwaukee, Wisconsin 53202-3515

Attorney Robin A. Pederson
Milwaukee City Attorney's Office
200 East Wells Street, Room 800
Milwaukee, Wisconsin 53202

    Re:    *FPC Disciplinary Appeal – Shannon Lewandowski*
            *MPD Personnel Order No. 2015-150*

Dear Mr. Conrad, Ms. Regan and Mr. Pederson

    Enclosed for filing is Shannon Lewandowski's reply brief supporting her motion to suppress in the referenced matter. If you have any questions, please do not hesitate to contact me. Thank you.

          Very truly yours,

          STEVEN C. McGAVER

SCM/blb

Enclosure

cc:   Ms. Shannon Lewandowski
*civ/lewandowski/c/Pederson,Conrad,Regan 2016-05-04*

330 E. KILBOURN AVE.
SUITE 1170
MILWAUKEE, WI 53202
P: 414-271-1440
F: 414-271-7680
WWW.GRGBLAW.COM



MILWAUKEE

# BOARD OF FIRE AND POLICE COMMISSIONERS
# OF THE CITY OF MILWAUKEE

---

## In the Matter of the Appeal of Shannon Lewandowski MPD Personnel Order 2015-150

---

## DECISION AND ORDER DENYING APPELLANT'S MOTION TO SUPPRESS

---

Lewandowski has filed a motion to suppress any statement she made prior to April 9, 2015, the date on which she was served with a PI-21. She claims that statements made by her before that date were the products of unlawful interrogations under Wis. Stat. sec. 164.02(1), and should be excluded under Wis. Stat. sec. 164.02(2).

Wis. Stat. sec. 164.02, entitled "Interrogation" states:

**(1)** If a law enforcement officer is under investigation and is subjected to interrogation for any reason which could lead to disciplinary action, demotion, dismissal or criminal charges, the interrogation shall comply with the following requirements:

    (a) The law enforcement officer under investigation shall be informed of the nature of the investigation prior to any interrogation.

    (b) At the request of any law enforcement officer under interrogation, he or she may be represented by a representative of his or her choice who, at the discretion of the officer, may be present at all times during the interrogation.

**(2)** Evidence obtained during the course of any interrogation not conducted in accordance with sub. (1) may not be utilized in any subsequent disciplinary proceeding against the law enforcement officer.

The dispute between the parties is over the nature of the conversation between Lewandowski and Police Lieutenant Sean Hanley on the morning of January 19, 2015. Lewandowski maintains that the conversation was an investigatory interview subject to the

provisions of Wis. Stat. sec. 164.02, whereas Hanley maintains the purpose of the conversation was to complete the squad accident Incident Report (Ex. 2).

On January 19, 2015, at 2:17 A.M., Lewandowski, while driving a squad car, was involved in an on-duty squad accident that resulted in serious injuries to her and others. Prior to the accident, her partner, who was the squad passenger, had been assigned to recover a firearm that had been used in a shooting incident. Although Lewandowski had volunteered to assist in the firearm recovery assignment, at the time of the accident she was not going to the location of the firearm. She was going to District Five Station to assist an officer with a personal issue.

Hanley was assigned to investigate the accident and file an Incident Report. Lewandowski, aware that Hanley wanted to speak to her, called him at 6:38 A.M. to tell him how the accident had occurred. She told him that shortly before the accident, her son had called and told her that he had been stopped by the University of Wisconsin (UWM) Police Department. She then commenced driving to UWM to find her son. She told Hanley she turned on the emergency lights to make cars get out of her way and not to operate as an emergency vehicle.

Hanley noted in the Incident Report that he assigned two detectives to the scene to interview witnesses because of the serious injuries involved and "due to the possibility of violations of Rules and Regulations and SOP." (Ex. 2, p. 6) Three days later, on January 22, 2015, the report was reviewed by Captain Johnny Sgrignuoli who added a note to the Incident Report stating his concern that Lewandowski and her partner were not responding to the shooting follow-up to which they had been assigned, but were operating the squad with emergency lights on to respond to a personal matter, and that Lewandowski was exceeding the speed limit to either visit a police officer friend at District Five or her son who had been stopped by UWM police. He

recommended further investigation and on January 29, 2015, the matter was assigned to the Internal Affairs Division for a District Level investigation. (Ex. 2, p.4) A PI-21 was served on her on April 9, 2015.

When Lewandowski called Hanley, he was conducting an accident investigation and not an investigation that was directed at disciplining Lewandowski. Although he notes in the Incident Report that he had assigned two detectives to interview witnesses because of the serious nature of the injuries and the "possibility" that department rule violations may have occurred, his report narrative makes no reference to any rule violations. It merely states the facts he had gathered. (Ex. 2, pp. 5-6) There is no mention of any specific conduct that might have violated department rules until January 22, 2015, when Capt. Sgrignuoli reviewed the report and noted his concern that Lewandowski was not responding as assigned, but attending to personal business, had misused the squad's emergency lights, and was speeding. He then referred the matter to Internal Affairs to investigate further her conduct. (Ex. 2, p. 4). Lewandowski states in her initial brief at page 3 that she was not informed by Hanley that she was the subject of an Internal Affairs investigation. As here noted, however, no Internal Affairs investigation had been commenced until a later date, and Hanley neither initiated the Internal Affairs investigation nor did he ever put to her a question as part of that investigation. (Ex. 2, p.4; Hanley Affidavit)

Lewandowski argues that the term "interrogation," as used in Wis. Stat. 164.02(1), should be defined so broadly as to include the Lewandowski conversation, and cites *NLRB v. Weingarten, Inc.*, 420 U.S. 251 (1975), and *Rhode Island v. Innis,* 64 U.S. 291 (1980), to support her argument. Neither case, however, supports Lewandowski's argument.

*Weingarten* held that an employer's refusal to grant an employee's request that a union representative be present at an investigatory interview which the employee reasonably believed

might result in discipline constituted an unfair labor practice under chapter 7 of the National Labor Relations Act. The Chief's counsel correctly points out that neither *Weingarten* nor the NLRA are applicable to this case because the NLRA does not apply to a State or a political subdivision of a state. 29 U.S.C. sec. 152(3).

Lewandowski argues the Legislature in adopting Wis. Stat. sec 164.02, codified *Weingarten*. The difference between Wis. Stat. 164.02, and the holding in *Weingarten* do not support the argument that the Legislature intended to adopt all of *Weingarten*. Wis. Stat. 164.02, applies to officers "under investigation" *and* "subject to interrogation . . .which could lead to discipline." Whereas, *Weingarten* applies to an investigatory interview in which the employee reasonably believes might result in discipline. No Wisconsin court has held that the Legislature intended to adopt all of *Weingarten* and at least one other court has declined to interpret a state police officers' bill of right as a wholesale adoption of *Weingarten*. *Town of North Kingstown v. Local 473*, 819 A.2d 1274 (R.I., 2003).

*Rhode Island v. Innis*, 64 U.S. 291 (1980) is a criminal case that did not define the term "interrogation" in general. It held, rather, that an "interrogation" under *Miranda* refers "to any word or actions on the part of police. . . that the police should know are reasonably likely to elicit an incriminating response for the suspect." That broad definition, however, applies only in the context of an arrest. Moreover, *Innis* addressed words or actions that elicit incriminating responses from suspects as opposed to words or actions that elicit admissions of work rule violations

The *Miranda* safeguards come into play whenever a person *in custody* is subject to either express questioning or its equivalent. 100 U.S. at 300-301. The act of taking a person into custody creates a bright line for police that alerts them when *Miranda* rights attach. The

relationship between police supervisors and officers is remarkably different from the relationship between a suspect and an arresting officer. A supervisor is charged with managing, administering, and evaluating the work of officers. Discussions, conversations, questioning, report writing, and reporting to their superiors about the work of the officers under them are part and parcel of their daily activities. To suggest that the rules governing the questioning of a suspect in police custody should apply to the routine interactions among officers and their supervisors would not only undermine, but would practically destroy the ability of supervisors to perform their duties. If anything, the need for a bright line drawn in *Miranda* supports the interpretation that Wis. Stat. 164.02, only applies after a PI-21 has been served on the officer. That interpretation would create the same bright line in the context of police discipline as custody creates in the criminal context.

Finally, we note that *Innis* held that even in the criminal context, "police officers cannot be held accountable for the unforeseen results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." 446 U.S. at 302, emphasis in the original. Any discussion between a police supervisor and a police officer raises the possibility that a rule violation might be uncovered. That possibility is not sufficient to invoke the provisions of Wis. Stat. sec 164.02.

When Lewandowski called Hanley, he was conducting an accident investigation and not an investigation that was directed at disciplining Lewandowski. No Internal Affairs investigation had been commenced. Hanley was conducting an accident investigation and was not asking questions to elicit an admission of a rule violation. In this context, the possibility that an answer

5

might uncover a rule violation is not sufficient to invoke the provisions of Wis. Stat. sec. 164.02.

Lewandowski's motion to suppress is therefore denied.


Signed and dated at Milwaukee, Wisconsin this 19th day of May, 2016

*Rudolph M. Konrad*

Rudolph M. Konrad, Hearing Examiner
On Behalf of the Board
Milwaukee Fire and Police Commission

6