# MILWAUKEE POLICE DEPARTMENT
## MEMORANDUM

DATE: MARCH 24, 2015

TO: MICHAEL BRUNSON
DEPUTY INSPECTOR OF POLICE

FR: THOMAS HINES
POLICE SERGEANT

RE: POLICE DETECTIVE SHANNON LEWANDOWSKI, PS #012860
IAS FILE #2015-0026

On January 27, 2015, Captain of Police Timothy HEIER instructed members of the Internal Affairs Division to investigate an allegation of misconduct on the part of Police Detective Shannon LEWANDOWSKI.

## ALLEGATION

On January 23, 2015, Detective LEWANDOWSKI, while off-duty, was observed recording a juvenile court proceeding with her cell phone and was argumentative with court deputies when asked to stop.

## INVESTIGATION

I, Sergeant Thomas HINES, reviewed a department memorandum, dated January 23, 2015, written by Police Lieutenant Johnny SGRIGNUOLI, assigned to the Central Investigations Division. On Friday, January, 23, 2015, Lieutenant SGRIGNUOLI received a telephone call from Milwaukee County Circuit Court Judge David SWANSON alleging possible misconduct on the part of Detective LEWANDOWSKI. Judge SWANSON stated on January 23, 2015, during the hours of 2:30 P.M. and 4:30 P.M., he presided over a court hearing for Mr. Nathan KING, a juvenile who had been charged with committing an Armed Robbery in 2014. Mr. KING had also been shot during the course of another crime and was confined to a wheelchair. Due to circumstances pertaining to waiving Mr. KING'S case into adult court, this trial was open for public view. Judge SWANSON stated victims, citizen and police witnesses related to the case, prosecuting and defense attorneys' and court room deputy sheriffs were present. Additionally, Judge SWANSON had previously authorized an individual to video and audio record the proceedings as part of a documentary film. The person authorized to record the proceedings was seated in the gallery with a large "television style" camera. Seated closely behind that person was a female Judge SWANSON later learned was Detective LEWANDOWSKI. Next to her was a male individual he later learned was Detective LEWANDOWSKI'S adult son.



EXHIBIT 17

- - - - - - 1402

Detective LEWANDOWSKI had not been subpoenaed as a witness for this case in her personal or professional capacity. At approximately 3:00 or 4:00 P.M., while court was in session, Judge SWANSON was verbally alerted by one of his court room deputies who stated words to the effect, "Ma'am you can't record in here, you have to stop." Judge SWANSON then observed Detective LEWANDOWSKI holding her cell phone in a manner as if she was recording the proceedings. Detective LEWANDOWSKI argued with the deputy about ceasing her recording, causing Judge SWANSON to intervene. Judge SWANSON then asked Detective LEWANDOWSKI if she was recording the proceedings and she confirmed she was. Judge SWANSON then asked Detective LEWANDOWSKI to identify herself and what institution she represented. Detective LEWANDOWSKI replied, "Detective Shannon LEWANDOWSKI MPD." She then stated she was recording a backup to "him" while pointing at the individual who was filming the proceedings. Judge SWANSON questioned the individual with the camera to verify her statement. The subject replied that he did not know Detective LEWANDOWSKI. Judge SWANSON then ordered Detective LEWANDOWSKI to cease recording, delete any captured data from her phone, and to not distribute the data to anyone or she would be held in contempt. He then ordered her to leave the court room. Judge SWANSON stated Detective LEWANDOWSKI complied with his orders to leave; however, he was not certain if she actually deleted the recordings.

Judge SWANSON stated the deputies did not seize or inspect Detective LEWANDOWSKI'S phone and he did not hold her in contempt of court as a courtesy to a law enforcement officer. Judge SWANSON stated he was not aware of any laws which prohibited recording of court room events; however, recording without the court's permission violated court rules. Judge SWANSON apologized for not seizing the phone or holding Detective LEWANDOWSKI in contempt as an incident like this had never happened to him before, and the entire incident caught him by surprise. Judge SWANSON went on to describe Detective LEWANDOWSKI'S behavior as extremely unprofessional and contemptuous. Lieutenant SGRIGNUOLI asked Judge SWANSON if he was able to identify any of the persons present in the court room during the incident who may have witnessed the incident. He provided the following names: Milwaukee County Assistant District Attorney (ADA) Joy HAMMOND, Defense Attorney Anne BOWIE, (then) Milwaukee Police Officer (now) Detective Eric DRAEGER, who had been subpoenaed to appear, and Milwaukee County Deputy Sheriff Nicole ABDULLAH, who was accompanied by two additional unknown deputies.

On January 24, 2015, at approximately 6:40 P.M., Lieutenant SGRIGNUOLI and Captain Jason SMITH went to Detective LEWANDOWSKI'S residence to suspend her police powers. During their interaction, Lieutenant SGRIGNUOLI instructed Detective LEWANDOWSKI of her restrictions and obligations as outlined in the suspension report. He stated Detective LEWANDOWSKI acknowledged his instructions and affirmed she did own personal firearms. Detective LEWANDOWSKI then volunteered that the court room deputies had overreacted to this entire incident. She stated she had been invited to the hearing by one of the victims who she had befriended during the course of the investigation. She admitted to recording the proceedings with her cell phone and electronically distributing a portion of the recordings prior to receiving the order from Judge SWANSON. Judge SWANSON provided Lieutenant SGRIGNUOLI with the name of the documentary filmmaker present in his court, Mr. Brad LICHENSTEIN, tel.

#1-917-721-3131. According to Lieutenant SGRIGNUOLI, Judge SWANSON added that he was disturbed that Detective LEWANDOWSKI would have recorded the proceedings and it appeared to him that she realized what she was doing was prohibited as evidenced by her attempt to conceal her cell phone down by her knee while recording until discovered by the court room deputies.

I reviewed five pages of court transcripts prepared by Court Reporter Jeannette NOVAK on February 2, 2015. The document reveals all individuals in attendance for the hearing. It also detailed dialog between Detective LEWANDOWSKI, Judge SWANSON, Deputy ABDULLAH, Mr. LICHTENSTEIN, and other individuals inside the courtroom. This is not a complete summary of the event, but according the transcripts at some point during the hearing, Detective LEWANDOWSKI stated words to the effect, "Yeah, I'm cooperating, but this is unnecessary. You can stop all of this." Deputy ABDULLAH replied, "No, it's not unnecessary. You need to erase it." Detective LEWANDOWSKI later indicated that she deleted the recording and was asked to leave the courtroom.

I reviewed incident report (IR) number 14-172-0017 regarding a Recklessly Endangering Safety (RES) incident, in which Mr. Claudiare MOTLEY is listed as the victim and Mr. KING is listed as the suspect. The incident occurred on June 21, 2014, at 4033 N. 63rd Street. Mr. MOTLEY was shot in the face by Mr. KING as Mr. MOTLEY was operating a motor vehicle. Mr. MOTLEY then drove himself to the hospital for his injury. I also reviewed IR number 14-174-0033 regarding an RES incident, in which Mr. KING is listed as the victim and Ms. Victoria DAVISON is listed as the suspect. The incident occurred on June 23, 2014, at 4172 N. 14th Street. Ms. DAVISON, who is a Carry Concealed Weapon (CCW) permit holder, intentionally discharged her firearm and struck Mr. KING in the abdomen when he attempted to rob her of her vehicle.

I reviewed IR number 14-172-0017, supplemental report number 0017, written by Detective LEWANDOWSKI on June 28, 2014. On June 25, 2014, Detective LEWANDOWSKI interviewed Mr. KING at the Milwaukee County Children's Hospital regarding the RES at 4172 N. 14th Street. During the interview Mr. KING confessed to shooting Mr. MOTLEY.

On February 11, 2015, I interviewed Judge SWANSON. He stated that because of the charges and the waiver petition that was pending against Mr. KING, the hearing was not a typical juvenile hearing and was open to the general public. He stated on that particular day, he allowed individuals into the court room who were required to sign in so that a record could be kept of who was present. Detective LEWANDOWSKI was there with her son and "there really wasn't any issue at least for the first part of the hearing." He stated they were not able to finish the waiver hearing, but they were able to start it. He stated, "I think we were about an hour into the hearing when my deputy got up and walked over to Ms. LEWANDOWSKI and said something and I couldn't hear what they were saying. But, you know, there's testimony going on at the time, but then I could tell Ms. LEWANDOWSKI, you know, kind of started to argue with my deputy and at that point, it became a distraction, so I tried to stop the testimony and my attention was on my bailiff and Ms. LEWANDOWSKI. I asked what was going on and the bailiff turned to me and said, she's recording and won't stop…Ms. LEWANDOWSKI said something like well, I'll stop, but, she's demanding my phone and then my bailiff said,

well, I told her to leave and she's not leaving. I think at that point I told Ms. LEWANDOWSKI to delete any recording she may have, you know. I told her recording wasn't allowed and at that point she said something like, well, I was doing it as a backup for him, pointing to the documentary film maker, and the documentary film maker just sort of, you know, looked at me and immediately said I had nothing to do with this. He said he didn't ask her to record anything; I don't know what she's talking about. I believe, you know, at that point then I reminded everyone that no one other than Mr. LICHTENSTEIN was permitted to record anything in court and I asked my bailiff to step out of the court room with Ms. LEWANDOWSKI to make sure that she deleted any recordings she made."

Judge SWANSON stated he did not confiscate Detective LEWANDOWSKI'S phone because she was a police member and he did not think it was necessary. He stated that even if Detective LEWANDOWSKI was not a police member he would not have held her in contempt, but he probably would have asked for her phone. Judge SWANSON stated he did not make an announcement prior to the hearing that cell phone recording or usage was not permitted and he wished had. He stated that Mr. KING'S mother and stepfather were very upset. He stated he did not notice what Detective LEWANDOWSKI was doing because she was holding her phone down by her knee "you know, basically trying to conceal the fact that she was recording." Judge SWANSON had a conversation with both the district attorney and with the defense attorney immediately after the hearing to discuss what had occurred. He stated it was a "complete shock" to the entire court room. Judge SWANSON stated he believed there is a standing Milwaukee County Circuit Court rule that all cell phones must be turned off inside of the court room.

I reviewed a copy of First Judicial District Milwaukee County Court Rules pertaining to (B) electronic devices (2) (3), which states, "Absent specific authorization from or Court Commissioner presiding in that courtroom, all electronic devices shall be turned off when in a courtroom or a commissioner's hearing room. Each Judge and Court Commissioner may make exceptions to these rules as they think appropriate. Electronic devices include, but are not limited to, cellular and mobile phones, pagers, iPads, tablets, lap top computers, and any other electronic devices.

On February 3, 2015, I interviewed Mr. LICHTENSTEIN. He provided me with audio data from his documentary that depicted this incident. He chose not to provide me with video of this incident. He stated it would be useless because he never turned his camera in the direction of Detective LEWANDOWSKI. Mr. LICHTENSTEIN confirmed the statement he made in Lieutenant SGRIGNUOLI'S memorandum. He stated he was sitting in front of Detective LEWANDOWSKI and did not witness her recording the event with her cell phone. He also stated he did not arrange for Detective LEWANDOWSKI to record the event as a backup for him. I reviewed the audio data, which revealed three minutes and twelve seconds of dialog between Judge SWANSON, Detective LEWANDOWSKI, court room deputies and other unknown individuals inside the court room. The audio captured by Mr. LICHTENSTEIN is consistent with the courtroom transcripts discussed previously.

------1405

On March 13, 2015, I interviewed Deputy ABDULLAH. She stated on the day of this incident she initially requested everyone to exit the courtroom gallery and go out to the lobby. She stated she received information from Judge SWANSON that the hearing was open to the public, so she allowed individuals to come back into the courtroom. She stated she knew Detective LEWANDOWSKI was a police member because when came into the courtroom she had a discussion with another police officer or detective who had been subpoenaed for the hearing. She stated that other deputies in the courtroom also knew she was a detective. Deputy ABDULAH stated about half way through the hearing, another deputy observed Detective LEWANDOWSKI using her cell phone to record the proceedings. She stated one of the victims was giving testimony at the time. She stated a deputy approached Detective LEWANDOWSKI and told her she needed to stop recording. Deputy ABDULAH stated she did not observe Detective LEWANDOWSKI recording the proceedings. She stated the deputy came back and told her what Detective LEWANDOWSKI had done, but the deputy did not instruct her to delete the recording.

Deputy ABDULLAH stated she then approached Detective LEWANDOWSKI regarding the recording. She stated she asked Detective LEWANDOWSKI if she was recording and she denied it. She stated when she asked to see her phone, Detective LEWANDOWSKI began to argue with her and stated words to the effect, "You deputies shouldn't be coming over here telling me what to do. You're not getting my phone and is all of this necessary." Deputy ABDULLAH stated Detective LEWANDOWSKI had a nasty attitude. She stated she told Detective LEWANDOWSKI that it was necessary and that she should know better than that. She stated when she looked down at Detective LEWANDOWSKI'S cell phone screen she saw what she believed to be three or four videos, not audio. She described the recordings as still photos of the witness that had white small arrows in the center of each. Deputy ABDULLAH stated when she first asked Detective LEWANDOWSKI to leave the courtroom she refused. She stated it was not until Judge SWANSON ordered her go out into the hallway and another deputy approached that she decided to leave the courtroom, Deputy ABDULLAH stated when they got outside the courtroom, she asked Detective LEWANDOWSKI to delete the recordings from her cell phone and she complied. She stated she witnessed Detective LEWANDOWSKI deleted the recordings, but she was uncertain if they were all deleted.

On March 18, 2015, I conducted a telephone interview with ADA HAMMOND. She stated on the day of the proceedings for Mr. KING, Detective LEWANDOWSKI had appeared off-duty with her son and a friend. ADA HAMMOND stated at some point during the hearing, the courtroom deputies approached Detective LEWANDOWSKI about recording the proceedings with her cell phone. ADA HAMMOND stated she did not hear the dialog between the two deputies and Detective LEWANDOWSKI, but it appeared as though the deputies were being confrontational as they stood over her. ADA HAMMOND stated she did not know if Detective LEWANDOWSKI was ever uncooperative during her interaction with the deputies. She stated she did not see Detective LEWANDOWSKI recording the hearing and she was later informed that the recording had been deleted. ADA HAMMOND stated because this juvenile court hearing was open to the public, Detective LEWANDOWSKI'S actions were not in violation of State law, not even if she forwarded the data to another party, and did not compromise the State's position.

------1406

IAS-2015-0026
Summary Report
Page 5 of 10

On March 23, 2015, I interviewed Detective DRAEGER who stated he did not witness Detective LEWANDOWSKI recording the court proceedings with her cell phone. He stated he was subpoenaed for the hearing, but he did not believe that Detective LEWANDOWSKI was. Detective DRAEGER stated Detective LEWANDOWSKI was approached by courtroom deputies regarding the situation and later instructed to exit the courtroom. Detective DRAEGER stated he did not hear the dialog between Detective LEWANDOWSKI and the deputies inside the courtroom, but when they entered the vestibule area, the deputies were "pretty loud."

During a PI-21 interview on March 6, 2015, Detective LEWANDOWSKI stated on January 23, 2015, Judge SWANSON proceeded over a court hearing for Mr. KING who had been charged with multiple armed robberies and a Recklessly Endangering Safety (RES), with Mr. MOTLEY as the victim. Detective LEWANDOWSKI stated she interviewed Mr. KING at Children's Hospital after he got shot while committing a robbery. During the interview, Mr. KING confessed to shooting Mr. MOTLEY in the face. Detective LEWANDOWSKI believed the RES incident occurred in the summer of 2014. Mr. MOTLEY came home for his Milwaukee Tech High School class reunion. Mr. MOTLEY dropped off a classmate after the reunion and was subsequently boxed in by two vehicles. Mr. KING tapped on the driver side window of Mr. MOTLEY'S vehicle. Assuming that this was a robbery attempt, Mr. MOTLEY sped off, and in the process, was shot in the face. Mr. MOTLEY drove himself to the St. Joseph's Hospital.

Detective LEWANDOWSKI stated she had nothing to do with the shooting investigation. She discovered later that Ms. DAVIS was leaving her residence to go to gym when Mr. KING and his accomplices attempted to rob her. Ms. DAVIS, who is a CCW permit holder, was carrying a gun at the time of the incident. She went out to her car when she was approached by Mr. KING and his "crew." They surrounded her and threatened her with a gun. Ms. DAVIS subsequently shot Mr. KING in the chest. Detective LEWANDOWSKI stated she got involved because she volunteered to go to the hospital and interview Mr. KING regarding the robbery attempt on Ms. DAVIS. When she arrived, Mr. KING had just gotten back from surgery. She began interviewing him and asked him if he had been involved in any robberies where someone had been shot. Detective LEWANDOWSKI stated, "I said to him, without any knowledge of any of these cases, what about that robbery that you did over by your house because I know from my experience that's usually where you start? I said what about when you shot that guy, when you did that robbery, and he was like, oh, no, no, not shot that guy {sic}; oh, I didn't rob him, he took off. He smashed off, he hit a car and I just shot through the window." Detective LEWANDOWSKI stated she did some follow up and located the RES report involving Mr. MOTLEY.

Detective LEWANDOWSKI stated she went back and interviewed Mr. KING again, and that was when she and his stepfather got into an argument. The stepfather told her she could no longer talk to Mr. KING because he was getting a lawyer. Detective LEWANDOWSKI stated she stopped the interview. She subsequently put together a Facebook photo array, which included Mr. KING as a suspect, and showed it to Mr. MOTLEY. Detective LEWANDOWSKI met Mr. MOTLEY and his wife, Ms. Kimberly MOTLEY on Lake Shore Dr. where they were staying with family while Mr. MOTLEY

had multiple surgeries on his jaw. When Detective LEWANDOWSKI arrived at the residence, there was a film crew there. She showed Mr. MOTLEY the photo array and he positively identified Mr. KING as the person who shot him. Detective LEWANDOWSKI stated she was also able implicate Mr. KING to over 20 other robberies. She stated the assignment was taken from her and given to Detectives Vanessa HARMS and Anne PORTNOY. Detective LEWANDOWSKI stated she continued to check on Mr. MOTLEY because he no longer lived in Milwaukee, and had moved to North Carolina prior to the shooting incident.

Detective LEWANDOWSKI stated Mr. and Mrs. MOTLEY kept calling her regarding the status of the investigation. Detective LEWANDOWSKI stated she kept in contact with them to assure them that the Milwaukee Police Department was doing everything possible, especially after Ms. MOTLEY had written an article in the newspaper to Mayor BARRETT, in which she indicated that no one was doing anything about the case. Detective LEWANDOWSKI stated she maintained a friendship with Mr. and Mrs. MOTLEY because they lived out of town and she did not want them to think that no one from the department cared.

Regarding the proceedings on January 23, 2015, Detective LEWANDOWSKI stated she was involved in an on-duty accident on January 19, 2015. She explained to Mr. MOTLEY that she was unable to drive due to an accident, in which she sustained a concussion that left her with memory loss. She told Mr. MOTLEY that she could not testify at the time and he stated, "Oh, no, this is just a public hearing." Detective LEWANDOWSKI stated Mr. MOTLEY invited her to the hearing and she went. She stated she was driven to the hearing by her girlfriend, who is a law student. Detective LEWANDOWSKI'S son (Mr. Jordan LEWANDOWSKI) also accompanied them.

Detective LEWANDOWSKI stated when they first arrived, they waited in the lobby where she observed Mr. KING seated in a wheelchair. Detective LEWANDOWSKI stated, "I said to Claudiare and the movie camera man and a bunch of people standing around me that I'm concerned why he's in the wheelchair because he can walk." Detective LEWANDOWSKI stated Mr. KING'S stepfather heard what she said and started yelling to her, "He's a paraplegic, he can't walk." She stated the stepfather recognized her and was upset because she was there. Detective LEWANDOWSKI stated when they entered the courtroom, she noticed Mr. LICHTENSTEIN holding a camera inside the courtroom and Mr. MOTLEY was sitting at a table. Detective LEWANDOWSKI stated she observed Mr. KING'S stepfather taking pictures of her inside the courtroom with his cell phone prior to the hearing.

Detective LEWANDOWSKI observed two courtroom deputies talking to Mr. KING'S stepfather and one deputy was sitting at a desk. Detective LEWANDOWSKI stated at some point one of the deputies ordered everyone to leave the court room. Detective LEWANDOWSKI stated she informed the deputy that "no, this is a public hearing and everyone can stay," and the deputy stated, "I said you have to leave." Detective LEWANDOWSKI informed the deputy that this was a public hearing and they should get confirmation from the Court Commissioner before clearing the court room. Detective LEWANDOWSKI stated Mr. KING had already been convicted and the hearing was an opportunity for the victims to discuss punitive damages caused by Mr. KING'S actions.

------1408

Detective LEWANDOWSKI stated the deputy got upset and "stormed" to the back of the court room with Judge SWANSON. When they came back into the court room, Judge SWANSON explained that it was a public hearing so they could stay. Detective LEWANDOWSKI stated the deputies knew she was a detective prior to the hearing.

Detective LEWANDOWSKI stated that Mrs. MOTLEY works here in the United States and in Afghanistan. She stated she knows Mrs. MOTLEY well, not only through the RES investigation, but also regarding Detective LEWANDOWSKI'S desire to travel to Afghanistan during one of her vacations to volunteer her time. Detective LEWANDOWSKI stated that during the court proceeding, Judge SWANSON had Mrs. MOTLEY on a telephonic speaker that was not working properly and Mrs. MOTLEY could barely hear the proceedings. Detective LEWANDOWSKI admitted to using her cell phone to record audio of Mr. MOTLEY'S testimony inside the court room. She stated, "I hit record, and it's a verbal recording...I'm just recording and the stepdad is alerting the bailiff, that I'm recording it... I hit record and it's very costly to send anything to Afghanistan, so I was just trying to just get what he was saying about what he wants done with Nathan." Detective LEWANDOWSKI stated she recorded only one or two verbal conversations before she was approached by a bailiff and asked to stop recording. She stated she did not record any video. She stated the bailiffs accused her of recording video, called her a "liar" and attempted to take her phone from her, but she refused to give it to them. Detective LEWANDOWSKI stated she was very cooperative, she deleted all of the recorded audio conversations and offered to show her cell phone to Judge SWANSON.

Detective LEWANDOSKI stated she had no other reason for recording the court proceedings other than to forward it to Mrs. MOTLEY who could not be present at the hearing. She stated, "...I wasn't filming it. I was just taking that part of his testimony to send it, you know... And then I cooperated right away and I told him, I'm like, you know, Judge, I erased it and then she was yelling at me and I literally gently responded that I just didn't want to cause any more, you know, disturbance, so I just like hobbled out with my son. My son helped me out and the one or two sheriffs followed me out and I had my phone out and I showed her and then she was like, you're a police officer, you should know better. And I'm like, it's a public hearing, you know, and she kept going on and on." Detective LEWANDOWSKI stated she wanted to apologize to Judge SWANSON prior to leaving the courtroom, but the deputies locked the courtroom door.

Detective LEWANDOWSKI stated she was surprised that Judge SWANSON called and made a complaint. She stated she discovered he had done so when Lieutenant SGRIGNUOLI and Captain SMITH came to her residence to suspend her police powers. She stated they expressed to her that her conduct was unprofessional, she caused the victims to be stressed, and that Judge SWANSON was angered by the situation. Detective LEWANDOWSKI stated, "that's kind of funny because after the hearing, the victims came over to my house and I fed them dinner, we had drinks and they stayed for 2 hours and talked with my son and my family, and the other victim, Ms. DAVIS, told me that she was so traumatized by this incident that she had sold her house and moved to Whitefish Bay, so she no longer lives there and that's kind of what we were talking about."

------ 1409

Detective LEWANDOWSKI stated she was not acting on the behalf of the police department. She was off duty and carried as Injured on Duty (IOD) on the day of the hearing. She stated she was just there as support. She stated she never recorded court proceedings prior to this incident. Detective LEWANDOWSKI stated that the other reason she recorded the proceedings was because Mr. KING'S stepfather used his cell phone inside the court room and Mr. LINCHENSTEIN was filming a documentary, and when the bailiffs did nothing about it, she decided to record the proceedings with her cell phone. I showed Detective LEWANDOWSKI a photo of a sign posted outside of branch eleven that reads: "Before entering the court: Remove all hats & Turn off all cell phones Thank You!" Detective LEWANDOWSKI stated she did not see the sign prior to entering the court room; however, she is aware that cell phones must be turned off inside of a court room. She stated, "I didn't notice it. I mean I know that through court proceedings you don't record, but there was authorization for the documentary and it was a public hearing, it was different in my mind that I wasn't doing anything wrong…It wasn't a court proceeding in that way. You'll never see me in court with my phone. Well, you'll see me with a phone, but I won't ever have it on or recording or playing on it. I've never done that. Again, it was three or four days after my accident and I'm not saying I did it because I had a concussion. I'm just saying that I don't remember everything as far as seeing that sign on there or, I already know that, but it was a different type of a hearing."

When I asked her if the concussion or memory loss she sustained as a result of the accident affected her decision making on the day of the hearing, she stated she would never do anything to make herself or the department look bad. She indicated that she conducted herself the best she could. She stated, "I wanted to apologize right away to the Judge because I wouldn't want that reputation. My reputation is everything to me. My reputation in the courts and in the DA'S office is perfect and so I would never want that…I just keep going over it in my head, like what was my train of thought, because it was a public hearing. It was being recorded already by a camera crew that I would say, you know, here's what you have to say and then send it to his wife who couldn't be there for him because that's why he asked me to be there. He needed that, you know, that friendship; his family's not there, his wife's not there, the children are not there. My child was there. My friend is there and I'm there supporting him."

Detective LEWANDOWSKI stated she never heard a deputy give pre-instructions to the court room to turn off all cell phones. She also stated she never saw a documentary being filmed inside a court room in all her years of service. Detective LEWANDOWSKI acknowledged identifying herself to Judge SWANSON as a Milwaukee police detective. She stated she was wearing blue jeans, a jacket, and tennis shoes. She stated she did not try to conceal the fact that she was recording and she did not have pre-authorization to record the event. When I asked Detective LEWANDOWSKI why she told Judge SWANSON that she was recording the proceedings because it was a backup for Mr. LICHTENSTEIN, she stated, "I wasn't doing backup for his documentary, okay. That's just what I said, just to get out and not cause further disturbance because I'm up against the wall like literally up against the wall and the deputy, she's yelling at me, yelling, and so is Nathan's stepdad. He's like, see, see, you just go ahead, getting louder and louder. I'm getting incredibly stressed at that point. I don't want this disturbance…so I just said whatever, so I could get out of there. I did record it because I told Kim also that

I would be calling her when we got back to the house and tell her. I can't remember, especially at that time, I'm like, I'm in therapy for my memory because I knew I could not tell her what had transpired during that day."

Detective LEWANDOWSKI stated when she left the court room she showed the deputy her cell phone to prove that she deleted the audio data. She stated she never argued with the deputies, but they yelled at her. Detective LEWANDOWSKI stated, "I didn't do anything to make the department look bad, much less myself...It was like, two of them were like, one was like 30 seconds and the other one was like another minute or something. It wasn't even long because you can't send things that are long anyway. I was just trying to get the "meat" out of his statement saying how he felt." When I asked Detective LEWANDOWSKI if she believed she violated department policy in any way on the day of the court hearing, she stated, "Actually, I do not. I think that when the commissioner asked me if I recorded, I said, yes, and he asked me to erase it. I said, yes. And I sat back down and it was over with. But the Sheriff, the two girls were already mad because, I don't know if they took it personal that I corrected them that it was a public hearing or if they were listening in on behalf of the stepdad who was already very vocal with me. It's never been my history in my 16 years I've never had any of this. I'm the one who usually diffuses situations in court...I think if you're able to play that CD, you'll hear them, you're not going to hear me. I wasn't loud at all. I was compliant, but I didn't call myself out as a Detective. They called me out as a Police Officer way before and I was well aware that the commissioner knew that I was a Police Officer. There's nowhere that I go where commissioners and Judges don't know that I am the Police."

When asked, if she would ever use her cell phone to record court hearings again, she stated, "No, I would not, unless I had a need to and had permission from a Judge or something, but I can never see ever needing to. And the only reason I did this like I said was there's a movie camera in there..." When I asked her if she had anything to add to her statement, she stated, "While I was not representing the Milwaukee Police Department, I was very conscious of my position as a Detective, my position as a law enforcement officer regardless of where I was. I always remain professional and conduct myself as such and to be clear that the deputies raised the tension in that courtroom to that level, not I. I was compliant to do exactly what I was told and I never raised my voice... And I've only been positively involved in this case. I was up there not as a police officer regardless if they knew I was or not, but I still maintained professionalism. In fact, the victims support me that they wrote a letter to the Mayor regarding and I just want to include that in this."

I reviewed a letter authored by Mrs. MOTLEY, dated March 5, 2015, regarding award recommendation for Detective LEWANDOWSKI.

Respectfully submitted,

Thomas HINES
Police Sergeant
Internal Affairs Division

------1411