Form PM-9E
11/09

# MILWAUKEE POLICE DEPARTMENT
## MEMORANDUM



Date: **September 9, 2015**

TO: **Michael BRUNSON**
**Deputy Inspector of Police**

FR: **Adam ZIEGER**
**Police Sergeant**

RE: **Police Detective Shannon LEWANDOWSKI, Peoplesoft # 012860**
**FILE # IAS-2015-0032**

On January 29, 2015, Captain of Police Timothy HEIER instructed members of the Internal Affairs Division to initiate an investigation into an allegation of misconduct on the part of Police Detective Shannon LEWANDOWSKI.

## ALLEGATION

On January 19, 2015, at approximately 2:17 a.m., Detective LEWANDOWSKI operated a Department vehicle with emergency lights activated and collided with another vehicle near 3500 West North Avenue. Detective LEWANDOWSKI was not responding to official Department business at the time of the accident.

## INVESTIGATION

I, Police Sergeant Adam ZIEGER reviewed the Central Investigations daily lineup for January 18, 2015. The lineup reflected Detective LEWANDOWSKI was assigned as Squad 9291, and Detective Juanita CARR was assigned as Squad 9288.

A review of Squad 9291's unit history for both January 18, 2015, and January 19, 2015, revealed the operator was Detective LEWANDOWSKI, and there were no Computer Aided Dispatch (CAD) entries listed.

Squad 9288's unit history for both January 18, 2015, and January 19, 2015, revealed the operator was Detective CARR, and there were no CAD entries listed.

I reviewed the January 18, 2015, daily lineup for District Five Power Shift, which reflected Police Officer Melanie BEASLEY and Police Officer Andrew GROSS were assigned as Squad 5428.

A review of Squad 5428's unit history beginning January 18, 2015, revealed Officer BEASLEY and Officer GROSS were recorded as at the location of 4257 North Teutonia Avenue at 1:18 a.m. on January 19, 2015, CAD number 150190097. Squad 5428 was recorded as clear from the assignment at 2:21 a.m.

- - - - - - 1 5 8 9

Summary Report
15-0032
Page 1 of 22



EXHIBIT
23

I reviewed CAD number 150190259, created January 19, 2015, at 2:17 a.m. for a personal injury accident at North 35th Street and West North Avenue. Squad 3330 (Police Officer Sean AINES and Police Officer Scott WIETING), Squad 3341 (Police Officer Jesse VOLLRATH and Police Officer Alexander NUTER), and Squad 3410 (Police Sergeant Wade GRUBICH) were dispatched to the accident. The CAD recorded Squad 3430 (Police Officer Joseph GOGGINS and Police Officer Michael DESTEFANIS), Squad 3482 (Police Officer Debora STACEY and Police Officer William KRUMNOW), Squad 766 (Police Officer Joseph BOEHLKE and Police Officer Steven KUSPA), and Squad 3210 (Police Sergeant Adam RILEY) responded. There were several other squads documented as having responded. Incident report number 150190017 was added to the assignment.

The first call listed in the CAD was recorded as from telephone number 911/559-1577. I reviewed a recording of the conversation between the telecommunicator and the caller. The caller, who identified himself as Christopher THURMAN, indicated he was not at the location, but looking out a window. Mr. THURMAN stated he did not witness the accident. On April 29, 2015, I attempted to call 559-1577, and later spoke to a subject who identified herself as Shannon SCHULTE. Ms. SCHULTE stated she did not call the police that evening and was not in Milwaukee County.

The second call was from telephone number (414) 722-4618. I reviewed a recording between the telecommunicator and the caller. The caller stated a police officer just hit a car on North 35th Street and West North Avenue. The caller noted the subjects involved were injured and one was unconscious. During a callback from the telecommunicator, the caller identified himself as "Malik," and stated he did not witness the accident.

I interviewed a subject who identified himself as Malik L. TOWNSEND (07/02/1983) via telephone. Mr. TOWNSEND stated he had been outside with a friend who owns the barber shop in the 3400 block of West North Avenue, and heard the accident. Mr. TOWNSEND described he did not see the accident, but assisted the injured detectives. Mr. TOWNSEND did not hear any sirens before the accident, and stated he would have heard them. Mr. TOWNSEND stated the detectives were distraught and did not state where they were responding. Mr. TOWNSEND identified his friend as Bihia KADIMA and provided a contact telephone number of (414) 426-6563.

The third call listed in the CAD was from (414) 405-4617, which was Detective LEWANDOWSKI. I reviewed recordings of two conversations between Detective LEWANDOWSKI and the telecommunicator. Detective LEWANDOWSKI identified herself as a detective, requested an ambulance to the location, but did not provide her name. During a callback by the telecommunicator, Detective LEWANDOWSKI stated she was in an accident with her partner and again requested an ambulance.

The fourth call listed in the CAD was from telephone number (414) 759-8229. The recording identified the caller as Darryl OWENS. Mr. OWENS indicated he thought someone was deceased, and a police officer's vehicle had been hit at North 35th Street and West North Avenue. During the call, Mr. OWENS indicated he did not know what happened; he heard a loud crash and was looking out his window.

**1590**

The fifth call listed in the CAD was from (414) 628-4354 with name "Ivette." I reviewed a recording between a telecommunicator and a subject who identified herself as "Ivette." During this call, "Ivette" stated she did not witness the accident.

I called (414) 628-4354, and the subject who answered identified herself as Evette SPENCER. Ms. SPENCER stated Evette was her middle name and would not provide her first name. Ms. SPENCER was unwilling to provide any more personal information, or fully cooperate. Ms. SPENCER reported her two children, fourteen and twenty years old, were also inside of her vehicle. Ms. SPENCER described the accident happened while she was driving a vehicle and approaching the area. Ms. SPENCER stated, "We couldn't see it...all we saw was two cars hit." Ms. SPENCER stated, "The car that was going through the red light was the officer." Ms. SPENCER was not sure if the siren was activated. Ms. SPENCER stated she observed one person, a female, from the non-police squad, and identified that subject as the driver. Ms. SPENCER then stated she did not want to provide a statement.

The CAD documented Squad 3482, Officer STACEY and Officer KRUMNOW responded to the accident at 2:20 a.m. At 2:30 a.m., Squad 3482 changed locations to 3611 North Maryland Avenue. Message number 011501190830022373 was entered stating, "Show us enroute to 3611 N Maryland AVE regarding." Unit 3482 sent the message and "Debora STACEY" was the listed operator.

CAD number 150190264 was linked to the assignment. The CAD was created at 2:17 a.m. for a personal injury accident at North 35th Street and West North Avenue. The CAD included, "Per pole cam, unable to see accident, 35th / Garfield cam is not operational." The caller was identified as a male with phone number (414) 426-6562. I reviewed a recording between the telecommunicator and the caller. The caller stated there were two officers involved in an accident, and an ambulance was needed at North 35th Street and West North Avenue.

The telephone number (414) 426-6563 for Mr. KADIMA, provided by Mr. TOWNSEND, was the incorrect number. Through department records, I was able to identify Mr. KADIMA as Biaya P. KADIMA (B/M, 02/25/1977) with phone number (414) 426-6562. I conducted a phone interview with Mr. KADIMA who indicated he did not witness the accident occur. Mr. KADIMA exited from 3421 West North Avenue and went outside after he heard the accident. Mr. KADIMA did not assist the injured detectives, or hear any discussion about what happened. Mr. KADIMA described the female driver of the other vehicle, which was not the squad, was intoxicated. Mr. KADIMA described the female was asking strange questions like, "Was I driving?" Mr. KADIMA stated the female was "hanging" outside of the driver's window of the vehicle.

I reviewed Records Management System (RMS) report number 150190017. The original report was recorded as filed by Officer AINES. However, the supplement portion of the original report indicated it was written by Officer WIETING. A single subject was arrested during the incident and identified in the report as Debrille D. JOHNSON (B/F, 07/07/1993).

Officer WIETING indicated, at about 2:18 a.m. he was dispatched to investigate a "crash" involving a Milwaukee Police Department squad. Upon arrival, Officer WIETING

- - - - - - 1 5 9 1

observed Ms. JOHNSON outside of the vehicle with, "a bump in the center of her forehead, which had a small laceration on it." Officer WIETING observed Ms. JOHNSON'S eyes were glassy and bloodshot, and was slurring her speech. Ms. JOHNSON admitted to Officer WIETING she had been drinking, and indicated she was the only person that was in the vehicle. Ms. JOHNSON was treated by the Milwaukee Fire Department (MFD) and transported to Froedtert Hospital.

Ms. JOHNSON was given intravenous fluids prior to an evidentiary blood sample being obtained at 3:54 a.m. Ms. JOHNSON denied being the driver of the vehicle. Officer WEITING described his observations of Ms. JOHNSON'S vehicle. The vehicle was a 2002 Mitsubishi Galant, and had crashed into a cement pillar of the business located on the northeast corner of North 35th Street and West North Avenue.

I reviewed supplement 0001 of RMS report number 150190017, filed by Detective Kenyatte WOODEN. Detective WOODEN was assigned by Police Lieutenant Sean HANLEY to assist in the investigation of a personal injury accident that occurred at 3500 West North Avenue, involving two on-duty police detectives. Detective WOODEN summarized an interview with Jasmin HERNANDEZ (H/F, 07/18/1989).

Ms. HERNANDEZ was a front seat passenger in a vehicle westbound on West North Avenue from North 34th Street, driven by a subject identified as Juan PEREZ. Ms. HERNANDEZ observed a squad with flashing red and blue lights traveling eastbound on West North Avenue approaching North 35th Street. Ms. HERNANDEZ stated she was listening to music, and thought that may be why she did not hear an audible siren. Ms. HERNANDEZ described the squad was traveling about 30 to 35 miles per hour as it approached the intersection and collided with the vehicle traveling north on North 35th Street at approximately 40 to 45 miles per hour. Ms. HERNANDEZ indicated the accident was caused by the white colored vehicle failing to stop for the red light.

Ms. HERNANDEZ approached the scene to assist a detective, described as a black female, while Mr. PEREZ assisted the detective who was the driver get out of the vehicle. Ms. HERNANDEZ observed the white female detective use a phone and stated something regarding that she needed to get her son from the UWM Police Department. Ms. HERNANDEZ observed Javier M. GARIVAY (H/M, 09/14/1971) who followed them also help the passenger from the squad.

Detective WOODEN also summarized an interview with Mr. GARIVAY. Mr. GARIVAY indicated he left the same party as Ms. HERNANDEZ and Mr. PEREZ a few minutes later. Mr. GARIVAY stated he arrived after the accident occurred and assisted the black female detective get out of the vehicle.

I reviewed supplement number 0002 of RMS report number 150190017, filed by Detective Troy JOHNSON. Detective JOHNSON summarized an interview with Mr. Juan R. PEREZ (H/M, 04/04/1984). Mr. PEREZ was driving westbound on West North Avenue approaching North 35th Street, and Ms. HERNANDEZ was the passenger in the vehicle. Mr. PEREZ observed a vehicle eastbound with flashing red and blue lights. Mr. PEREZ reported he did not hear a siren, because his music was loud. Mr. PEREZ stated he pulled over to allow the squad to have the right-of-way. Mr. PEREZ observed the squad had a green light, and the other vehicle appeared to be speeding to try to

1592

make it through the intersection, which appeared to have a red light. Mr. PEREZ observed the collision and assisted the detectives.

Mr. PEREZ reported the driver (of the squad) was yelling her leg was hurt. Mr. PEREZ helped pick up the driver and escorted her to the sidewalk. Mr. PEREZ stated the driver asked him to call her son and verify he was ok, at which time he did.

Detective JOHNSON also summarized an interview with Ricardo H. PEREZ (H/M, 09/01/1982). Detective JOHNSON reported that Mr. R. PEREZ was a passenger in the vehicle driven by Mr. GARIVAY, and assisted the driver of the detective's vehicle.

I reviewed supplement number 0003 of RMS report number 150190017, filed by Detective Michael WILKERSON summarizing an interview of Ms. JOHNSON conducted on Monday, January 19, 2015. Ms. JOHNSON admitted she had been drinking and was the driver of the vehicle during the accident. Ms. JOHNSON informed Detective WILKERSON that there was a passenger named "Kevin" inside her vehicle at the time of the accident. Ms. JOHNSON described the traffic light turned yellow, and she tried to stop. Ms. JOHNSON believed the light was still yellow as her vehicle failed to stop and entered the intersection. Ms. JOHNSON indicated she did not observe the squad or emergency lights. Ms. JOHNSON believed "Kevin" caused the accident because he shifted the vehicle into neutral to help the vehicle try to stop. Ms. JOHNSON stated she should not have been driving her 2002 Mitsubishi Galant, which was having brake problems, and she had been adding brake fluid.

I reviewed a Wisconsin Department of Transportation Informing the Accused report which indicated Ms. JOHNSON was arrested for Operating While Intoxicated, issued citation number S467931-2, and consented to an evidentiary chemical test of her blood.

I reviewed a Milwaukee Police Department Operating While Intoxicated memorandum submitted by Officer WIETING. Officer WIETING described the same details regarding the accident scene that were included in his RMS report narrative. Additionally, Officer WIETING reported the blood evidence was obtained by Registered Nurse (R.N.) Andrea HOPPE at 3:54 a.m. at Froedtert Hospital.

Officer WIETING documented Ms. JOHNSON'S responses to questions asked by Officer AINES. Ms. JOHNSON indicated she consumed wine and whiskey between 11:30 p.m. and 1:19 a.m. Ms. JOHNSON responded she was under the influence of alcohol at the time she was being asked the questions by Officer AINES. Ms. JOHNSON acknowledged she operated a motor vehicle and was involved in a crash.

Officer WIETING reported Officer DESTEFANIS interviewed Mr. Juan PEREZ at the accident scene. The information provided to Officer DESTEFANIS included that Mr. J. PEREZ was driving westbound on West North Avenue, with Ms. HERNANDEZ as the passenger. Mr. J. PEREZ observed the eastbound squad with lights and a siren activated. Mr. PEREZ saw a vehicle northbound on North 35th Street which disregarded the red light at West North Avenue and struck the squad.

- - - - - - **1598**

Officer WIETING reported Police Officer Ryan FEKETE spoke to Darryl OWENS (B/M, 03/02/1967) and Felicia L. OWENS (05/20/1972). Both Mr. and Ms. OWENS reported they did not witness the accident.

Officer WIETING described Ms. JOHNSON acknowledged she was driving the vehicle, but later stated she was not driving at the time of the accident. Officer WIETING documented Ms. JOHNSON acknowledged to Detective WILKERSON, during her interview, that she lied and was the driver of the vehicle.

I reviewed Wisconsin Motor Vehicle Accident Report number QQD1J1J filed by Officer AINES, for a three person injury accident on North 35th Street at West North Avenue, at 2:15 a.m., on January 19, 2015. Ms. JOHNSON was listed as operator one and issued five citations. Vehicle one was a 2002 Mitsubishi white four door, with Wisconsin registration 357WVX, and vehicle identification number (VIN) 4A3AA46G52E032572. Operator two was listed as Detective LEWANDOWSKI. Vehicle two was described as a 2007 Ford Crown Victoria black four door with Wisconsin registration 280LPY and VIN 2FAFP71W67X11023. The only occupant listed was Detective CARR.

Officer AINES reported vehicle one, operated by Ms. JOHNSON, disregarded a northbound stop light, caused an accident in the intersection, and then struck the concrete pillar. Officer AINES reported Detective LEWANDOWSKI operated vehicle number two with the squad's emergency lights activated. Detective LEWANDOWSKI and Detective CARR were transported to Froedtert Hospital and treated for complaints of soreness, swelling, and bruises. Ms. JOHNSON was transported to Froedtert Hospital and was treated for a fracture to her vertebrae. Officer AINES listed the witnesses to the accident as Mr. Juan PEREZ, Ms. HERNANDEZ, and Mr. OWENS.

I reviewed the five citations issued to Ms. JOHNSON. The first was for Cause Injury/Operating While Intoxicated, a violation of state statue 346.63(2)(a), and numbered S467931-2. The second was for Operating after Suspension, a violation of ordinance 101-1-2, and numbered I100954-0. The third was for Operate Motor Vehicle without Insurance, a violation of ordinance 101-1, and numbered I100955-1. The fourth was for Operate after Revocation/suspension of Registration, a violation of ordinance 101-1-2, and numbered I100956-2. The fifth was for Failure to obey sign or signal, the ordinance number was missing, had state statue 346.37(1)(c)3, and numbered I100957-3. All citations included a court date of January 20, 2015.

The Milwaukee Police Department Arrest-Detention Report of Ms. JOHNSON for January 19, 2015, at 3500 West North Avenue documented the same citations as previously reported. The report, signed by Officer WIETING, included an observation that Ms. JOHNSON was intoxicated. The report documented Ms. JOHNSON was conveyed to a hospital by MFD Medical Unit Seven.

I reviewed form CR-215, Probable Cause Statement and Judicial Determination, filed by Officer WIETING for the arrest of Ms. JOHNSON. Officer WIETING reported, "Our investigation revealed JOHNSON was operating a motor vehicle in the 2300 block of N 35th St...after consuming alcoholic beverages, which resulted in a traffic crash." The report documented the crash caused injuries to the occupants of a Milwaukee Police Department unmarked vehicle traveling with the emergency lights and sirens operating.

1594

Officer WIETING described witnesses reported Ms. JOHNSON failed to stop for an official red traffic signal.

I reviewed the Administrative Investigations Management (AIM) Squad Accident report number PA-2015-0011 filed by Lieutenant HANLEY. Lieutenant HANLEY responded to the scene of a squad accident on January 19, 2015, at approximately 2:17 a.m., at the intersection of North 35th Street and West North Avenue. Sergeant GRUBICH informed Lieutenant HANLEY that Detective LEWANDOWSKI was driving east on West North Avenue, and the collision was caused by the white Mitsubishi Galant, which failed to stop for a red light while traveling north on North 35th Street. Lieutenant HANLEY was also informed by Sergeant GRUBICH that Detective CARR was the front seat passenger of the vehicle. Lieutenant HANLEY indicated Detective LEWANDOWSKI and Detective CARR were receiving medical treatment and were not able to provide much detail. Ms. JOHNSON had already been transported for medical treatment.

Sergeant RILEY reported to Lieutenant HANLEY the squad car involved in the accident had been traveling with the emergency lights activated. Sergeant RILEY was not aware of any assignment that required emergency light activation. Sergeant RILEY then informed Lieutenant HANLEY that Detective LEWANDOWSKI told officers on the scene she was responding to the area of UWM, because her son had been stopped by the UWM Police Department. Sergeant RILEY later informed Lieutenant HANLEY that witnesses were also making these statements.

Lieutenant HANLEY reported he received a phone call from Detective LEWANDOWSKI at about 6:38 a.m. to discuss the accident. Detective LEWANDOWSKI informed Lieutenant HANLEY that she and Detective CARR were going to attempt to try and complete a consent search that was assigned to Detective CARR. Lieutenant HANLEY added he had assigned Detective CARR to go to the address of 2765 North 52nd Street to attempt to recover a firearm related to an ongoing shooting investigation.

Detective LEWANDOWSKI explained she was contacted by Officer BEASLEY, who had a restraining order against a Police Officer assigned to the Tactical Enforcement Unit (TEU). A different officer from the TEU was at District Five, and Officer BEASLEY was afraid something might happen. Lieutenant HANLEY reported while Detective LEWANDOWSKI was driving to District Five, "to protect PO BEASLEY," she received a phone call from her son informing her he had been stopped by the UWM Police Department. Detective LEWANDOWSKI was driving to the area of UWM first to find her son. Lieutenant HANLEY documented, "...she did not have her sirens on but she did have her red lights on... was driving about 45mph. She said she did not have her red lights on to drive like an emergency vehicle, she just had them on to make cars pull over and get out of her way." Detective LEWANDOWSKI further reported to Lieutenant HANLEY that the traffic light was green for the squad. Detective LEWANDOWSKI explained Detective CARR was trying to find something in her (Detective LEWANDOWSKI'S) phone and probably did not see anything.

Lieutenant HANLEY and Police Lieutenant Paul LOUGH went to speak to Detective CARR on January 21, 2015, about the incident. Detective CARR reported she wanted to respond to the residence to conduct the search as instructed, and Detective

------ 1595

LEWANDOWSKI went with her. While in the squad, Detective LEWANDOWSKI wanted to go to District Five first to help a friend, and then do the search.

Detective CARR reported while east on West North Avenue near North Sherman Boulevard, Detective LEWANDOWSKI activated the emergency lights to scare prostitutes that they had seen. Detective CARR thought the lights were left on, but was not sure. Detective CARR was attempting to locate "Melanie" in Detective LEWANDOWSKI'S phone at the time of the accident. Detective CARR believed the sirens were not activated, and added her memory was suffering since the accident.

Lieutenant HANLEY reported there were no working cameras in the area, including the pole camera located at North 35th Street and West Garfield Avenue. Lieutenant HANLEY was not notified by either detective they were responding to District Five or to the area of UWM. The report indicated Detective LEWANDOWSKI was driving department unmarked vehicle number 764, which was not equipped with a camera.

A query of the DP3 In Car Video Portal record revealed there were no recorded events in the last year for vehicle number 764. I also did not locate any video capturing any statements made by Detective LEWANDOWSKI or Detective CARR.

I reviewed an electronic copy of 186 photographs taken at the scene and hospital on January 19, 2015. The photographs depicted the squad had Wisconsin registration 280-LPY displayed on the rear of the vehicle. There were flashing red and blue emergency lights activated and visible in the rear and front windshields. There was a blue flashing light inside the rear passenger side window and a red flashing light in the driver side rear window. There was severe damage to the front of the vehicle.

Overall photographs taken of the intersection showed there were stop lights controlling traffic in all four directions. There was a white Mitsubishi Galant with rear Wisconsin registration 357-WVX with a pillar directly in front of the vehicle. There was severe damage to the front, driver side, and rear of the vehicle.

The photographs depicted visible injuries sustained by Detective LEWANDOWSKI, Detective CARR, and Ms. JOHNSON. Detective LEWANDOWSKI had a large red mark on what appeared to be her right forearm, a large contusion to the left forearm, a small abrasion on an unknown ankle, and a laceration or abrasion to the right shin area.

Detective CARR appeared to have an abrasion on her lip and a bruise to the left forearm near the elbow. Ms. JOHNSON had a brace around her neck, a laceration or abrasion to the center of the forehead, an abrasion on the forehead above the right eye, a contusion to an unknown area of the body, an abrasion or laceration to what appeared to be the right knee, and a large abrasion to the upper left thigh area.

I reviewed a Milwaukee Police Department Accident Supplement report filed by Court Administration Section Police Officer Brian PINTER. On February 6, 2015, Detective LEWANDOWSKI reported to Officer PINTER, she sustained the following injuries: Cervical Musculoligamentous causing delayed speech and memory loss, a concussion, whiplash, sprained right ankle, a torn ligament to her right ankle, as well as bruising and swelling to her right leg and ankle. Detective CARR informed her that she (Detective

1596

LEWANDOWSKI) had lost consciousness for three to four minutes. Detective LEWANDOWSKI reported she was treated by Doctor Jamie EDWARDS.

I reviewed an accident supplement report filed by Court Administration Section Police Officer Maurice WOULFE. On April 20, 2015, Detective CARR reported to Officer WOULFE that she had suffered a concussion, neck pain from three bulging discs in her neck, upper and lower back pain, had one bulging disc in her lower back, and Carpal Tunnel Syndrome in both wrists. Detective CARR listed numerous physicians and physical therapists from which she had been receiving treatment.

I viewed a record of the municipal citations, issued to Ms. JOHNSON, in the Milwaukee Municipal Court query system. Citation number I100954-0 for Operating after Suspension had a finding of guilty with a three day commitment entered for Ms. JOHNSON. Citations I100955-1 for Operate Motor Vehicle without Insurance, I100956-2 for Operating vehicle after suspension of Registration, and I100957-3 for illegal right turn on red had a finding of guilty with a two year driver license suspension.

I reviewed Wisconsin Department of Justice Confidential Report of Laboratory Findings report submitted for Ms. JOHNSON. Blood reportedly recovered from Ms. JOHNSON tested positive for ethanol with a result of .064 g/100mL.

I reviewed a restitution worksheet filed by Police Service Specialist Investigator Mark WAGNER, of Facilities Services, dated May 26, 2015. The squad was "totaled," with a value listed for the vehicle of $4525.00. There was an additional $359.22 listed for a "Damage Appraisal," and towing of the vehicle.

On March 09, 2015, I conducted a telephone interview of Ms. HERNANDEZ who stated she was the front passenger in a vehicle driven by Juan PEREZ. Ms. HERNANDEZ described Mr. PEREZ was driving on West North Avenue and they were traveling towards the detective vehicle. The vehicle that was traveling north, that struck the detective, ran the red light. Ms. HERNANDEZ continued to explain that the light might have been yellow and the vehicle might have tried to make the light before it turned red. The light was already green for the detective's vehicle, and it struck the other vehicle. The vehicle that was struck by the detective's vehicle then struck the brick post. Ms. HERNANDEZ stated the driver of the non-detective vehicle was "driving pretty fast."

Ms. HERNANDEZ approached the detective's vehicle and observed the driver had an injured leg. Ms. HERNANEZ described the driver of the detective vehicle was a white female with blonde hair. Ms. HERNANDEZ did not hear any discussion about what the detectives were responding to. Ms. HERNANDEZ indicated she heard the driver of the detective's vehicle screaming out to everyone to call her son, because her son was at the UWM police station, and she needed to get to him. Ms. HERNANDEZ stated she did not know if the squad's lights or siren were on before the accident occurred. Ms. HERNANDEZ stated the music was not too loud in her vehicle, and she just did not remember if the siren was on. Ms. HERNANDEZ had consumed alcohol from two bottles of wine, which was shared between five people, prior to witnessing the accident.

I attempted to contact Mr. Juan Perez three or more times, and Mr. PEREZ did not answer the telephone or return any messages. Attempted phone contact with Mr.

- - - - - -**1597**

Javier GARIVAY revealed the phone number was no longer in service. I attempted to contact Mr. Ricardo PEREZ two or more times. Mr. R. PEREZ returned one phone call, but did not return any other messages that were left.

I conducted a telephone interview with Mr. Jordan LEWANDOWSKI on June 11, 2015. Mr. LEWANDOWSKI acknowledged he had contact with an unknown law enforcement agency at about 1:00 a.m. or 1:30 a.m. the night of the accident. Mr. LEWANDOWSKI was able to only provide that he was stopped a few blocks away from Sandburg Hall.

Mr. LEWANDOWSKI stated he tells his mother when he gets "pulled over." Mr. LEWANDOWSKI described he called his mother, informed her he was "pulled over," and he would call her (Detective LEWANDOWSKI) when he was done. Detective LEWANDOWSKI responded, "Alright, bye." Mr. LEWANDOWSKI stated that was the extent of the phone conversation. Mr. LEWANDOWSKI denied that his mother requested him (Mr. LEWANDOWSKI) to call her back when he determined where he was. Mr. LEWANDOWSKI responded that his mother did not state she wanted to meet him or tell him where she was going. Mr. LEWANDOWSKI stated, "I would never put my mom in that position to come like get me." Mr. LEWANDOWSKI stated he did not inform his mother that he was by UWM.

Mr. LEWANDOWSKI stated his phone was answered by the officer who conducted the stop. The officer informed Mr. LEWANDOWSKI of his mother's accident and then left. Mr. LEWANDOWSKI obtained an exact address from his friend's residence, which was the same location where he had contact with the police. Then, two unknown officers picked him up and brought him to the hospital. Mr. LEWANDOWSKI stated the license plate on his vehicle was 179-WVF.

A CAD comment search for January 19, 2015, and January 20, 2015, of "LEWANDOWSKI" and license plate "179-WVF" returned no matching results.

I spoke with UWM Police Sergeant Joseph SUTHER who was unable to locate any record of contact with Mr. LEWANDOWSKI.

Shorewood Police Department Public Safety Clerk Jackie BEARD located a contact related to license plate 179-WVF, which occurred at 2:02 a.m. on January 19, 2015. Clerk BEARD provided the contact's call number was 15-000490, for a field interview conducted by Sergeant Cody SMITH, but did not have a name of an included subject.

I reviewed Shorewood Police Department CAD Activity Report 15-000490 for a disturbance complaint at 3616 North Maryland Avenue on January 19, 2015. The notes indicated the complaint was reported at 2:02:01, and the responding squads (Cody SMITH and Michael KERR) were recorded as arrived at 2:05:03. There was comment, "Subject turned over to MPD."

I conducted a telephone interview of Shorewood Police Sergeant SMITH on June 12, 2015. Sergeant SMITH recalled he worked on January 19, 2015, and had contact with Mr. LEWANDOWSKI. Sergeant SMITH described he conducted a traffic stop of a vehicle Mr. LEWANDOWSKI was driving near the 3600 block of North Maryland Avenue. When Sergeant SMITH initially approached the vehicle, Mr. LEWANDOWSKI

- - - - - 1 5 9 8

handed him a business card with his mother's name on it. Mr. LEWANDOWSKI informed Sergeant SMITH his mother was a detective and on her way to the stop. Sergeant SMITH stated, had it been a different circumstance he probably would have taken Mr. LEWANDOWSKI into custody for "OWI" or absolute sobriety. Sergeant SMITH spoke to someone who said he was on the way to pick up Mr. LEWANDOWSKI because Mr. LEWANDOWSKI'S mother had been in a car accident. Sergeant SMITH believed Jordan had told him the same thing. Sergeant SMITH did not remember if he just released Jordan, or an officer waited with Mr. LEWANDOWSKI. Sergeant SMITH thought Shorewood Police Officer Michael KERR might have been present at the stop. Sergeant SMITH did not talk directly to Detective LEWANDOWSKI. Sergeant SMITH checked for squad video of the incident and informed me there was none available.

During a subsequent telephone interview on August 7, 2015, Sergeant SMITH confirmed after initial contact with Mr. LEWANDOWSKI, he conducted an investigation related to the initial noise complaint. Sergeant SMITH was informed Detective LEWANDOWSKI was involved in an accident "on the way there, and that somebody from Milwaukee was coming." Sergeant SMITH confirmed after doing his investigation, he did not wait for Detective LEWANDOWSKI to arrive at any time.

During a non PI-21 interview, Sergeant GRUBICH recalled working on January 19, 2015, as Squad 3410. Sergeant GRUBICH confirmed he responded to North 35th Street and West North Avenue and located an accident at the location involving an unmarked squad which was severely damaged. Sergeant GRUBICH stated Detective LEWANDOWSKI sustained facial abrasions and was lying on the concrete. Detective CARR had a cervical collar on and was "moaning obviously like she was in pain." Sergeant GRUBICH stated both detectives were transported by separate medical units.

Sergeant GRUBICH approached the detectives to ascertain their injuries, and then attended to the scene. Sergeant GRUBICH stated the detectives did not tell him what happened. Sergeant GRUBICH stated that the citizen witnesses on scene, that were right behind the accident, told him that the squad had their emergency lights activated. Sergeant GRUBICH stated he did not hear where or to what the squad was responding. After the incident, Sergeant GRUBICH stated he heard a rumor that Detective LEWANDOWSKI was going to the UWM area because her son had been stopped by a UWM Police Officer. Sergeant GRUBICH stated he did not recall who said this, but described he heard it when several officers were talking loud in preparation for roll call.

During a non PI-21 interview, Sergeant RILEY indicated he responded to the scene of the accident. Sergeant RILEY was informed Detective LEWANDOWSKI operated an unmarked vehicle east on West North Avenue, with the emergency lights activated, and was responding to a matter with her son. Additionally, Detective LEWANDOWSKI was responding to intervene possibly at a contact with the UWM Police Department. Sergeant RILEY acknowledged he did not receive this information from Detective LEWANDOWSKI and described he had heard it amongst discussions.

Sergeant RILEY did not know who provided the information to him, and stated there were District Three officers from different shifts and TEU officers on scene. Sergeant RILEY added there were conflicting reports whether or not the squad's emergency siren

- - - - - - **1599**

Was briefly activated. Sergeant RILEY reported citizens observed the emergency lights were activated. Sergeant RILEY forwarded the information to Lieutenant HANLEY.

During a non PI-21 interview, Officer BOEHLKE confirmed he was assigned to TEU and responded to the accident scene with his partner Officer KUSPA. Upon arrival, Officer BOEHLKE observed an accident occurred involving a department vehicle, and then primarily conducted "scene security." As to the location the squad was responding to Officer BOEHLKE stated, "I thought I heard something down on the Eastside like Milwaukee, UWM Milwaukee Police, or something to that effect." Officer BOEHLKE did not recall the source of that information.

Officer BOEHLKE did not speak directly with any witnesses or either member involved in the accident. Officer BOEHLKE thought he heard a statement made by Detective LEWANDOWSKI and noted, "...I was a little further down on the scene." Officer BOEHLKE responded the only thing he heard from Detective LEWANDOWSKI was "just something about her son, that she had to get to her son." Officer BOEHLKE did not recall the exact words of Detective LEWANDOWSKI stating, "I don't recall the exact words, but it seemed something to the effect of I need something about my son, or I need to get to my son." Officer BOEHLKE described he observed from a distance, Detective LEWANDOWSKI was distraught, very "worry-some," and slightly agitated.

Officer BOEHLKE described he overheard a witness speaking to an officer. Officer BOEHLKE stated, "I believe they indicated that the department vehicle was operating lights and siren, had a green traffic signal, and I believe the other motorist in question, the alleged drunk driver, violated a red traffic signal which resulted in the collision." Officer BOEHLKE was unable to recall who the witness or officer was.

Officer BOEHLKE described a discussion he had with Officer KUSPA after they had left the scene. Officer BOEHLKE stated, "I basically remember the extent of the conversation being something to the effect that she was at the District Three Police Station. She received a telephone call from a different agency that being I believe it was University of Wisconsin Milwaukee Police. That there was some sort of investigation going on with her son, and that she was responding to that location." Officer BOEHLKE was not on-scene with Officer KUSPA, and was not aware where that information would have been obtained.

During a non PI-21 interview, Officer KUSPA confirmed he responded to the accident scene with his partner Officer BOEHLKE. Officer KUSPA described several Officers were also arriving simultaneously. Officer KUSPA acknowledged it appeared an accident involving detectives with a department vehicle occurred. Officer KUSPA described the detective had an apparent leg injury, was very incoherent, and kept saying, "Go get my son." Officer KUSPA thought she may have hit her head, and would not answer his questions about her injuries, and just kept responding regarding her son. Officer KUSPA described the detective was aggressively yelling to get her son, that he was stopped by the UWM Police. Officer KUSPA stated the detective did not provide any information as to what caused the accident. Officer KUSPA did not initially recall the name of the detective, but later confirmed it was Detective LEWANDOWSKI.

`- - - - - -1 6 0 0`

Officer KUSPA stated witnesses on the scene observed the squad travel at a high rate of speed eastbound, approaching the intersection of North 35th Street and West North Avenue. Officer KUSPA recalled, "The light had just changed as the squad was going through traveling red lights and siren, and a vehicle that was traveling northbound on North 35[th] Street ran through the intersection just as the light changed, and then the squad t-boned that car." Officer KUSPA detailed the light changed green for the squad and red for the other vehicle simultaneously as they entered the intersection. Officer KUSPA indicated this information was obtained from witnesses when he asked if anybody saw what happened. Officer KUSPA did not obtain their names, requested the witnesses to wait to speak to an officer, and they were subsequently interviewed.

Officer KUSPA stated neither detective informed him where they were responding. After receiving information from witnesses that the squad was responding to something, the direction the vehicle was traveling, and Detective LEWANDOWSKI instructing to get her son, Officer KUSPA'S belief was the detectives were going together to go meet her son, but not what the detectives reported to him. Officer KUSPA then reported the witness statements, and Detective LEWANDOWSKI'S statements, "about her wanting me or any other officers to go meet her son at the UWM area because her son was stopped by the police" to Sergeant GRUBICH.

During a PI-21 interview, Officer GROSS acknowledged he was assigned as Squad 5428 with Officer BEASLEY on January 18, 2015, and the shift ended On January 19, 2015. In reference to CAD complaint number 150190097, for an assignment at 4257 North Teutonia Avenue, Officer GROSS could not recall if they were at the location until the assignment reflected it was cleared at 2:21 a.m. After that assignment, Officer GROSS believed they went to District Five so Officer BEASLEY could talk to a detective. Officer GROSS stated he did not discuss any personal matters with Officer BEASLEY, did not observe any signs of distress or danger, and was not aware of a department member was involved in an accident.

Personnel Order 2015-66, dated June 19, 2015, promoted Officer BEASLEY to the rank of Detective. Henceforth, Officer BEASLEY will be referred to as Detective BEASLEY.

During a non PI-21 interview, Detective BEASLEY acknowledged she intended to meet Detective LEWANDOWSKI at District Five at about the time the accident had occurred. Detective BEASLEY tried to talk to Detective LEWANDOWSKI earlier, in person, while at District Five. Detective LEWANDOWSKI did not have time, and they agreed to meet again at District Five around "two to three." Detective BEASLEY included there were "a lot of things" she wanted to talk to Detective LEWANDOWSKI about, including a report. Detective BEASLEY described after Detective LEWANDOWSKI did not arrive, she attempted to call Detective LEWANDOWSKI at about 3:00 a.m., and there was no answer. Detective BEASLEY stated she later learned from a phone call from Detective LEWANDOWSKI that she did not make it back to the district because she was involved in a vehicular accident. Detective BEASLEY stated Detective LEWANDOWSKI never told her of an intention to meet her son before the accident.

During a non PI-21 interview, Officer WIETING acknowledged he and Officer AINES responded to the accident scene. Officer WIETING confirmed he located an accident at the location. Officer WIETING stated he spoke to Detective LEWANDOWSKI briefly

- - - - - 1 6 0 1

who only directed him to check on the welfare of the occupant of the other vehicle. Officer WEITING did not hear any other communication from Detective LEWANDOWSKI during the investigation. Officer WEITING described he accompanied Ms. JOHNSON to Froedtert Hospital, who he had observed had swelling to her forehead and a laceration. Officer WEITING acknowledged he was assigned to investigate the accident, and subsequently the related "OWI." Officer WEITING recalled Detective LEWANDOWSKI and a Detective with first name "Juanita" were involved in the accident. Officer WEITING indicated Ms. JOHNSON admitted to "drinking", and her eyes appeared to be bloodshot. Officer WEITING stated he did not obtain any information relative to what or where the detectives were responding to. Officer WEITING did not recall what information he obtained that caused him to document, in form CR-215, a determination the squad was operating with emergency lights and siren activated at the time of the accident.

Officer AINES separated from the department prior to the completion of the investigation.

During a non PI-21 interview, Officer KRUMNOW confirmed he responded to the accident scene with his partner Officer STACEY. Officer KRUMNOW described Detective LEWANDOWSKI gave him her telephone and directed to locate her son, and added he was with a friend at UWM. Officer KRUMNOW initially went and parked near the UWM Police Station because that was where Detective LEWANDOWSKI told them to go. Officer KRUMNOW described Detective LEWANDOWSKI was "not all there." Officer KRUMNOW confirmed he went to the area of 3611 North Maryland Avenue to pick up Detective LEWANDOWSKI'S son and brought him to the hospital. Officer KRUMNOW did not speak to any law enforcement officers from another jurisdiction, and there were no officers present when they located Mr. LEWANDOWSKI.

Officer KRUMNOW reported he did speak to Detective LEWANDOWSKI after Mr. LEWANDOWSKI was brought to the hospital. Officer KRUMNOW only remembered checking on Detective LEWANDOWSKI and seeing she had bruises. Officer KRUMNOW responded that Detective LEWANDOWSKI never informed him of where she was going before she got involved in the accident. Officer KRUMNOW did not remember what if anything Mr. LEWANDOWSKI had said to him. Officer KRUMNOW stated neither Detective CARR, or Detective LEWANDOWSKI informed him why the emergency lights were on.

During a non PI-21 interview, Officer STACEY acknowledged she responded to an accident at North 35th Street and West North Avenue involving Detective LEWANDOWSKI and Detective CARR. Officer STACEY stated she spoke briefly with Detective LEWANDOWSKI. Detective LEWANDOWSKI "wasn't making any sense and told us to go get her son." Officer STACEY recalled Detective LEWANDOWSKI stated something indicating that her son might be with District Five, and he was "stopped."

Officer STACEY went to the area of 3611 North Maryland Avenue with her partner Officer KRUMNOW and located Mr. LEWANDOWSKI. Officer STACEY stated the address may have been provided to her by Officer GOGGINS. Officer STACEY stated Mr. LEWANDOWSKI was alone and she did not speak to another member of another police department.

**- - - - - 1 6 0 2**

Officer STACEY did not remember if Detective LEWANDOWSKI informed her, at the scene, of an intention to meet Mr. LEWANDOWSKI prior to the accident, but stated she may have. Officer STACEY described Mr. LEWANDOWSKI informed her that he received a call and his mother wanted him to go to the hospital. Officer STACEY responded that Mr. LEWANDOWSKI did inform her he had contact with another police department, but did not provide related details. Officer STACEY did not think Mr. LEWANDOWSKI stated his mother was coming to meet him before the accident.

Officer STACEY stated she did go to Detective LEWANDOWSKI'S residence during the next shift. Officer STACEY stated she did not witness Detective LEWANDOWSKI talk to anyone on the phone at that time. Officer STACEY reported Officer VOLLRATH may have accompanied Detective LEWANDOWSKI to the hospital.

During a non PI-21 interview, Officer GOGGINS confirmed he responded to the accident scene with Officer DESTEFANIS. Officer GOGGINS spoke to Detective LEWANDOWSKI and Detective CARR. Officer GOGGINS recalled Detective LEWANDOWSKI was disorientated and requested him to contact her son. Officer GOGGINS indicated he contacted Detective CARR'S "significant other," from the scene. Officer GOGGINS did not successfully contact Mr. LEWANDOWSKI, nor did he believe he had spoken to another law enforcement official from another jurisdiction.

Officer GOGGINS indicated while at the scene there was discussion that the detectives were responding to check on one of Detective LEWANDOWSKI'S son, but did not remember who, and did not recall if he had spoken to Detective LEWANDOWSKI or Detective CARR regarding that information. Officer GOGGINS responded Detective LEWANDOWSKI did not inform him why she wanted him to locate her son. Officer GOGGINS explained he assumed the intention was to notify her son that Detective LEWANDOWSKI was involved in an accident. Officer GOGGINS indicated someone at the scene said Detective LEWANDOWSKI'S son was stopped by UWM Police or Shorewood, but never heard that from either detective.

Officer GOGGINS added, upon arrival, he observed the department vehicle involved in the accident had both emergency lights and the siren activated. Officer GOGGINS described the siren was "annoying" and turned off only the siren.

During a non PI-21 interview, Officer VOLLRATH confirmed he responded to the scene, and observed an accident had occurred. Officer VOLLRATH identified Detective LEWANDOWSKI and Detective CARR were involved in the accident. Officer VOLLRATH was instructed to and remained with Detective LEWANDOWSKI on scene, while in the ambulance, and at the hospital. Officer VOLLRATH did not speak to Detective CARR.

Detective LEWANDOWSKI informed Officer VOLLRATH that while traveling on West North Avenue a vehicle struck them. Detective LEWANDOWSKI did not inform Officer VOLLRATH where she was going, and reported he did not witness any statements made relative to that. Officer VOLLRATH described Detective LEWANDOWSKI might have told another officer to get in contact with her son, and one of her son's arrived at the hospital later. Officer VOLLRATH acknowledged there was discussion that he

heard amongst officers related to going to meet her son, but none of the statements were from Detective LEWANDOWSKI.

During a non PI-21 interview, Lieutenant HANLEY indicated he was on duty and responded to the accident scene after he had heard radio transmissions for a possible fatal accident involving a detective. Upon arrival at North 35th Street and West North Avenue, Lieutenant HANLEY observed an accident had occurred. Lieutenant HANLEY'S investigation revealed Detective LEWANDOWSKI was the operator, and Detective CARR was the passenger of the vehicle involved. Lieutenant HANLEY confirmed he authored the squad accident report and it was accurate.

Lieutenant HANLEY described the preliminary investigation revealed the department vehicle was eastbound on West North Avenue and collided with the citizen's vehicle traveling northbound on North 35th Street. Sergeant RILEY informed Lieutenant HANLEY witnesses to the accident reported the squad with emergency lights activated traveled through the intersection with a green traffic light, when the citizen vehicle disregarded the red traffic light and collided into the department vehicle.

Lieutenant HANLEY reported he briefly spoke to Detective LEWANDOWSKI and Detective CARR at the scene. Both detectives were receiving medical attention and did not provide any details regarding the accident to Lieutenant HANLEY at that time. Lieutenant HANLEY stated he was informed by Sergeant RILEY that Detective LEWANDOWSKI was heard stating she was reporting to the area of UWM because her son was at a traffic stop with the police. Lieutenant HANLEY confirmed that neither detective provided any information to him personally relative to that, and it was information reported to Sergeant RILEY by TEU officers. Lieutenant HANLEY had not spoken to any officers that reported hearing related statements.

Lieutenant HANLEY indicated he responded to the hospital and spoke to both Detective LEWANDOWSKI and Detective CARR. Detective CARR was "under medication," and did not make any statements about what happened. Detective LEWANDOSWKI was also receiving treatment and "under medication." Lieutenant HANLEY was unable to obtain a response about what happened from Detective LEWANDOWSKI.

Lieutenant HANLEY added he personally ordered Detective CARR at District Three to conduct a "knock and talk" related to a shooting that had happened that evening. The purpose was to conduct a search of 2765 North 52nd Street to recover the firearm involved in the incident. At the time of the instruction to Detective CARR, Lieutenant HANLEY reported Detective LEWANDOWSKI was not present. Lieutenant HANLEY indicated he expected that the order to conduct the follow up would have been conducted immediately, and he ordered it to be completed right away. Lieutenant HANLEY described the residence was in close proximity to St. Joseph's hospital, and wanted the follow up completed before the victim was released.

Lieutenant HANLEY indicated Detective LEWANDOWSKI contacted him, after the accident, later that morning on his cellular telephone. Lieutenant HANLEY provided additional details regarding what was reported to him related to Detective LEWANDOWSKI meeting Officer BEASLEY. Lieutenant HANLEY stated Detective LEWANDOWSKI told him, after entering the vehicle to conduct the consent search she

received a phone call from her friend Officer BEASLEY. Lieutenant HANLEY added the TEU Officer had entered District Five with an arrest, and Officer BEASLEY was concerned for her safety because she was afraid all TEU Officers "would all band together and do something to her."

Detective LEWANDOWSKI stated to Lieutenant HANLEY, while traveling to District Five she received a telephone call from her son who had been stopped by UWM police. Detective LEWANDOWSKI indicated she was responding to that area first to find her son. Detective LEWANDOWSKI reported operating about 45 mph with the department vehicle's emergency lights activated, but not the siren when the accident occurred. Lieutenant HANLEY did not remember any specific statements made by Detective LEWANDOWSKI as to when the emergency lights were activated.

Lieutenant HANLEY described the January 21, 2015, meeting he had with Detective CARR at her residence. Lieutenant HANLEY indicated he did not ask, and Detective CARR did not indicate she was aware of the situation regarding Detective LEWANDOWSKI'S son. Detective CARR informed Lieutenant HANLEY she did not think the siren was on because she recalled hearing Detective LEWANDOWSKI scream at the time of the accident. Lieutenant HANLEY indicated, prior to the accident, he was not informed by anyone that Detective CARR was responding elsewhere before the accident, and not to the previously assigned follow-up.

During a PI-21 interview, Detective CARR acknowledged, while on duty, she was assigned as Squad 9288 on January 19, 2015, and at about 2:17 a.m., was the passenger in the vehicle driven by Detective LEWANDOWSKI. While traveling east on West North Avenue and at North 35th Street, their vehicle was involved in an accident. Detective CARR reported she "has" a concussion and is receiving treatment.

Detective CARR stated she did not see the accident occur, and had been looking through Detective LEWANDOWSKI'S cell phone at the time. Detective CARR was not sure if the squad's emergency lights were activated at the time of the collision, and did not see what the color of the traffic light was prior to the accident.

Detective CARR estimated the squad's emergency lights had been activated somewhere between North Sherman Boulevard and North 35th Street. Detective CARR continued, "There was a car that was in the road, you know with the prostitutes hanging out over there." Detective CARR did not see the actual prostitutes, but recalled either she (Detective CARR) or Detective LEWANDOWSKI mentioned something about prostitutes. Detective LEWANDOWSKI "flipped the lights on" to make sure that the car moved over. Detective CARR described she did not know if the lights were then turned off. Detective CARR stated besides addressing the vehicle or prostitutes, there was no other reason for the emergency lights to have been activated.

Detective CARR stated she looked through Detective LEWANDOWSKI'S cell phone looking for a phone number of Detective LEWANDOWSKI'S son. Detective CARR was not told why, but to answer if "Jordan" called. Detective CARR did not think Detective LEWANDOWSKI was speeding. After the lights were activated, Detective CARR did not observe any traffic violations committed. Detective CARR continued that she was

- - - - - - 1 6 0 5

not paying attention because Detective LEWANDOWSKI was driving "normally." If the squad was being driven "erratically," she would have paid attention.

Detective CARR viewed four photographs taken of the squad at the scene, which included the license plate 280-LPY. Detective CARR confirmed that was the squad she was in the night of the accident. Detective CARR acknowledged she remembered the inside of that squad that night and described that the emergency lights were positioned up by the dashboard.

Detective CARR explained she had investigated a shooting in which the suspect lived on North 52nd Street, and was going to check for the firearm used in the offense. Detective LEWANDOWSKI was going to meet an officer at District Five and then go with Detective CARR to the residence so they did not have to call for another squad to meet them. Detective LEWANDOWSKI informed Detective CARR she was meeting "Melanie," but did not state why. Detective CARR stated they both left in the same vehicle from District Three. Detective CARR did not know if Lieutenant HANLEY had assigned the follow up or asked if she was going to check for the firearm, or if she had spoken to Lieutenant HANLEY before leaving District Three.

Detective CARR stated she was conveyed to the hospital by ambulance and had not returned to duty since the accident. Detective CARR reported, in addition to the concussion, she has had a headache that has not stopped, was diagnosed with Carpal Tunnel Syndrome in her wrists, three degenerative bulging discs in her neck, and one in her back. Detective CARR viewed photographs and indicated they were of a lip injury plus bruising and pain to her left arm.

Detective CARR acknowledged she was familiar with Core Value 1.00 - Competence. Detective CARR stated she was never told by Detective LEWANDOWSKI she was trying to meet her son. Detective CARR stated if she would have observed Detective LEWANDOWSKI utilize the emergency lights without accomplishing a mission of the police department, she would have either turned them off or told Detective LEWANDOWSKI to turn them off.

Detective CARR acknowledged she was familiar with Guiding Principal 1.03, and felt that she did not violate the Guiding Principal. Detective CARR stated she did not know exactly what Detective LEWANDOWSKI was going to handle at District Five, but she was then going to respond with Detective CARR, which would have saved time by "not pulling other officers into their assignment." Detective CARR stated if she knew Detective LEWANDOWSKI was going to District Five to do something not work related she would not have went, adding she was trying to "get off work."

Detective CARR acknowledged she was familiar with Core Value 2.00 - Courage, including Guiding Principals 2.02 and 2.03. Detective CARR also acknowledged she was familiar with Core Value 5.00 - Respect and Guiding Principal 5.03. Detective CARR stated the follow-up she intended to complete was close to District Three, and felt she initiated the follow-up. Detective CARR stated if she would have been ordered by Lieutenant Hanley to conduct the follow-up, she would have still gone to District Five first. Detective CARR continued she assumed Detective LEWANDOWSKI was

- - - - - **1 6 0 6**

handling business that was work-related; the goal was not to have another vehicle go out of service just to search a house when they could be taking other assignments.

Detective CARR responded there was not any urgency to complete the follow-up, but if she would have been told to do it immediately she would have taken care of it right away. Detective CARR stated she did not hear Detective LEWANDOWSKI have any conversations with her son, or tell Detective CARR that she needed to meet her son, or that something happened at UWM. Detective CARR described that Detective LEWANDOWSKI'S son came to the hospital, and Detective LEWANDOWSKI told her that her son had been stopped by the police. Detective CARR recalled that Detective LEWANDOWSKI told her that "Melanie" had been involved in some dispute but she did not go into detail. After the accident, Detective LEWANDOWSKI never told Detective CARR that she needed to go meet her son that night.

Detective CARR acknowledged the follow-up she needed to complete was closer. Detective CARR indicated since she got into the car with Detective LEWANDOWSKI, she rode with her to take care of her business and intended to take care of the follow-up on the way back. Detective CARR stated she would have taken over driving if she felt Detective LEWANDOWSKI had any "major issues" on her mind while she was driving. Detective CARR stated, "She didn't tell me that she was, had another alternate agenda or anything." Detective CARR added, "Detective LEWANDOWSKI was driving normal, and she didn't seem like she was responding to anything urgent."

During a PI-21 interview, Detective LEWANDOWSKI stated while on duty January 19, 2015, and assigned as Squad 9282 she was involved in an accident at West North Avenue and North 35th Street at approximately 2:17 a.m. Detective LEWANDOWSKI described she was driving east on West North Avenue to go to District Five, and Detective CARR was the passenger. While at approximately North 36th Street, she observed a car in the bicycle lane either picking up or dropping off "some girls." The vehicle's brake lights were on, and it appeared it was going to pull into traffic. To warn the driver and prevent the vehicle from striking the squad, Detective LEWANDOWSKI activated the emergency siren. Detective LEWANDOWSKI'S description of how long the siren was activated was equal to about one second. Detective LEWANDOWSKI passed the vehicle with just the emergency lights on. Detective LEWANDOWSKI added Detective CARR also noticed the vehicle because they made comments to each other that the subject was picking up prostitutes.

Detective LEWANDOWSKI continued driving east, observed a car not stopping, and they collided. Detective LEWANDOWSKI observed the traffic light was green for east and west traffic prior to the collision. Detective LEWANDOWSKI stated she applied the brakes, but could not avoid striking the vehicle. Detective LEWANDOWSKI did not think she turned off the emergency lights prior to the collision. Detective LEWANDOWSKI stated the lights were only activated so the car she observed did not pull out and strike the squad.

Detective LEWANDOWSKI viewed a photograph of the squad at the scene of the accident, including a photograph with the license plate 280-LPY, and identified it was the vehicle she operated the night of the accident.

- - - - - - **1607**

Detective LEWANDOWSKI described she lost consciousness after the accident and was conveyed to a hospital by ambulance. Detective LEWANDOWSKI described she sustained a concussion causing "short term memory issues." Detective LEWANDOWSKI viewed photographs taken at the hospital. Detective LEWANDOWSKI confirmed one was of left arm bruising from the accident, and one was of an injury to her right arm. Detective LEWANDOWSKI stated she received a "cut" on her lower leg as well as swelling and bruising to her knee. Detective LEWANDOWSKI continued her eye was still swollen; she received "two black eyes," and had pain to her neck and back. Detective LEWANDOWSKI added she has had trouble with short term memory, "articulating herself," and had not returned to work since the accident.

Detective LEWANDOWSKI summarized the events that transpired before Detective CARR entered the department vehicle with her. Detective CARR was sent to a "shooting" earlier. Detective LEWANDOWSKI was at District Five at about 12:00 a.m. or 12:30 a.m. with Officer BEASLEY, who had to conduct a search of a female subject. Detective LEWANDOWSKI continued Officer BEASLEY did not want to be there, because somebody against whom she had a complaint was there, or had his "buddies" there. Detective LEWANDOWSKI stated Officer BEASLEY had lived with her about five days a week for the last five or six months and asked her to come to the district.

Detective LEWANDOWSKI intended to help retrieve a firearm for Detective CARR'S shooting assignment. Detective LEWANDOWSKI stated a sergeant asked Detective CARR if she had recovered the firearm. Once the sergeant left, Detective LEWANDOWSKI asked Detective CARR if she wanted help to retrieve the firearm. Detective LEWANDOWSKI informed Detective CARR that she had something to do at District Five "quick and then we'll do it, and we left together in one car."

Detective LEWANDOWSKI acknowledged, when the accident occurred, she was going to meet Officer BEASLEY at District Five. Detective LEWANDOWSKI stated she intended to meet Officer BEASLEY instead of conducting the follow-up first because "she had called me and asked me to." Detective LEWANDOWSKI added it would have been her second time at District Five that night. Detective LEWANDOWSKI described she had been there for the same issue about two hours earlier.

Detective LEWANDOWSKI did not feel a need to and did not respond to District Five as an emergency. Detective LEWANDOWSKI reported she left from District Three, followed the rules of the road, and was not speeding. Detective LEWANDOWSKI stated she did not activate the lights or siren to respond to District Five.

Detective LEWANDOWSKI acknowledged she was familiar with Core Value 1.00 - Competence, and Guiding Principal 1.03. Detective LEWANDOWSKI did not believe she violated the Guiding Principal, and accomplished the mission of the Department. Detective LEWANDOWSKI explained she was going to District Five to aid a fellow officer and then go retrieve the firearm Detective CARR did not retrieve on her own.

Detective LEWANDOWSKI described why she went to meet Officer BEASLEY instead of aiding in the retrieval of the firearm. Detective LEWANDOWSKI stated, "A, that wasn't my assignment to do with the gun that was just something I was going to help her with. It took precedence because that was where I was going to go in the first

place." Detective LEWANDOWSKI described the police purpose that she was serving, by going to District Five, was to help a coworker. Detective LEWANDOWSKI stated, "My co-worker called me and asked me to come there; I'm gonna come there."

Detective LEWANDOWSKI stated she had not been assigned or told to do the follow-up and there was not any urgency to complete it. Detective LEWANDOWSKI did not know exactly what was going on, but stated it would have been her third time back to the district that day. Detective LEWANDOWSKI stated, "I was just returning back because Melanie asked me are you coming, and I said yes." Officer BEASLEY informed Detective LEWANDOWSKI she was "sitting in the parking lot," and needed her (Detective LEWANDOWSKI) to come. Detective LEWANDOWSKI stated she was on her way to District Five traveling east on West North Avenue to see what Officer BEASLEY needed. Detective LEWANDOWSKI stated she goes to District Five on a daily basis and described it as her "base for Central."

Detective LEWANDOWSKI acknowledged she was familiar with Guiding Principal 1.05, Standard Operating Procedure (SOP) 640.15(a)(2) Vehicle Operations, and Guiding Principal 1.10. Detective LEWANDOWSKI responded she had not violated the SOP or Guiding Principles, because she used the emergency lights to prevent a vehicle from hitting her.

Detective LEWANDOWSKI stated she last spoke to her son about when the sergeant asked Detective CARR if the firearm was recovered. Detective LEWANDOWSKI described, as she entered the vehicle to leave, her son called and informed her he got pulled over. Jordan did not know where he was, and Detective LEWANDOWSKI told Jordan to call her when he knew something. Detective LEWANDOWSKI provided Detective CARR with her phone to answer if either Melanie or her son called, so she would not drive and talk on the phone.

After the accident, Detective LEWANDOWSKI asked "Deb Stace" (Officer STACEY) and Officer KRUMNOW to pick up her son. Detective LEWANDOWSKI communicated with other officers who responded to the accident to locate her son, so they could tell him that she was hurt and where she was.

Detective LEWANDOWSKI stated Lieutenant HANLEY was her supervisor, but was not anymore. Detective LEWANDOWSKI stated she spoke to Lieutenant HANLEY later and not at the scene of the accident. Detective LEWANDOWSKI stated her son Jordan LEWANDOWSKI had contact with a police agency other than UWM. Detective LEWANDOWSKI indicated she never had responded to anything when her son has been pulled over. Detective LEWANDOWSKI described her concerns when her son has had police contact and instructed, "tell them that I'm gonna be calling my mother she's a Milwaukee Police Detective." Detective LEWANDOWSKI indicated she never intended to meet her son prior to the accident.

Detective LEWANDOWSKI indicated she did not inform Lieutenant HANLEY of many of the details he reported in the squad accident report, and those details were not true. Detective LEWANDOWSKI noted she had contacted Lieutenant HANLEY at a District Five telephone extension, and if the phones are recorded it would reflect that

------1609

information was not provided. Detective LEWANDOWSKI requested the recording of the phone conversation with Lieutenant HANLEY be obtained if it existed.

Detective LEWANDOWSKI stated she had informed Lieutenant HANLEY she was going to District Five, and Detective CARR was with her because they were going to conduct follow-up. Detective LEWANDOWSKI informed Lieutenant HANLEY she activated the emergency lights to move a car over that was in traffic. Detective LEWANDOWSKI stated, "I thought he was gonna, he had brake lights on, like come out, so I switched it on to let him know." She stated that she told the citizens and officers who were helping her to locate her phone and call her son, who goes to UWM, and tell him about the accident. Detective LEWANDOWSKI stated she did not tell Lieutenant HANLEY she was going to meet her son prior to the accident. Detective LEWANDOWSKI indicated she told Lieutenant HANLEY she instructed other officers to pick up her son to take him to the hospital.

Detective LEWANDOWSKI requested that her son be interviewed. Detective LEWANDOWSKI stated she had a subsequent conversation with Lieutenant HANLEY and addressed the specific "rumors" that she was going to meet her son, and he informed her that the information was coming from Sergeant GRUBICH. Detective LEWANDOWSKI stated this conversation occurred a different day after the accident.

Respectfully submitted,

Adam Zieger PS# 016283
Police Sergeant
Internal Affairs Division