# MILWAUKEE POLICE DEPARTMENT
# INTERNAL INVESTIGATION

## DET. SHANNON LEWANDOWSKI
## SEX DISCRIMINATION COMPLAINT

March 1, 2016

Anna M. Pepelnjak
Weiss Berzowski LLP



RECEIVED MAR 04 2016
FIRE AND POLICE COMMISSION

## I. Overview:

On October 14, 2015, Milwaukee Police Department Detective Shannon Lewandowski submitted a citizen complaint to the Fire and Police Commission. Ex. 1, October 13, 2015 Complaint. FPC Executive Director MaryNell Regan assigned Anna M. Pepelnjak of Weiss Berzowski LLP to investigate the complaint.

The following persons were interviewed: Det. Shannon Lewandowski (three meetings), Sgt. Shannon Taylor, Sgt. Justin Sebestyen, Lt. Jeffrey Norman, Capt. Thomas Stigler, PO Clayton Amborn and Sgt. Roberta Klein. The investigator issued an FPC PI-21 to Det. Melanie Beasley, but Det. Beasley declined to participate in the interview because she is on an indefinite medical leave.

Det. Lewandowski's complaint has been divided into three component parts for purposes of this analysis: (I) Lawrence Poggenburg matter; (II) PO Melanie Beasley matter and (III) PO Clayton Amborn matter. Each subsection contains findings and conclusions, leading to the final conclusion.

## II. Lawrence Poggenburg matter:

### A. Findings:

On November 28, 2011, Detective Shannon Lewandowski sent a memo by registered mail to Chief Edward A. Flynn. Ex. 2, 09/01/2011 Memo, Det. Lewandowski to Chief Flynn. In the memo, Det. Lewandowski complained about a number of events of allegedly harassing conduct by her neighbor, Lawrence Poggenburg, and about the Milwaukee Police Department's purported failure to address the problem. At interview, Det. Lewandowski stated that she never heard from Chief Flynn in response to this memo. Det. Lewandowski did not identify Chief Flynn as a target of her complaint either in writing or at interview.

Det. Lewandowski's 10/13/2015 complaint states that, on an unidentified date, she reported allegations about her neighbor to Lt. Jeffrey Norman. Det. Lewandowski's complaint asserts that "nothing occurred" as a result of this

1

- - - - - - 1042



EXHIBIT 2
WIT: MARYNELL REGAN
Halma Reporting Group, Inc.

Case 2:16-cv-01089-WED    Filed 06/24/19    Page 1 of 15    Document 91-2

conversation. At his PI-21 interview, Lt. Norman acknowledged that Det. Lewandowski raised some concerns about a neighbor, but stated that Det. Lewandowski's complaints constituted a peripheral issue in an investigation into a parking complaint involving a nearby school. Lt. Norman looked into Det. Lewandowski's allegations and found nothing he could pursue.

Det. Lewandowski's October 13, 2015 complaint further asserts that, at an undisclosed point in time, "in tears" she sought help regarding her neighbor's conduct from then-Acting Metro Division Capt. Thomas Stigler. At his PI-21 interview, Capt. Stigler acknowledged learning that Det. Lewandowski had problems with a neighbor from Dist. #3 supervisors. However, Capt. Stigler recalled only one direct conversation with Det. Lewandowski during which Det. Lewandowski spoke about difficulties with a neighbor.[1] Capt. Stigler testified that this conversation took place in a hallway and Det. Lewandowski was "emotional". He listened and advised Det. Lewandowski that her concerns amounted to a "civil matter", not a criminal case or a department rule violation that would warrant police intervention. Capt. Stigler counseled Det. Lewandowski to consider moving her residence. He promised to ask the Internal Affairs Division if there were any other options for assistance, and he did so, but they had nothing of assistance to offer.

On November 15, 2011, Det. Lewandowski applied for a restraining order against Poggenburg. Ex. 3, CCAP, Court Record Events; Milwaukee County Case No. 2011CV17284. The court granted a two-year injunction on December 7, 2011. Det. Lewandowski's 10/13/2015 complaint does not describe any problems with her neighbor or any failure to respond by the Milwaukee Police Department during the pendency of the injunction. More recently, on August 25, 2015, Lawrence E. Poggenburg was charged with misdemeanor Disorderly Conduct. Ex. 4, CCAP, Milwaukee County Case No. 2015 CM 2479. The record indicates that, on October 1, 2015, Poggenburg was ordered to have no contact with "Shannon L." and her residence. On January 11, 2016, on the State's motion, the charge was amended to a county ordinance violation. Poggenburg pled "no contest" and was levied a $25.00 forfeiture, including costs.

### B. Conclusions:

Nothing in Det. Lewandowski's October 13, 2015 complaint suggests that any member of the Milwaukee Police Department failed or declined to act due to Det. Lewandowski's sex. Rather, the concerns she raised were not actionable police matters. As proof, Det. Lewandowski's use of the civil justice system appears to have adequately addressed and resolved the problem.

---

[1] Det. Lewandowski's 10/13/2015 complaint states that adherence to the "chain of command" is what prompted her to approach Capt. Stigler. At interview, Capt. Stigler testified that, from approximately 2006 to 2011, he was the Acting Captain of the then-existing Metro Investigations Division but Det. Lewandowski did not report directly to him in that or any other capacity.

2

- - - - - - 1 0 4 3

### III. PO Melanie Beasley Matter:

A. Findings:

Det. Lewandowski's 10/13/2015 memo next claims that, on or about January 21, 2015[2], she reached out to Capt. Stigler for help again.[3] According to the complaint, the matter about which Det. Lewandowski spoke with Capt. Stigler was a complaint that Det. Lewandowski made on behalf of then-PO Melanie Beasley, a female officer stationed at Dist. #5. Det. Lewandowski alleges she told Capt. Stigler that PO Beasley "feared for her life" due to a "valid restraining order" against "another member", a male police officer. Det. Lewandowski's memo claims that the male officer often worked the same hours and assignments as the female officer. Det. Lewandowski states that the female officer experienced "great mental trauma" and called Det. Lewandowski to assist her "while on duty". Det. Lewandowski asserts that she knew that PO Beasley emailed Capt. Stigler to say that she was afraid to come to work because the male officer said he could "take her out at 1000 yards". Det. Lewandowski asserts that Capt. Stigler never contacted the female officer.

This investigator attempted to interview now-Det. Melanie Beasley by issuing an FPC PI-21, pursuant to SOP 450.60(B). On Tuesday, February 16, 2016, Det. Beasley made contact with this investigator and reported that she was unable to participate in an interview for an indefinite period of time due to health problems. Ex. 5, 02/16/2016 Email, Beasley to Pepelnjak; Ex. 6, 02/16/2016 Report, Roge Memorial Hospital. Consequently, this report has been prepared without Det. Beasley's input. Specifically, this investigator makes no finding as to Det. Lewandowski's assertion that Det. Beasley "feared for her life" or experienced "great mental trauma", since that information is uniquely within Det. Beasley's control.

At Capt. Thomas Stigler's PI-21 interview, he stated that he became aware at some point that PO Beasley and PO Robert Wilkinson were involved in a consensual relationship. He later learned that the relationship broke off, after which animosity developed between the two officers. PO Beasley spoke with Capt. Stigler about her concerns regarding PO Wilkinson. Capt. Stigler advised her that there was little he

---

[2] On January 19, 2015, Det. Lewandowski was involved in a squad accident that totaled the squad and caused personal injury to Det. Lewandowski and to her passenger, Det. Juanita Carr. Det. Lewandowski's injuries required transport to the hospital by ambulance. After the accident, Det. Lewandowski reported that she was injured in number of bodily areas, had trouble with her short-term memory, and had difficulty "articulating herself". Evidently, Det. Lewandowski was in a position to pursue a complaint on behalf of PO Melanie Beasley just two days later.

[3] Det. Lewandowski's memo asserts that she approached Capt. Stigler because he had recently become the captain of Police Dist. #5. While at Dist. #5, Capt. Stigler had no supervisory authority over Det. Lewandowski. Any inference that Det. Lewandowski contacted Capt. Stigler in adherence to the chain of command is unfounded.

Case 2:16-cv-01089-WED  Filed 06/24/19  Page 3 of 15  Document 91-2

could do to address their interpersonal difficulties. He recommended that they attempt to work the matter out between them. At her PI-21 interview, Sgt. Roberta Klein testified that she participated in serving PO Beasley with a mutual, internal no contact order as to PO Wilkinson. The identity of the person who arranged for issuance of this order is unknown to this investigator.

It should be noted that the assertion in Det. Lewandowski's 10/13/2014 memo that PO Beasley had a "valid restraining order" against PO Wilkinson is false. On January 15, 2015, PO Beasley filed for a judicial restraining order (using Det. Lewandowski as her witness) but the court denied PO Beasley's request for injunction. On March 23, 2015, the case was dismissed. Ex. 7, CCAP, Milwaukee County Case No. 2015 CV 488. CCAP does not disclose any other attempts by PO Beasley to obtain a judicial restraining order against PO Wilkinson.

### B. Conclusions:

Det. Lewandowski does not aid her gender-based discrimination claim by alleging mistreatment of Det. Beasley. Det. Beasley's situation stemmed from a romantic relationship that went sour. These situations cannot be properly or successfully addressed by the police or by the employer. In addition, the fact that Det. Beasley was unable to obtain a judicial restraining order suggests that her allegations do not rise to the level of harassment or abuse required by statute.

### IV. PO Clayton Amborn matter:

#### A. Findings:

The bulk of Det. Lewandowski's 10/13/2015 complaint involves allegations of favorable treatment accorded PO Clayton Amborn. Det. Lewandowski alleges that Fifth District Capt. Thomas Stigler failed to follow MPD rules, "used his rank and status" to contact Internal Affairs regarding PO Amborn's status and instructed the investigating officers, including IAD investigator Sgt. Roberta Klein, to "disregard the fact" that PO Amborn was on probation at the time of a serious rule violation committed by PO Amborn. Det. Lewandowski states that Capt. Stigler gave PO Amborn his personal cell phone number, which PO Amborn used to contact Capt. Stigler regarding his probationary status.

Det. Lewandowski also alleges that Sgt. Roberta Klein deviated from procedure with regard to PO Amborn. Det. Lewandowski claims that Sgt. Klein "prepared" PO Amborn for "every question" she would ask him during his PI-21 interview and "what to say in response". Det. Lewandowski asserts that Sgt. Klein permitted PO Amborn to augment the statements made in his recorded interview by adding them to her report. Presumably, Det. Lewandowski offers this evidence in support of her sex discrimination claim, as a similarly situated male comparator who received more favorable treatment than she (a female) received.

4

PO Clayton Amborn joined the Milwaukee Police Department as a probationary employee on August 5, 2013. Ex. 8, 07/02/2013 Appointment Letter, Flynn to FPC. At the time, new officers served a 16-month probationary period. PO Amborn's probationary class became regular employees on January 24, 2015. During probation, PO Amborn was off work for 55 days, from October 26, 2014 to January 4, 2015, due to illness. His immediate supervisor was Sgt. Shannon Taylor, who conducted and signed most of PO Amborn's probationary and regular evaluations. Ex. 9, Probationary and MPD Evaluations, PO Clayton Amborn.[4]

PO Amborn's February 8, 2015 evaluation (identified as a "probationary evaluation") shows his off-probation date as March 18, 2015. The same is true for his March 7, 2015 evaluation. Sgt. Taylor initiated both of these evaluations. At his PI-21 interview, Sgt. Taylor acknowledged that he knew PO Amborn missed over 50 days of work during probation. Sgt. Taylor denied that it was his responsibility as Amborn's first line supervisor to start or monitor the process of extending probation. Sgt. Taylor testified that one of the lieutenants may have filled out a document lengthening PO Amborn's probation, but Sgt. Taylor claimed he never saw the paperwork. Lt. Jeffrey Norman denied that it was his responsibility to extend PO Amborn's probation. Capt. Thomas Stigler testified that he thought the payroll department had the duty to start the process of extending probation. All witnesses testified that extending an officer's probation is a rare occurrence. Evidently, in order to formally extend an officer's probation, FPC approval is required.

On March 8, 2015, PO Amborn was involved in an off-duty property damage automobile accident while driving intoxicated. He was charged with first offense Operating While Intoxicated and Blood Alcohol Content .08%+ [§346.63(1)(a) and §346.63(1)(b) WI Stats]. PO Amborn was initially stripped of his badge and gun, but eventually returned to work on limited duty status. On March 10, 2015, Sgt. Roberta Klein opened an IAD investigation into the offenses.

At his PI-21 interview, Capt. Thomas Stigler he was aware that PO Amborn was on medical leave in late 2014. Capt. Stigler stated that it is standard practice for department and union representatives to periodically check on officers who are out on medical leave. Capt. Stigler explained that officers on leave can become suicide risks, especially if the officer has a limited personal support system. Capt. Stigler said that, while on leave, PO Amborn reported that he was "doing fine" and would return to work eventually.

[handwritten margin note: He never checked on Mckenzie.]

---

[4] PO Amborn's probationary evaluations do not appear to have been performed on a regular basis. PO Amborn's absence accounts for the lack of evaluations from October 26, 2014 to January 4, 2015, but the gaps exceed that time period. It is beyond the scope of this investigation to determine whether this practice is typical.

5

- - - - - 1046

Case 2:16-cv-01089-WED   Filed 06/24/19   Page 5 of 15   Document 91-2

When PO Amborn was charged with OWI, Capt. Stigler became concerned. He held a discussion with PO Amborn about the event, during which he stressed the severity of the offense, asked for a plan for response from PO Amborn and sent him to the department's EAP referral source. (PO Amborn described the conversation this way: "He really laid into me; he snapped on me like he was my father"). Capt. Stigler gave PO Amborn his personal cell phone number so the PO Amborn could keep Capt. Stigler informed of his progress with EAP. Capt. Stigler said this is not unusual – he recently gave another officer his personal cell phone number under similar circumstances. As to PO Amborn's status as on/off probation, Capt. Stigler could not recall how it came to his attention that probation had not been officially extended, but the fact remained that the extension process was not completed.

On April 9, 2015, Sgt. Klein issued a PI-21 "Informing the Member" form to PO Amborn. At her PI-21 interview, Sgt. Klein testified that her practice for issuing the PI-21 form is to prepare the form, contact the officer and ask him/her to report to IAD to accept service of the form. When the officer appears, Sgt. Klein takes him/her into an interview room with an IAD colleague (the subject officer is not represented), explains the interview procedure, goes over the items listed on the form (including the charges under investigation) and obtains the officer's signature on the PI-21 form. Sgt. Klein does not record this conversation and she does not ask substantive questions of the officer during this approximately 10-15 minute conference. Sgt. Klein testified that this procedure is consistent with her training at IAD and currently in use by other IAD investigators. Sgt. Klein confirmed that she followed this procedure with PO Amborn.

Sgt. Klein did state that the issue of PO Amborn's probationary status came up during their April 9, 2015 conversation. Sgt. Klein testified that she told PO Amborn that IAD was trying to find out whether he was on probation at the time of his offense. At that time, Sgt. Klein was unaware of the formal procedure for extending probation. She "may have" shown PO Amborn a performance evaluation marked "probationary" (confirmed as true by PO Amborn).[5]

Between the issuance of the PI-21 and the actual interview, Sgt. Klein investigated the question of PO Amborn's probationary status. She contacted Sgt. Shannon Taylor and asked him for documents but he failed to provide them. Later, Sgt. Klein received word from Lt. Heather Wurth and Sgt. Adam Zeiger at Dist. #5 that PO Amborn was not on probation because the FPC had not officially acted to extend his probation. In response to Det. Lewandowski's allegation that Capt. Thomas Stigler "reamed" her out, Sgt. Klein testified that she has never spoken with Capt. Stigler about PO Amborn.

---

[5]  Sgt. Klein maintained that determining PO Amborn's status as on probation or off probation was a legitimate inquiry because the subjects of PI-21 interviews often ask about possible discipline options. Sgt. Klein expressed her personal belief that termination was more likely to occur if PO Amborn were still on probation, since he could not grieve the Chief's decision.

6

Although it was originally scheduled for April 23, 2015, PO Amborn's recorded PI-21 interview actually took place on May 4, 2015. PO Amborn appeared with his MPA representative. Because the question of PO Amborn's probation status had been answered to Sgt. Klein's satisfaction by then, it was not brought up during the PI-21 interview. Sgt. Klein asked questions regarding the March 8, 2015 OWI offense and the property damage accident. PO Amborn admitted fault and took full responsibility for his actions. (In the October 13, 2015 complaint, Det. Lewandowski accuses Sgt. Klein of preparing PO Amborn as to "every question and what to say in response". Sgt. Klein denied doing so, stating that PO Amborn "answered the questions on his own"). After the recorded interview was over, PO Amborn stated that he wanted to add something to his remarks. He told Sgt. Klein that he wanted her report to indicate that he was sorry for his behavior. Sgt. Klein checked with three other IAD officers to determine if adding information not on the recording was proper. When they advised her that it was, Sgt. Klein added that information to her report.

On May 21, 2015, PO Amborn pled guilty to Operating While Intoxicated and sentenced to a forfeiture of $861.00, AODA program attendance, revocation of his driver's license for 180 days and required use of an ignition interlock device for 365 days. Ex. 10, Municipal Court Query System, Case. No 15011551.

PO Amborn was served with paperwork relative to Core Value violation, charge and investigative summary pursuant to SOP 870.20(C) on June 2, 2015. He submitted a response to the charge to IAD on June 8, 2015 [SOP 870.20(D)]. On June 23, 2015, Chief Flynn conducted a disciplinary review of the record and imposed a 30-day unpaid suspension, under SOP 870.20(E). The Personnel Order imposing the discipline was signed by the Chief on June 24, 2015 and served on PO Amborn on June 25, 2015. At his PI-21 interview, PO Amborn testified that he served his 30-day unpaid suspension and did not file a grievance.

### B. Conclusions:

Det. Lewandowski offers the above evidence to support her sex discrimination claim. Sex discrimination claimants can prove their claims using the direct evidence or the burden-shifting (indirect) method. This record is devoid of direct evidence of sex discrimination, such as sexist statements, documents or overt sexist behavior. Accordingly, Det. Lewandowski must prove sex discrimination using the indirect or burden-shifting method under which the claimant must first establish a *prima facie* case. The *prima facie* requires a complainant to show that (1) she is a member of a protected class, (2) she experienced an adverse employment action, (3) she performed her job to the satisfaction of her employer, and (4) a similarly situated individual, not in the protected class, was treated more favorably. *Puetz Motor Sales v. LIRC*, 126 Wis.2d, 168, 173, 376 N.W.2d, 372, 374-75 (Ct. App. 1985); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981).

Case 2:16-cv-01089-WED   Filed 06/24/19   Page 7 of 15   Document 91-2

The evidence Det. Lewandowski offers fails more than one of the required elements, but the fourth prong is the most decisive. Det. Lewandowski is not similarly situated to PO Amborn in any sense. As a legal matter, to be "similarly situated" requires a showing that two employees are directly comparable in "all material respects". *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002). Typically, that means that they had the same supervisor, were subject to the same standards, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Gates v. Caterpillar*, 513 F.3d 680, 690 (7th Cir. 2008), citing *Snipes v. Illinois Dept. of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002) and *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). The "similarly situated" analysis asks this question: Are there enough shared features between the individuals to permit a meaningful comparison? While the test is both flexible and contextual, there still must be enough commonalities to allow a comparison that, taken together with the other *prima facie* evidence, authorizes a jury to reach an inference of discrimination. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), aff'd, 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008).

Based on these legal principles, it cannot be found that Det. Lewandowski and PO Amborn are similarly situated. First, PO Amborn was assigned to Dist. #5 and his first line supervisor was Sgt. Shannon Taylor. Sgt. Taylor reported to one or more lieutenants, including Lt. Jeffrey Norman. Lt. Norman reported to Capt. Thomas Stigler. Therefore, PO Amborn was a direct line subordinate of Capt. Thomas Stigler. Det. Lewandowski was assigned to the Investigations Division, which is has no direct or dotted line relationship with Dist. #5. Ex. 11, MPD Organizational Chart, 2015. She has no reporting relationship with any sergeant, lieutenant or captain in any of the seven police districts. She does not report to Capt. Stigler. Second, PO Amborn was a patrol officer; Det. Lewandowski was a detective. Their job duties, compensation and qualifications are considerably different. Ex. 12, Job description, Patrol Officer; Ex. 13, Job Description, Detective. Third, PO Amborn was a rookie, not a seasoned officer. His hire date is August 5, 2013, compared with Det. Lewandowski's hire date of June 7, 1999. Det. Lewandowski had considerably more experience in the Milwaukee Police Department, a distinction that should have enhanced her understanding of the range (and the limits) of the department's authority. Fourth, Det. Lewandowski approached Capt. Stigler with a problem that was not a police problem at all, but resolvable as a civil matter; PO Amborn's OWI clearly represented a personnel issue requiring department attention.

[handwritten margin notes: "So who was discuplined"; "didn't help me but helped Amborn"]

Det. Lewandowski's use of evidence associated with PO Amborn as a male comparator to support her sex discrimination claim lacks factual and legal merit. Det. Lewandowski complaint is groundless and therefore, the complaint must be dismissed.

Dated this 3rd day of March, 2016.

WEISS BERZOWSKI LLP

By: /s/ Anna M. Pepelnjak
Anna M. Pepelnjak
WI State Bar No. 1018391

P.O. ADDRESS:
700 North Water St., Suite 1400
Milwaukee, WI 53202
Phone:    414/276-5800
Fax:      414/276-0458
amp@wbb-law.com

## ADDENDUM

A number of Det. Lewandowski's accusations are based on two recorded interviews of PO Amborn conducted by then-PO Melanie Beasley on April 24, 2015 and June 2, 2015. According to Det. Lewandowski, PO Beasley recorded these conversations using her cell phone, without disclosing the act of recording to PO Amborn. On April 24, 2015, PO Beasley questioned PO Amborn (in an undisclosed setting in which background noise makes hearing the conversation difficult) and on June 2, 2015, PO Beasley interrogated PO Amborn when they were assigned to a patrol squad. On January 29, 2016, Det. Lewandowski provided the recordings to this investigator. Ex. 14, CD, Recordings. She had previously provided a "transcript" of the recordings. This "transcript", when compared to the audio, turns out to be incomplete and inaccurate. Ex. 15, "Recording of PO Amborn and PO Beasley in squad together".

Moreover, some of Det. Lewandowski's 10/13/2015 accusations misrepresent the recorded conversations. As an example, compare one of Det. Lewandowski's allegations to the words of the recording:

Lewandowski complaint: "Officer Clayton Amborn has been bragging to other officers that "Tommy Boy" (Thomas Stigler) is giving him special treatment and does not know why but believes that Captain Thomas Stigler had a prior OWI and understands his issues.

Recording:

9

- - - - - 1050

PO Amborn: I think Capt. may have had a similar experience happen to him.

PO Beasley: Oh, I never heard of anything like that.

PO Amborn: Maybe it was before he got on the job or he knows people on the job. Because he really laid into me; he snapped on me like he was my father. And he's been very helpful ever since.

\* \* \* \* \*

PO Amborn: Everyone keeps saying to me "Wow, you're best buddies with Tommy Boy". Even like (officer's name) said, "WTF, I haven't talked to the Capt. one f'g time; he never called me."

PO Beasley: That's his name?

PO Amborn: Yeah…But he reached out to me.
\* \* \* \* \*

PO Amborn did not "brag" about receiving special treatment from Capt. Stigler, nor did he call Capt. Stigler "Tommy Boy". To the contrary, what PO Amborn did is speculate on Capt. Stigler's motive (without expressing certainty or source) and report statements made by others. Capt. Stigler offered a reasonable explanation for his conduct, namely, concern for the wellbeing of a subordinate who was in a tough situation. Det. Lewandowski draws a conclusion that is contrary to the facts.

These recordings raise issues as to Det. Lewandowski's credibility and trustworthiness.[6] First, because PO Amborn was unaware that his discussions with PO Beasley were actually interrogations, his words were not well chosen, his thoughts were poorly organized, and his language was occasionally crude. After all, PO Amborn thought he was talking to a friend, not an adversary who would seek to use his statements against him. Second, PO Beasley asked leading and suggestive questions, to which PO Amborn often responded with a casual "yeah". For all PO Amborn knew, these talks were off-the-record, as conversations are, among friends or coworkers. So, PO Amborn's perfunctory responses to PO Beasley's improper questions fail to constitute knowledgeable acceptance of the questions' foundation. Third, the incomplete and inaccurate "transcript" Det. Lewandowski provided to this

---

[6] PO Beasley's use of her cell phone to record conversations may or may not amount to a violation of policy. That question is beyond the scope of this investigation. Under SOP 750.20(A)(5), using the department's digital audio-visual recording system to eavesdrop or to record the conversations of members without the consent of all parties is prohibited. At the time of these recordings, there were no SOPs prohibiting use of personal recording devices to record conversations with coworkers or superiors.

10

investigator calls her fact-finding capabilities into question. Attention to detail, adherence to facts and getting the whole story are hallmarks of good police work. None of those attributes describes this transcript. Finally, as shown above, Det. Lewandowski's 10/13/2015 complaint mischaracterizes PO Amborn's statements to Det. Lewandowski's advantage. Det. Lewandowski's credibility suffers for the effort.

*EXHIBIT #1*

-----1053

Form PM-9E
11/09

# MILWAUKEE POLICE DEPARTMENT
## MEMORANDUM



Date: 10/13/2015

TO:  The Fire and Police Commission

FR:  Detective Shannon Lewandowski

RE:  Discrimination, Misconduct in Office

---

This report is written by Detective Shannon Lewandowski, assigned to Fusion, late shift.

This is the second attempt via memo to report the intentional disparate treatment in direct action due to gender; I and others have been discriminated within this department because we are women. While the laws and Codes of this Department are excellent in theory, they are inadequate in addressing the cover-ups, directly related to females on this police department. There is collusion in the ranks of the male Milwaukee Police Department. The selective enforcement of the law is very corrupt, illegal, and grounds for suspension or immediate dismissal of several officers of rank according to the Code of Conduct and Standard Operating Procedures.

Specifically, on or about September 1, 2011, I addressed a situation that I was having with my neighbor, Lawrence Poggenburg to my Captain. I plead for help. At the time, Lieutenant of Police, Thomas STIGLER was the Acting Captain of the Metro Division, and that is where I was assigned. In tears, I plead for help, explained the fear that I had living next to this person. I went to Lt. Stigler for help as my leader, since I had addressed my concerns and need for help to Lieutenant of Police Jeffery NORMAN first, and nothing occurred. I asked for help, however he refused to intervene, nor did he direct me to whom I could get advice, and demonstrated lack of courage, and failed leadership. I looked to Lieutenant of Police Thomas STIGLER for impartial and effective advice or service in dealing with a neighbor, following the chain of command, as we are directed. The same chain of command that I went to on December 6, 2015 and was reprimanded. I questioned Lt STIGLER days after, then a week after, and he told me he would get back to me. That never happened.

On or about January 21, 2015, I once again reached to Captain Thomas STIGLER, not because I wanted to, but because he was promoted to Captain of District 5. I informed Captain of Police Thomas Stigler that a female at his District on the late shift had a valid restraining order with another member, and that she feared for her life. This member often worked on the same shift, the same hours, and same assignments as the female he assaulted. Additionally, I informed him that the officer was experiencing great mental trauma from her experience, as I was being called to assist her while on duty, and she would like to talk to him. I am also aware that the Officer in distraught, emailed Captain Thomas STIGLER regarding her fear while coming to work, that regarding the other member told the female officer multiple times that he could "Take her out at 1000 yards, and she would not see it coming in the dark." Captain STIGLER never contacted her.

On or about March 2015, I had contact with an officer of District 5 who explained that he was on probation and had been involved in an OWI incident, when he was intoxicated and he struck two cars. Not only did Captain Thomas Stigler fail to follow the rules of the Milwaukee Police Department, but he used his rank and status to call Internal Affairs Division and order Sergeant Roberta Klein and Sergeant Adam Zieger of IAD to disregard the fact that Officer Clayton Amborn was on probation during the time of his OWI.

The first meeting with IAD and Officer Clayton Amborn was with Sergeant Roberta Klein, who was advising Officer Clayton Amborn how to answer the questions. Officer Clayton Amborn answered the questions and said aloud that he was "thrown for a loop" when he observed that Sergeant Roberta Klein had documents that he was still on probation. Officer Clayton Amborn acknowledged that he was on probation and stated that "I thought that they were proceeding as if I was not on probation?" Sergeant Roberta Klein gave him a copy of proof that he was on probation during the time of the accident. Officer Clayton Amborn then called Captain Thomas Stigler on his personal cell phone because Captain Thomas Stigler told him to call if he needed any help with this investigation. Officer Clayton Amborn spoke with Captain Thomas Stigler and Captain Thomas Stigler became irate telling Officer Clayton Amborn that he would make some phone calls and told him not to worry. Soon after Captain Thomas Stigler told Officer Clayton Amborn that he reamed out Sergeant Roberta Klein and Sergeant Adam Zieger to say that Officer Amborn will be carried as if he is not on probation.

Officer Clayton Amborn returned to IAD and Sergeant Roberta Klein prepared Officer Clayton Amborn for every question and what to say in response, and proceeded as if he was not on probation, and the probation paperwork was never discussed. Officer Clayton Amborn then stated the week following Sergeant Roberta Klein called him to see how he was doing and if he was ok, once again receiving special treatment.

During the interview the second time with Sergeant Roberta Klein, Officer Clayton Amborn stated that he forgot to mention a few things that the "Chief likes to hear when deciding the persons fate. Sergeant Roberta Klein stated that she would just put it in the report albeit she did not make those statements himself. Officer Clayton Amborn has been bragging to other officers that "Tommy Boy" (Thomas STIGLER) is giving him special treatment and does not know why, but believes that Captain Thomas Stigler had a prior OWI and understands his issues. Additionally, Officer Clayton Amborn bragged about being on probation January 24, 2015 along with his class, but if this got out, he would claim it was a clerical error.

Officer Amborn was out sick off of the payroll to answer the questions/preparing him in a portion of his field training, thus his probation was extended 55 days. At the time of his OWI, Officer Clayton Amborn had 8 days left on his probation.

Captain Thomas Stigler not only gave Officer Clayton Amborn his personal cell phone number to call if he needed any help, he talked to him in the office, fixed or discarded the paperwork of his probation, directed Sergeant Roberta Klein at IAD to disregard the probation when he received a PI-21. Officer Clayton Amborn did respond to IAD for the violation, and when he was on the third floor of the Academy talking on recording explaining the accident to Sergeant Roberta Klein, he explained that his Captain, Captain Thomas Stigler, fixed this paperwork and he was "no longer on probation." Additionally Officer Amborn bragged about the fact that he was in an OWI, that he was drunk, and that he caused additional damage to two other vehicles. Officer Clayton Amborn then bragged and laughed about the fact that he has drank and drove drunk from a young age, and now had to "purchase Captain Stigler a bottle of booze or Scotch and write a damn letter to "Kiss the Chiefs' Ass."

Officer Clayton Amborn was off the payroll while on probation, IAD went to his house and removed is gun and badge from him. When he returned to work after being off approximately 55 days, he returned to District . without his gun/badge and then those items were returned to him within one day. Officer Amborn knew that he was on extended probation, and during an official evaluation that Officer Amborn signed. This evaluation was explained and signed in the presence of Sergeant Shannon Taylor.

Furthermore, after Officer Clayton Amborn was in a OWI accident, Sergeant Justin Sebestyen informed roll-call at District 5 on March 8, 2015, "We are going to be down another officer because one of your fellow officers got arrested while on probation; and he doesn't have a leg to stand on, and he cannot appeal, and he is going to lose his job." Sergeant Justin Sebestyen also made it very clear that we are not to drink and drive and can call for a ride via the Department.

Likewise, I was involved in an on-duty accident, that of which I was not supported in any way, the Department has failed to pay my medical bills and leave, causing me additional stress and additional medical problems, delaying my healing process. I was also reprimanded for having a cell phone at a public hearing and disciplined on June 3, 2015. Although, I have returned to work, I still am without my police powers, and have not been given my gun/badge back with no explanation. This is also part of the retaliation that I continue to receive, and is obviously discriminatory as male officers like Clayton Amborn are treated with special and different treatment. The treatment that the female officer at his District received while having a valid restraining order is reprehensible, shameful much less his actions dishonerable.

I work in an oppressive environment with a different set of rules for men and women. The actions of Captain Thomas Stigler, breach the Code of Conduct, exercising his powers to defraud the Department while in public office, as he used his status to intervene personally with Officer Amborn. Moreover, Captain Stigler has discriminated against more than one female under his supervision, with different standards for men and women. Officer Amborn lied to IAD, and Captain Thomas Stigler covered up for him. Officer Amborn is serving the public when he should be terminated, much less exercising police powers on the public. Captain Thomas Stigler provided his "personal" cell phone number stating to Officer Amborn, "Call or text me for whatever you need" thus providing assistance for a male officer who did something criminal, as opposed to females who actually needed him to be a leader and provide a safe work environment or at least equal treatment.

Furthermore, Officer Robert Wilkinson was never placed on desk duty/suspended/admin. suspension, while the restraining order was valid much less during the investigation and Sergeant Klein used her powers to dismiss and mislead the investigation, willfully and knowingly.

I would like this complaint investigated by an outside agency, as these actions have impacted not only my work, but created great concern due to the continued abuse of power of this Police Department, Internal Affairs Division, making the work environment, a untrustworthy and hostile work place, everyday.

Respectfully submitted,

Detective Shannon Lewandowski
012860