UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANNON LEWANDOWSKI,

    Plaintiff,

v.                              Case No. 16C1089

CITY OF MILWAUKEE,

    Defendant.

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that Defendant City of Milwaukee, represented by City Attorney Grant F. Langley, by Assistant City Attorney Robin Pederson, hereby files this brief in reply to plaintiff's response (ECF Doc. 86-88, 91-92) to defendant's motion for summary judgment (ECF Doc.76-80).

**A. Reply to Lewandowski's Section I – ECF Doc. 92, 1-5.**

As an initial point of order, the City reasserts, as it had in its brief in support of its motion for summary judgment (ECF Doc. 77) that its motion in relation to Lewandowski's Title VII claims is not based upon claim preclusion a/k/a *res judicata*, but upon issue preclusion a/k/a *collateral estoppel*. Lewandowski makes repeated references to claim preclusion and *res judicata* throughout her response brief, almost none of which having any bearing on the motion at issue. The City will only reply here where her arguments in relation claim preclusion have some conceivable connection to the instant matter.

As a second point of order, Lewandowski makes numerous references to Wis. Stat. § 62.13. That is the statute regarding police discipline appeals that applies to cities other than those

of the first class, i.e., the City of Milwaukee. The statute applicable to the City is § 62.50. The City will respond here treating any reference to § 62.13 as a reference to § 62.50.

Lewandowski asserts that § 62.50 does not provide for discovery (ECF Doc. 92, 4); however, it is clear in the statute that the member is to be provided "any exculpatory evidence in the chief's possession related to the discharge or suspension." Wis. Stat. §62.50(13). This is analogous to the duty of disclosure of evidence in criminal matters per *Brady v. Maryland*, 373 U.S. 83 (1963), and the cases that follow, which arguably provided Lewandowski an even greater access to evidence than under ordinary civil procedure law. Regardless, the record shows that she engaged in discovery. (ECF Doc. 77, 9.) Lewandowski should not now be rewarded with another opportunity to go to trial because she failed to show diligence in pursuing her defenses earlier.

Lewandowski cites to the transcript of her FPC appeal hearing in support of a cryptic allegation of being denied by the FPC to submit evidence of sex discrimination and retaliation. (ECF Doc. 92, 4.) Reference to her cited portion only shows that her own counsel posed an objection, which was overruled, and Lewandowski was permitted to testify. There is no indication in the record of Lewandowski ever being denied to show evidence as asserted.

Lewandowski argues against the proposition that § 62.50 is the exclusive remedy to Title VII "to the extent that the [City] implies" that it is the exclusive remedy. (ECF Doc. 92, 4.) It should be a simple matter for the Court to dispense with this line of argument, because the City does not imply or argue that it is the exclusive remedy, and in fact, it acknowledged with significant analysis and citation to law that it is not the exclusive remedy. (ECF Doc. 77, 7.) Again, the City's arguments for dismissal of the Title VII claims relate to issue preclusion not claim preclusion.

2

Lewandowski argues that it would be harsh and essentially unfair if by operation of preclusion she were denied opportunity to litigate her claims in federal court. (ECF Doc. 92, 5.) The City did not select Lewandowski's forum or litigation strategy. If Lewandowski wished to avoid potential application of issue preclusion, she could have foregone her appeal under § 62.50 and the Wisconsin Fair Employment Act and instead pursued relief in federal court. She was represented by counsel throughout her appeals and should have had the benefit of their counsel the best way forward in asserting her claims. Lewandowski should not now be permitted to press her claim simply because in retrospect her litigation strategy was not as effective as she would have hoped.

Lewandowski argues that she must have had the ability to bring a Title VII claim before the FPC or at appeal to the circuit court in order for preclusion to apply. (ECF Doc. 92, 5.) She does not specify what type of preclusion she is referring to, but it appears to be claim preclusion. Again, the City concedes that point of law, but Lewandowski's argument continues to miss the crux of the City's actual argument – whether the claims are the same does not matter, what does matter is whether the issues are the same. There is no requirement that Title VII claims were litigated in the earlier forum for the issues resolved in the earlier forum to be applied to the issues in a later forum. (*See* ECF Doc. 77, 6-8.) It is clear that the issues of sex discrimination and retaliation could have and to an extent were brought before the FPC and circuit court, and that those issues were decided in favor of the City. (ECF Doc. 77, 9-11.)

**B. Reply to Lewandowski's Sections II and III – ECF Doc. 92, 6-19.**

Lewandowski states that "[b]ecause judging the credibility of the witnesses on the issue of motive would be required here in order to grant the motion, this Court should deny

3

Case 2:16-cv-01089-WED   Filed 07/12/19   Page 3 of 8   Document 94

Defendant's motion." (ECF Doc. 92, 7.) This appears to be the central argument of this portion of her brief. The City disagrees with this premise and conclusion.

Lewandowski does not make any meaningful distinction between her constitutional claims under the 14th Amendment (which are essentially the same sex and retaliation claims as her Title VII claim (*see* ECF Doc. 77, 11 n.1)) and any possible *Monell* claim. Following her argument and analysis therefore becomes a challenge as she does not appear to differentiate between the issues and mixes the law between the two throughout this portion of the brief.

To the extent that Lewandowski presses her Title VII and 14th Amendment claims here, her premise and conclusion are flawed because they are moot due to issue preclusion. To the extent that she presses her *Monell* claim, it is flawed because she still has not identified the policy at issue to which her premise and conclusion should relate, and because Lewandowski appears to be arguing a disparate impact claim, which are not permitted under § 1983.

The issue in this case is whether Lewandowski was terminated because she is female, or because she engaged in protected activity related to making complaints regarding female discrimination, or both. There is no policy identified by Lewandowski that relates to this, only conclusory statements, uncorroborated hearsay, and an assortment of perceived wrongs against her that do nothing to establish the existence of a practice, policy or custom, much less link her termination to discrimination or retaliation as opposed to legitimate nondiscriminatory considerations.

Lewandowski asserts that the department and the detective bureau are mostly male (ECF Doc. 92, 9); this has no readily apparent legal significance. She asserts that MPD holds females to a higher standard and treats them worse than males, without evidentiary support. (ECF Doc. 92, 9.)

Lewandowski complains of poor treatment by MPD in 2005 regarding a problem in her personal life, which is three years before Chief Flynn even joined MPD. (ECF Doc. 92, 9.)

Lewandowski claims to have filed a complaint against Chief Flynn, which does produce any record of, nor does the City possess or have knowledge related to its existence. (ECF Doc. 92, 10.) (Pederson Decl. July 12, 2019 ¶3.)

Lewandowski admits sending the disrespectful and unprofessional email contained entitled "I am not happy" through numerous inappropriate channels including the Chief himself. (ECF Doc. 92, 10; ECF Doc. 86-5.) She states she did this pursuant to the Chief's "open door policy," which she does not produce evidence of; the existence of such a policy being nonsensical in a para-military organization which clearly relies and requires its members to utilize the chain of command. Regardless, the relevance of this to her claims is entirely unclear. The memo of the lieutenant who counseled her on the issue speaks for itself and makes clear that Lewandowski was subjected to scrutiny because of her actions, not her sex or upon retaliation. (ECF Doc. 82-6.)

Lewandowski next gets into her complaints regarding her interactions with and concerning PO Beasley. (ECF Doc. 92, 11-12.) Her version of events is one-sided and more significantly, irrelevant. The City will simply direct the Court to the independent investigation report for the investigator's treatment of these allegations. (ECF Doc. 80-17.) Even if Lewandowski is prepared to show that there was a conspiracy against her involving every level of MPD and the circuit court, these allegations are for naught as they have nothing to do with the basis for her termination, and she has no evidence to show otherwise.

Lewandowski discusses the car accident underlying the matter that led to the interview and her statements that led to her charge of untruthfulness and termination. (ECF Doc. 92, 12-

5

15.) Lewandowski seeks to relitigate the facts and issues here – these have already been adjudicated. Nothing Lewandowski asserts here does anything to advance her claims in the instant matter.

Lewandowski provides more uncorroborated hearsay in relation to allegations of mistreatment of other females, some of whom are not even members of the MPD, with on explication on how this establishes a relevant policy, or helps her claim or defeat the City's motion. (ECF Doc. 92, 15-18.)

Lewandowski asserts that males in the MPD were treated more favorably than her, but provides no real analysis or any attempt to point to a similarly situated person treated more favorably outside her of classifications. (ECF Doc. 92, 18.)

Finally, in this section, Lewandowski asserts that the City's reasons for her termination are pretextual. (ECF Doc. 92, 18.) The evidence she points to in support of this proposition is her proposed statement of facts, ¶¶ 17-40, and ¶¶ 92, 93, 96, 100, as creating genuine disputes of material fact as to causation as they relate to Chief Flynn's credibility and truthfulness. (ECF Doc. 87.) A review of this portion of her proposed facts does nothing to establish any policy, practice or custom, cognizable under the law to support her claims, nor does it raise any dispute as to any material factual issue that would be admissible as evidence that could cause a reasonable juror to find in her favor by determining that her termination had anything to do with any consideration other than the proffered legitimate nondiscriminatory reasons.

**C. Reply to Lewandowski's Sections IV – ECF Doc. 92, 19-31.**

Lewandowski does not offer anything new or novel here, and the City primarily relies upon the arguments set forth in its brief regarding the issues and claims discussed here. (ECF Doc. 77, *passim, but see specifically* 20-22.) Her examples are too remote in time, too attenuated

6

from the termination, and fail to establish even a preponderance of the evidence. It is not sufficient that she can point to the fact that she made some generalized complaint implicating her sex, and then at some subsequent point in time she suffered an adverse job action to establish a causal connection between the two. (*See* ECF 77, 21, *citing Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014).)

The City further notes that this is the first instance where Lewandowski has set forth specific allegations, despite a discovery request for her to do so, where in response she obliquely referenced over 2900 pages comprising 181 documents. (ECF Doc. 77, 22.) Regardless, much of what she references would not qualify as protected activity, but again simply falls into the category of an assemblage of a series of perceived wrongs against her.

Lewandowski asserts that the City's reasons for her termination are pretextual. (ECF Doc. 92, 28.) The evidence she points to in support of this proposition is her proposed statement of facts, ¶¶ 17-40; she also states that ¶¶ 92, 93, 96, 100, create genuine disputes of material fact as to causation as they relate to Chief Flynn's credibility and truthfulness. (ECF Doc. 87.) A review of this portion of her proposed facts does nothing to establish any policy, practice or custom, cognizable under the law to support her claims, nor does it raise any dispute as to any material factual issue or admissible evidence that could cause a reasonable juror to find in her favor by determining that her termination had anything to do with any consideration other than the proffered legitimate nondiscriminatory reasons.

Lewandowski then, as before, provides more uncorroborated hearsay in relation to allegations of mistreatment of other females, some of whom are not even members of the MPD,

7

with on explication on how this establishes a relevant policy, or helps her claim or defeat the City's motion. (ECF Doc. 92, 28-31.)

Finally, Lewandowski states, reproduced here in full, "Employees who did not complain of discrimination but committed worse offenses were not terminated." (ECF Doc. 92, 31.) Clearly, this must fail any reasonable standard for the production of evidence in support of her claims, which is a significant failing considering that it is an essential element of a disparate treatment claim. (*See* ECF Doc. 77, 16-17, *citing Coleman v. Donahoe*, 667 F.3d 835, 846–47 (7th Cir. 2012).)

Dated and signed at Milwaukee, Wisconsin 12 day of July, 2019.

GRANT F. LANGLEY
City Attorney

s/ ROBIN A. PEDERSON
Assistant City Attorney
State Bar No. 01045759
Attorneys for Defendant
Milwaukee City Attorney's Office
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
Email: rpederson@milwaukee.gov

1032-2016-1768:260812