# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SHANNON LEWANDOWSKI,

        **Plaintiff,**

    **v.**                    **Case No. 16-CV-1089**

CITY OF MILWAUKEE,

        **Defendant.**

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Shannon Lewandowski was discharged from her position as a detective with the Milwaukee Police Department on December 16, 2015. In this action, she brings claims of employment discrimination and retaliation, as well as claims for violations of the First and Fourteenth Amendment. Her former employer, defendant City of Milwaukee, has moved for summary judgment. That motion is fully briefed and ready for resolution. All parties have consented to the jurisdiction of a magistrate judge.

### 1. BACKGROUND

Lewandowski was an employee of the City of Milwaukee in the Milwaukee Police Department (MPD) and most recently held the rank of detective. (ECF No. 88, ¶ 1.)

On January 19, 2015, while on duty and operating a department owned vehicle, Lewandowski was involved in an auto collision with a vehicle owned and operated by a civilian. (ECF No. 88, ¶ 2.) Soon thereafter, the MPD Internal Affairs Division (IAD) opened an internal investigation targeting Lewandowski regarding an allegation of misconduct in public office as it related to the circumstances surrounding the auto collision—specifically, whether Lewandowski was operating her department vehicle according to state law and department policy, and whether she was responding to official department business at the time of the collision. (ECF No. 88, ¶¶ 4-5.)

Several months later, on or around November 2015, the IAD expanded its investigation to look into an allegation that Lewandowski was not forthright and candid in connection with the accident investigation and related internal investigation. (ECF No. 88, ¶ 7.) Edward Flynn, Milwaukee's Chief of Police from 2008 to 2018 (ECF No. 88, ¶ 49), was the final decision-maker regarding discipline decisions, including suspension, demotion and discharge of sworn members of the MPD (ECF No. 88, ¶ 50). Chief Flynn reviewed the internal investigation against Lewandowski. (ECF No. 88, ¶ 51.) On or about December 16, 2015, Chief Flynn found Lewandowski guilty of three violations of department policies. (ECF No. 88, ¶ 9.) Having found Lewandowski guilty of the three charges, the Chief issued a five-day suspension relating to the charge that Lewandowski failed to use her time to accomplish the mission of the MPD, a 30-day suspension relating to the charge that she failed to operate a department vehicle in a safe manner, and

discharge for the charge of failure to be forthright and candid in connection with an administrative inquiry or report. (ECF No. 88, ¶¶ 10, 53.)

Lewandowski appealed the Chief's decision to the Milwaukee Fire and Police Commission (the Commission). (ECF No. 88, ¶ 12.) The Commission held a hearing on Lewandowski's appeal on August 10 and 11, 2016. (ECF No. 88, ¶ 13.) Applying the seven "just cause" factors found in Wis. Stat. § 62.50, the Commission unanimously found that Lewandowski was guilty of all of the charges filed against her and that the discipline imposed by the Chief, including the discharge, should be sustained. (ECF No. 88, ¶ 17.)

According to the Commission's written decision, between 12:30 and 1:00 AM on January 19, 2015 (the day of the accident), Detective Juanita Carr was assigned by Lieutenant Sean Hanley to assist in a shooting investigation. (ECF No. 80-6, ¶¶ 3-4.) Hanley instructed Carr to go to the shooting victim's residence and attempt to recover a firearm. (ECF No. 80-6, ¶ 4.) He told her to not go alone, but to go quickly before the victim was released from the hospital. (ECF No. 80-6, ¶ 4.)

Lewandowski agreed to go with Carr. But rather than going directly to the shooting victim's residence as instructed, and without getting prior approval from anyone, Lewandowski decided to first go to another district station to meet with a female police officer, Melanie Beasley, to discuss a personal matter and Beasley's interest in getting a restraining order against another police officer. (ECF No. 80-6, ¶ 8.)

In the first statement she gave to investigators, Lewandowski said that on their way to meet Beasley she received a call from her nineteen-year-old son, Jordan Lewandowski, who told her that he had just been stopped by the police near the University of Wisconsin – Milwaukee (UWM). Lewandowski decided to drive to UWM to meet her son and told him to call her back once he had more information as to specifically where he was. (ECF No. 80-6, ¶ 8.) She was driving an unmarked squad car at 15-miles-per-hour above the speed limit and activated its emergency lights to get other cars to move out her way when another vehicle failed to stop at a red light and struck the squad. (ECF No. 80-6, ¶¶ 8, 27.) Lewandowski later said that the reason her emergency lights were activated at the time of the accident was because she turned them on to signal to a car not to pull out in front of her and must have left them on.

Lewandowski later denied telling investigators she was going to meet her son, insisting that everyone who said she had said this had either misunderstood her or was lying. (ECF No. 80-6, ¶ 15.) But the police officer who had stopped Jordan, who did not work for MPD, testified that Jordan told him that his mother was on her way to meet them. And a sergeant at the scene of the accident told a responding lieutenant that Lewandowski had told others that she was on her way to meet her son by UWM when the accident occurred. (ECF No. 80-6, ¶ 6.) Finally, Lewandowski acknowledged that she asked Jordan to call her back once he knew where he was, which the Commission

concluded supported the testimony of other witnesses that Lewandowski said she intended to meet him. (ECF No. 80-6, ¶¶ 15, 29(2).)

At the hearing before the Commission Lewandowski attacked the credibility of many of the witnesses involved. For example, she attempted to impeach a lieutenant by claiming he was lying when he said he visited her in the hospital. But Lewandowski's claim was contradicted by witnesses who saw the lieutenant at the hospital, including Lewandowski's own son.

The Commission concluded that, "[w]hen Lewandowski agreed to assist Carr with her assignment, she effectively put herself on the assignment and was obligated to carry it out in a timely fashion. When Lewandowski chose to go to two other locations prior to completing the assignment, she was pushing off the assignment without permission and into overtime. Detectives are not permitted to change or rearrange their assignments without permission from a supervisor." (ECF No. 80-6, ¶ 9.) She violated department policies by failing to promptly complete the assignment and deciding instead to first go meet with Beasley, and then again changing course to go meet with her son. Even at the hearing Lewandowski did not initially acknowledge that she understood and agreed that a detective is obligated to follow directives from superiors. (ECF No. 80-6, ¶ 31.) But, most significantly, the Commission concluded that Lewandowski was lying when she later denied she was on her way to meet with her son when the accident occurred. The

Commission also found there was also reason to believe that Lewandowski testified falsely about hearing that Carr had been dispatched to a hospital. (ECF No. 80-6, ¶ 29(3).)

The Commission stated, "the need for police officers to follow the directives of their supervisors, obey the rules governing the use of police vehicles, and most importantly, be truthful in the performance of their duties, in writing official reports, and in answering question[s] during an inquiry, is self-evident.… [U]ntruthfulness damages the effectiveness of the police department particularly and law enforcement generally, to be credible and convincing. The seriousness of this violation cannot be understated." (ECF No. 80-6, ¶ 31.)

Lewandowski filed this action on August 15, 2016, four days after the Commission's decision affirming her termination. (ECF Nos. 1; 88, ¶ 17.) Her complaint has three claims. First, it alleges that the City "unlawfully discriminated, harassed and retaliated against Plaintiff on the basis of her sex in violation of her equal employment rights and equal protection rights under the First and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. §§ 1983, 1988 *et al.*" (ECF No. 1, ¶ 199.) Second, it alleges that the City "discriminated against Plaintiff based on her sex in her terms and conditions of employment and in terminating her in intentional and/or reckless disregard of her federally protected rights under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e *et seq.*" (*Id.*, ¶ 202.) And it alleges that the City "intentionally retaliated against Plaintiff in the terms and conditions of her employment

and by terminating her employment for opposing sex discrimination in the workplace in intentional and/or reckless disregard of her federally protected rights under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e-3 *et seq.*" (*Id.*, ¶ 205.)

On October 7, 2016, the City moved to stay this lawsuit pending a written decision from the Commission and resolution of Lewandowski's appeal of the Commission's decision to the Milwaukee County Circuit Court. (ECF No. 12.) That motion was granted. (ECF No. 15.)

Lewandowski then appealed the Commission's decision to the Milwaukee County Circuit Court. On June 6, 2017, the Circuit Court affirmed the Commission's decision. (ECF No. 88, ¶ 34.) Lewandowski appealed that decision to the Wisconsin Court of Appeals, but the appeal was dismissed for failure to pay the filing fee. (ECF No. 88, ¶ 37.)

On October 23, 2017, this court lifted its stay. (ECF No. 27.)

The City gives several reasons why it is entitled to summary judgment: (1) the Title VII and § 1983 claims are barred as a result of issue preclusion; (2) the § 1983 claim is also barred as a result of claim preclusion; (3) the Title VII sex discrimination claim fails on its merits; (4) the Title VII retaliation claim fails on its merits; and (5) there is no evidence that a policy or custom of the City caused an alleged constitutional violation.

## 2. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

## 3. ANALYSIS

### A. Preclusion

The City argues that Lewandowski's claims are barred under the doctrine of issue preclusion. She litigated the underlying issues administratively before the Fire and Police Commission and the Commission's decision was affirmed by the Circuit Court. It also argues that claim preclusion bars Lewandowski's constitutional claims.

The court finds it unnecessary to address these arguments because it is clear that Lewandowski's claims fail on the merits.

## B. Title VII

### a. Discrimination

"Title VII makes it unlawful for an employer to discharge or discipline an employee because of that person's … sex, among other grounds." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (citing 42 U.S.C. § 2000e). If the plaintiff presents evidence from which a reasonable finder of fact could conclude that the plaintiff's sex caused the discharge or discipline, the court must deny the defendant's motion for summary judgment. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Lewandowski attempts to prove discrimination under the familiar burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff presents "a prima facie case of discrimination by showing '(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated employee not in the protected class was treated more favorably." *Rozumalski v. W.F. Baird & Assocs.*, No. 18-3586, 2019 U.S. App. LEXIS 25081, at *15 (7th Cir. Aug. 22, 2019) (quoting *Coleman*, 667 F.3d at 845). "If the plaintiff establishes a prima facie case, a presumption of discrimination is raised, and the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its action." *Burks v. Wis. DOT*, 464 F.3d 744, 751 (7th Cir. 2006). If the employer proffers a legitimate, nondiscriminatory reason for its action, the burden of production returns to the plaintiff to show that the employer's

reason is pretextual. *Rozumalski*, 2019 U.S. App. LEXIS 25081, at *13. The ultimate burden of persuasion is at all times on the plaintiff. *Id.*

There is no dispute that Lewandowski is a member of a protected class—female. Nor is it disputed that she suffered an adverse employment action. Nor does the City contend that Lewandowski's job performance failed to meet the City's legitimate expectations. Nonetheless, Lewandowski cannot present a prima facie case of discrimination unless she can show that one or more similarly situated employees not in the protected class were treated more favorably.

> Determining whether other employees are similarly situated requires a "'flexible, common-sense' examination of all relevant factors." [*Coleman*, 667 F.3d at 846] (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). While the comparability of other employees is a context-dependent question often suitable for a jury, when the facts of a case suggest that no reasonable jury could see enough commonality for a meaningful comparison between the employees, summary judgment is appropriate. *Id.* at 846-47. Employees must be similar "in all material respects," including engaging in identical or comparable misconduct, in order to reveal whether differential treatment is occurring. *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009).

*Rozumalski*, 2019 U.S. App. LEXIS 25081, at *15-16.

Lewandowski's brief does not contain any material discussion of similarly situated employees. (ECF No. 92 at 18.) She asserts simply, "Male employees who committed worse offenses than Plaintiff were not terminated. Numerous male comparators who committed infractions far more serious than Plaintiff were not terminated." (ECF No. 92 at 18.) Both of these sentences are supported only by a citation to paragraph 96 of

Lewandowski's proposed findings of fact. That proposed finding of fact states, in relevant part, "Male employees of Defendant who committed worse offenses than Plaintiff were not terminated. Plaintiff identifies numerous male comparators who committed infractions far more serious than what Plaintiff was accused of and fired for, but were not terminated." (ECF No. 95, ¶ 96.) She supports this proposed finding of fact only by citing to her own declaration (ECF Nos. 86, 91 (apparently the same declaration was filed twice with different attachments)) and a handful of newspaper articles (ECF Nos. 86-36, 86-37, 86-38, 86-39, 86-40, 86-41).

Only by looking to her declaration can the court identify any material discussion of any allegedly similarly situated male employees. When she offers any sort of explanation of the basis for the statements in her declaration, it tends to be along the lines of, "I knew about this from other officers" (ECF No. 91, ¶ 202 k.), or, "I heard about this conduct from other officers and I have news accounts of his conduct" (ECF No. 91, ¶ 202 i.). But a declaration based on hearsay is insufficient to support a proposed finding of fact. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). And the news reports that she appended to and addressed in her affidavit are obviously hearsay. As such, the court disregards them. *See, e.g., Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 840 (N.D. Ill. 2017); *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp.

2d 414, 449 (E.D.N.Y. 2013) (citing *Delrosario v. City of New York*, 2010 U.S. Dist. LEXIS

20923, 2010 WL 882990, at *7 (S.D.N.Y. Mar. 4, 2010); *Ladner v. City of New York*, 20 F. Supp.

2d 509, 519 (E.D.N.Y. 1998) *aff'd*, 181 F. 3d 83 (2d Cir. 1999) (unpublished table decision));

*Estate of Gregory Lee Smith v. Silvas*, 414 F. Supp. 2d 1015, 1020 n.5 (D. Colo. 2006).

Beyond this first fatal defect, Lewandowski must present details from which a

reasonable finder of fact could conclude that any of the alleged comparators are similarly

situated to her. Lewandowski's proposed findings of fact cite to 30 paragraphs in her

declaration that refer to allegedly similarly situated male employees (ECF No. 95, ¶ 96

(citing ECF No. 91, ¶¶ 13, 124, 187-88, 196-202)), including the 19 subparts of paragraph

202. Therefore, the court will focus on these paragraphs in determining whether

Lewandowski has presented evidence of similarly situated male employees who were

treated more favorably than she was.

Certain details needed to prove that the male employees discussed are similarly

situated to Lewandowski are missing from the information she cites. For example, she

often does not identify the rank of the allegedly similarly situated male employee. But

the employee's rank matters; a police officer may reasonably be subject to less-stringent

standards than a detective. *See Chapman v. Milwaukee Cty.*, No. 15-CV-14, 2016 U.S. Dist.

LEXIS 108336, at *22 (E.D. Wis. Aug. 15, 2016) (citing *Rioux v. City of Atlanta*, 520 F.3d 1269,

1281 (11th Cir. 2008)); (*see also* ECF No. 80-17 at 72-82 (job descriptions of police officer

and detective)). Without knowing the male employees' ranks, the court cannot conclude that they are similarly situated to Lewandowski.

Also missing is the date on which each of the supposedly similarly situated male employees engaged in alleged misconduct. Without that information, Lewandowski has failed to demonstrate that the male employees were supervised by the same person, Chief Flynn, who was Chief from only 2008 to 2018. *Ezell v. Potter*, 400 F.3d 1041, 1049-50 (7th Cir. 2005) (noting that identifying a comparator "normally entails a showing that the two employees dealt with the same supervisor"). Although Lewandowski asserts in her brief that Chief Flynn was the decision-maker for all of the men she identified as comparators (ECF No. 92 at 18), that assertion is demonstrably not true as to at least two of the male employees. Lewandowski alleges that one male employee's misconduct occurred in 1994 (ECF No. 91, ¶ 202 j.), which was long before Flynn became Chief. A second male employee identified by Lewandowski was actually disciplined by Chief Flynn's predecessor. (ECF Nos. 77 at 19; 80-23 at 1.) Thus, the court cannot accept Lewandowski's blanket assertion that Chief Flynn was the decision-maker for all of the male employees to whom she compares herself.

The alleged misconduct attributable to the other male employees is also often dissimilar to the misconduct that led to Lewandowski's termination. "Conduct may be comparably serious if it violates the same rule or is of a similar nature." *Silva v. Wisconsin*, 917 F.3d 546, 559 (7th Cir. 2019). Setting aside paragraphs in Lewandowski's declaration

that merely recount what was contained in a news report, only nine paragraphs (discussing seven male employees) suggest that an alleged comparator's misconduct involved some type of untruthfulness (ECF No. 91, ¶¶ 13, 187, 188, 202 b., l., m., o., p., and q.), which was the misconduct that resulted in Lewandowski's termination. Three of those men actually were fired by the Chief (ECF Nos. 91, ¶¶ 13, 187; 80-23), and thus cannot be said to have received more favorable treatment.[1] Although these male employees were subsequently reinstated by the Fire and Police Commission, Lewandowski's claim is directed at Flynn. (ECF No. 92 at 18 ("Chief Edward Flynn was 'the final decisionmaker regarding discipline decisions regarding suspension, demotion, and discharge of sworn members of the department,' and thus the common decision-maker for Plaintiff and these male officers who were treated better than her despite committing worse violations of the rules.").) Lewandowski does not develop any argument that the three female commissioners who unanimously upheld Chief Flynn's decision to terminate her discriminated against her on account of her sex.

Lewandowski claims that one male lieutenant is similarly situated to her because he lied in her case and was not disciplined. (ECF No. 91, ¶ 202 o.) But all she offers to support her claim that this lieutenant was untruthful is her own declaration, in which she

---

[1] Lewandowski contradictorily asserts, first apparently recounting a news report, that one male officer "was fired by the Chief for lying during an investigation but reinstated by the Fire & Police Commission" (ECF No. 91, ¶ 196), but then later states that he "was never fired" (ECF No. 91, ¶ 202 q.). The defendant has produced evidence that this officer was fired, albeit by Chief Flynn's predecessor. (ECF No. 80-23.)

states, he "lied in my case; he never came to the hospital and talked to me although he claimed that he did." (ECF No. 91, ¶ 202 o.) The Commission explicitly concluded that the lieutenant had not lied. (ECF No. 80-6, ¶ 24.) The Chief could hardly discipline an employee for lying when the Commission that oversees the Chief's disciplinary decisions found the employee had not lied.

As to another allegedly similarly situated male employee, Lewandowski asserts only that he "changed his story" when questioned about an incident where he allegedly pulled a gun in a road rage incident, but she provides no further details of his alleged untruthfulness. (ECF No. 91, ¶ 202 b.) She also fails to demonstrate that her statement that he "changed his story" is based on her personal knowledge. All she says is, "I have news accounts of his conduct." (ECF No. 91, ¶ 202 b.) She also fails to identify the rank of this male employee or that he was supervised by Chief Flynn.

Lewandowski also asserts that "I know" that another male employee "committed perjury in 2010 in formal court proceedings." She offers no other details, including the employee's rank, the context of the alleged perjury, how she allegedly "knows" that he committed perjury, whether she reported this alleged perjury to anyone, or whether Chief Flynn was aware of it. (ECF No. 91, ¶ 202 l.)

With respect to yet another male lieutenant, she alleges his wife called the police reporting that the lieutenant "was drunk and breaking in the door." Ambiguously and baldly, Lewandowski asserts "the story changed." (ECF No. 91, ¶ 202 m.) But whose story

changed? How did it change? How does Lewandowski know the story changed? She provides no answers to any of these questions, nor does she ever say that Chief Flynn knew that "the story changed."

Having failed to muster evidence from which a reasonable finder of fact could conclude that Lewandowski was treated more severely due to her sex, the City is entitled to summary judgment on her Title VII discrimination claim.

### b. Retaliation

Lewandowski alleges that the City retaliated against her by terminating her employment after she complained about sex discrimination. (ECF No. 92 at 23.) "To prevail on a retaliation claim requires 'proof that the desire to retaliate was the but-for cause of the challenged employment action.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013)); *see also Appleton v. City of Gary*, No. 19-1440, 2019 U.S. App. LEXIS 22578, at *8 (7th Cir. July 30, 2019) (citing *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)).

> There are two ways of proving a *prima facie* retaliation claim and each requires proving different elements. A plaintiff opting for the "direct" method must present evidence that (1) she engaged in a protected activity, (2) she suffered an adverse action, and (3) a causal connection exists between the two. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). The "indirect" method, as the name implies, allows the plaintiff to establish a *prima facie* case without establishing a causal link. This method requires a plaintiff show (1) she engaged in a protected activity, (2) she performed her job duties according to her employer's legitimate expectations, (3) she suffered an adverse action, and (4) she was treated less

favorably than similarly situated employees who did not engage in the protected activity. *Id.*

*Swyear v. Fare Foods Corp.*, 911 F.3d 874, 885 (7th Cir. 2018).

Lewandowski does not articulate under which method she is proceeding. The portion of her brief addressing her retaliation claims includes the headings, "Defendant's Proffered Reasons for Termination are Pretextual" (ECF No. 92 at 28) and "Defendant Did not Retaliate Against Officers Who Did Not Engage in Protected Activity" (ECF No. 92 at 31). These arguments are relevant to both the "direct" and "indirect" methods.

More importantly, although Lewandowski repeatedly states that she was retaliated against for complaining about sex discrimination, in her brief opposing the defendant's motion for summary judgment she does not provide details of any such complaints. Under the heading "Defendant Retaliated Against Plaintiff for her Discrimination Complaints," she spends much time discussing a complaint she submitted to Chief Flynn and various others. (ECF No. 92 at 23-28.) However, this email had absolutely nothing to do with sex discrimination or any other matter plausibly protected under Title VII. Rather, the email, with the subject "I am not happy," was a lengthy rant about her frustrations with not being able to find a "want" for a homicide suspect. (ECF No. 86-5.)

She also alleges that she suffered retaliation for testifying in support of Beasley at a hearing at which Beasley was seeking a temporary restraining order against another

MPD officer. However, Lewandowski offers no argument as to how her testimony at such a proceeding might come within the scope of activity protected under Title VII.

Lewandowski *did* submit a complaint to the Fire and Police Commission on October 13, 2015, complaining of sex discrimination in the department. (ECF No. 80-17 at 13-15.) Although she does not identify this as the protected activity that triggered the alleged retaliation, the court accepts for present purposes that this complaint constitutes protected activity within the scope of Title VII. Thus, the court considers whether Lewandowski has mustered evidence sufficient to prevail under either the "direct" or "indirect" methods of proof on a claim that she was retaliated against for submitting this complaint.

Any attempt to establish a prima facie claim of retaliation under the "indirect" method must fail for the same reason her discrimination claim fails: she has not identified any similarly situated employee who did not complain about alleged discrimination but was treated more favorably. She argues simply, "Employees who did not complain of discrimination but committed worse offenses were not terminated." (ECF No. 92 at 31.) In support, she cites a single proposed finding of fact, "Defendant's male and female employees who did not complain of discrimination but committed worse offenses were not terminated." (ECF No. 95, ¶ 97.) This proposed finding of fact is supported only by the following statement in her declaration: "Defendant's male and female employees who did not complain of discrimination but committed worse offenses were not terminated."

(ECF No. 91, ¶ 178.) This bald conclusion, which Lewandowski has not demonstrated is based on her personal knowledge, does not create a genuine issue as to whether any similarly situated employee who did not complain about discrimination was treated more favorably than she was.

Similarly, in another portion of her brief she asserts, "Defendant refused to pay Plaintiff's medical bills, denied her worker's compensation claim, and held its investigation open for months longer than any investigations into male officers or officers who did not complain." (ECF No. 92 at 24.) She again cited a single proposed finding of fact in support of this assertion (*see* ECF No. 95, ¶ 48), which was supported only by her declaration (*see* ECF No. 91, ¶ 94). There is no indication that the relevant portion of this paragraph of her declaration—that the City "held its investigation open for months longer than any investigations into male officers or officers who did not complain of discrimination" (ECF No. 91, ¶ 94)—is based on Lewandowski's personal knowledge.

Lewandowski also attempts to contrast her treatment with that of Carr, who she alleges never complained of sex discrimination. Setting aside the general lack of adequate support for Lewandowski's allegations, Carr is not an appropriate comparator. Although she similarly neglected the lieutenant's instruction to complete an assignment, the Commission found it was Lewandowski who made the decision to first go meet with Beasley and, once she heard from her son, go meet with him, all before doing what it was that they had been told to do. (ECF No. 80-6, ¶¶ 8, 9.) Carr was a mere passenger in the

vehicle that Lewandowski drove. Moreover, and most significantly, there is no evidence that Carr lied in the investigation. Thus, the claim that Lewandowski was treated less favorably than similarly situated employees who did not engage in the protected activity, a necessary prerequisite to proving retaliation using the indirect method of proof, is wholly unsupported by competent evidence.

Finally, even if the court were to look beyond the arguments she made in her brief and consider the comparators Lewandowski proffered regarding her discrimination claim, her retaliation claim would fail for the same reasons discussed above.

Turning to the "direct" method of proving a retaliation claim, calling the method "direct" is imprecise because a plaintiff may satisfy it through circumstantial evidence. "Relevant circumstantial evidence may include 'suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual.'" *Rozumalski*, 2019 U.S. App. LEXIS 25081, at *8 (quoting *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)).

As discussed above, Lewandowski has failed to muster evidence that comparable employees who did not complain of discrimination were treated differently. Her allegations of pretext are conclusory and insufficiently supported by competent evidence. (*See* ECF No. 92 at 28.) In relevant part, the only argument she offers regarding pretext is the following:

The evidence indicates, however, that [Chief Flynn] discharged Plaintiff in retaliation for her protected activity and previous complaints of discrimination; see PPFOF ¶¶ 17-40. Plaintiff also raised serious questions as to Chief Flynn's credibility and truthfulness in PPFOF 92, 93, 96 & 100, which create genuine disputes of material fact as to causation, requiring a jury trial.

(ECF No. 92 at 28.) It is the plaintiff's obligation to articulate how the evidence supports the elements of her claim. Offering a conclusion and then citing to a string of proposed findings of fact is not enough.

Nonetheless, the court has reviewed the cited proposed findings of fact and finds that they fail to support a retaliation claim. The word "retaliation" or something similar appears in the cited proposed findings of fact only in the context of a lieutenant who allegedly retaliated against her. But this lieutenant's alleged retaliation was for Lewandowski emailing the Chief about not being able to find a "want" for a homicide suspect. As discussed above, this email was not protected activity under Title VII. Consequently, even if a lieutenant retaliated against her for this disregard of the chain of command, it would not amount to a violation of Title VII.

Nor has Lewandowski offered any "ambiguous statements of animus." Again, the only statements she offers that might suggest any sort of retaliatory animus are statements her lieutenant made in response to her email to the Chief. His comments were wholly unrelated to Lewandowski having complained about sex discrimination or any other protected activity.

Finally, Lewandowski has not offered any argument regarding allegedly suspicious timing. Her complaint to the Fire and Police Commission (ECF No. 80-17) was made on October 13, 2015; Chief Flynn did not fire her until about two months later. That timing does not create an inference of retaliation. *See Seymour-Reed v. Forest Pres. Dist.*, 752 F. App'x 331, 336 (7th Cir. 2018) (unpublished) ("The four months between the last protected activity and the adverse action is not close enough to carry the day.") (citing *Silk v. Bd. of Trs.*, 795 F.3d 698, 710 (7th Cir. 2015) (a few weeks not enough to imply causation); *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (periods of five weeks and two months insufficient)). And, in any event, "suspicious timing alone is rarely enough to survive summary judgment." *Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013).

In sum, "[t]o prevail on a retaliation claim requires 'proof that the desire to retaliate was the but-for cause of the challenged employment action.'" *Ferrill*, 860 F.3d at 501. Not only has Lewandowski failed to muster evidence that she would not have been fired but for engaging in protected activity, she has failed to muster any evidence supporting the inference that her protected activity impacted her termination at all.

Therefore, the court will also grant the City's motion for summary judgment on Lewandowski's Title VII retaliation claims.

### C. Constitutional Claims

As the first claim for relief in her amended complaint, Lewandowski alleges, "Defendant unlawfully discriminated, harassed and retaliated against Plaintiff on the basis of her sex in violation of her equal employment rights and equal protection rights under the First and Fourteenth Amendments to the United States Constitution, as protected by as protected by 42 U.S.C. §§ 1983, 1988 *et al.*" (ECF No. 47, ¶ 205.) In her response to the City's motion for summary judgment, Lewandowski does not meaningfully distinguish the merits of her constitutional claims from her Title VII claims. In fact, she says, "As both the Title VII sex discrimination and 42 U.S.C. § 1983 equal protection claim based on sex require the same evidence, these claims are analyzed together below." (ECF No. 92 at 9.)

A claim of sex discrimination does not obviously implicate the First Amendment. Thus, it is unclear what Lewandowski might be attempting to allege by referring to the First Amendment in her amended complaint. Perhaps it was an attempt to frame her retaliation claim in constitutional terms. But, for a variety of reasons, it is a complicated matter for an employee to pursue a First Amendment claim against her former government employer. *See, generally, Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L.Ed.2d 689 (2006); *see also Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 925-26 (7th Cir. 2007). The First Amendment does not categorically prohibit government employers from taking adverse actions against an employee for that employee's speech. *Garcetti v. Ceballos*, 547

U.S. 410, 424, 126 S. Ct. 1951, 1961, 164 L.Ed.2d 689, 703 (2006). It is not a claim that can be seen as coextensive with any Title VII claim. Lewandowski having made no effort to defend (or even explain) her First Amendment claim, the court regards her as having abandoned it. Consequently, the City is entitled to summary judgment on this claim.

Her Fourteenth Amendment equal protection claim, however, can be regarded as coextensive with her Title VII discrimination claim. *See Silva v. Wisconsin*, 917 F.3d 546, 559 (7th Cir. 2019) ("We evaluate discrimination claims brought under both Title VII and § 1983 using the same standard.") (citing *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010)); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007) ("An employee may prove a prima facie equal protection violation using the same indirect, burden shifting method used for Title VII claims.") (citing *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003)). "The only difference is that a Title VII claim is against an employer, while an equal protection claim is against individual employees." *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007) (citing *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003)). Lewandowski does not name any individual as a defendant. As a consequence, she would have to satisfy the additional hurdle imposed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), before she could obtain relief. *See Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("To hold defendants liable under § 1983 and *Monell*, [a plaintiff] must demonstrate that the defendants' official policy, widespread custom, or action by an official with policy-

making authority was the moving force behind his constitutional injury." (internal quotation marks omitted)).

But Lewandowski's equal protection claim fails long before she gets to the *Monell* obstacle. Again, Lewandowski has failed to identify any comparable male employee who was treated more favorably than her. Therefore, the court will grant the City's motion for summary judgment.

### 4. CONCLUSION

The relevant question for the court is whether a reasonable finder of fact could conclude that Lewandowski would not have been fired had she either been male or not complained about what she believed to be unlawful sex discrimination. Lewandowski has failed to present evidence from which a reasonably juror could find in her favor. Accordingly, **IT IS THEREFORE ORDERED** that the City of Milwaukee's Motion for Summary Judgment (ECF No. 76) is **granted**. Shannon Lewandowski's amended complaint and this action are dismissed with prejudice. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of September, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge